Nos. 22-13051, 22-13052, 22-13118, & 22-13120

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

IN RE: BLUE CROSS BLUE SHIELD
ANTITRUST LITIGATION(MDL 2406)

On Appeal from the United States District
Court for theNorthern District of Alabama,
Southern Division,
No. 2:13-CV-20000-RDP

---

## OBJECTOR-APPELLANTS JENNIFER COCHRAN AND
## AARON CRAKER'S *CORRECTED* OPENING BRIEF

---

George W. Cochran
LAW OFFICE OF GEORGE W. COCHRAN
1981 Crossfield Circle
Kent, Ohio 44240
Tel:  (330) 607-2187
Fax:  (330) 230-6136
lawchrist@gmail.com


*Counsel for Objector-Appellants
Jennifer Cochran and Aaron Craker*

Nos. 22-13051, 22-13052, 22-13118, & 22-13120

## CERTIFICATE OF INTERESTED PERSONS

Objector-Appellants Jennifer Cochran and Aaron Craker ("Objector-Appellants") hereby certify that below is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, and other legal entities that have an interest in the outcome of this case:

Adams and Reese LLP (Counsel for Appellees)

Adamson, Virginia Nicole (Counsel for Appellants)

Adcox, Rachel (Counsel for Appellees)

American Electric Motor Services, Inc. (Appellee)

Anthem Blue Cross (Blue Cross of California) (Appellee)

Anthem Blue Cross and Blue Shield of Connecticut (Appellee)

Anthem Blue Cross and Blue Shield of Indiana (Appellee)

Anthem Blue Cross and Blue Shield of Missouri (Appellee)

Anthem Blue Cross and Blue Shield of New Hampshire (Appellee)

Anthem Blue Cross and Blue Shield of Virginia, Inc. (Appellee)

Anthem Blue Cross Life and Health Insurance Company (Appellee)

Anthem Health Plans of Kentucky, Inc. (Appellee)

Anthem Health Plans of Maine (Appellee)

Anthem Health Plans of Maine, Inc. (Appellee)

Anthem Health Plans of New Hampshire, Inc. (Anthem Blue Cross and Blue

Shield of New Hampshire) (Appellee)

Anthem Health Plans of Virginia, Inc. (Anthem Blue Cross and Blue Shield of Virginia Inc.) (Appellee)

Anthem Health Plans, Inc. (Anthem Blue Cross and Blue Shield of Connecticut) (Appellee)

Anthem Holding Corporation (Appellee)

Anthem Insurance Companies, Inc. (Anthem Blue Cross and Blue Shield of Indiana) (Appellee)

Anthem, Inc. (Anthem Health Plans of Virginia, Inc.) (Appellee)

Anthem, Inc. (ANTM) (Appellee)

Anthem, Inc. (Parent to Anthem Insurance Companies, Inc.) (Appellee)

Anthem, Inc. (Parent to Community Insurance Company) (Appellee)

Anthem, Inc., f/k/a WellPoint, Inc. d/b/a Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California, Blue Cross of Southern California, Blue Cross of Northern California, Rocky Mountain Hospital and Medical Service Inc. d/b/a Anthem Blue Cross Blue Shield of Colorado and Anthem Blue Cross Blue Shield of Nevada, Anthem Blue Cross Blue Shield of Connecticut, Anthem Blue Cross Blue Shield of Georgia, Anthem Blue Cross Blue Shield of Indiana, Anthem Blue Cross Blue Shield of Kentucky, Anthem Blue Cross Blue Shield of Maine, Anthem Blue Cross Blue Shield of Missouri, RightCHOICE Managed Care, Inc., HMO Missouri Inc., Anthem Health Plans of New Hampshire as

Anthem Blue Cross Blue Shield of New Hampshire, Empire HealthChoice

Assurance, Inc. as Empire Blue Cross Blue Shield, Community Insurance

Company as Anthem Blue Cross Blue Shield of Ohio, Anthem Blue Cross and

Blue Shield of Virginia, Anthem Blue Cross Blue Shield of Wisconsin (Appellee)

Anthem Life Insurance Company (Appellee)

Arcara, Hon. Richard J. (W.D.N.Y.)

Arkansas Blue Cross and Blue Shield (Appellee)

Armbrecht Jackson LLP (Counsel for Appellees)

Axinn, Veltrop & Harkrider, LLP (Counsel for Appellees)

Bailey & Glasser, LLP (Counsel for Appellee)

Bailey, Arthur (Counsel for Appellees)

Balch & Bingham LLP (Counsel for Appellees)

BCBSM, Inc., d/b/a Blue Cross Blue Shield of Minnesota (Appellee)

Behenna, David G. (Appellant)

Bernick, Justin (Counsel for Appellees)

Bisio, Peter (Counsel for Appellees)

Bloomberg, Edward S. (Counsel for Appellees)

Blue Cross and Blue Shield of Alabama (Appellee)

Blue Cross and Blue Shield of Arizona (Appellee)

Blue Cross and Blue Shield of Florida, Inc. (Appellee)

Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue (Appellee)

Blue Cross and Blue Shield of Georgia (Appellee)

Blue Cross and Blue Shield of Georgia, Inc. (Appellee)

Blue Cross and Blue Shield of Kansas City (Appellee)

Blue Cross and Blue Shield of Kansas, Inc. (Appellee)

Blue Cross and Blue Shield of Louisiana (Appellee)

Blue Cross and Blue Shield of Massachusetts, Inc. (Appellee)

Blue Cross and Blue Shield of Michigan (Appellee)

Blue Cross and Blue Shield of Minnesota (Appellee)

Blue Cross and Blue Shield of Mississippi (Appellee)

Blue Cross and Blue Shield of Nebraska (Appellee)

Blue Cross and Blue Shield of North Carolina, Inc. (Appellee)

Blue Cross and Blue Shield of North Dakota (Appellee)

Blue Cross and Blue Shield of Rhode Island (Appellee)

Blue Cross and Blue Shield of South Carolina (Appellee)

Blue Cross and Blue Shield of Tennessee, Inc. (Appellee)

Blue Cross and Blue Shield of Vermont (Appellee)

Blue Cross and Blue Shield of Wyoming (Appellee)

Blue Cross Blue Shield Association (Appellee)

Blue Cross Blue Shield Healthcare Plan of Georgia, Inc. (Appellee)

Blue Cross Blue Shield of Alabama (Appellee)

Blue Cross Blue Shield of Arizona (Appellee)

Blue Cross Blue Shield of Minnesota (Appellee)

Blue Cross Blue Shield of Mississippi, a Mutual Insurance Company (Appellee)

Blue Cross Blue Shield of North Dakota (Appellee)

Blue Cross Blue Shield of Wyoming (Appellee)

Blue Cross of Idaho Health Service, Inc. (Appellee)

Bodman PLC (Counsel for Appellees)

Boies, David (Counsel for Appellees)

Boies, Schiller & Flexner LLP (Counsel for Appellees)

Bojedla, Swathi (Counsel for Appellees)

Bondurant Mixson & Elmore, LLP (Counsel for Appellant)

Bradley Arant Boult Cummings, LLP (Counsel for Appellants)

Briggs, John (Counsel for Appellees)

Brunini, Grantham, Grower & Hewes, PLLC (Counsel for Appellees)

Buchanan, Virginia (Counsel for Appellees)

Burkhalter, Carl S. (Counsel for Appellees)

Burns Charest LLP (Counsel for Appellees)

Burns, Warren T. (Counsel for Appellees)

Bush, Hon. Ronald E. (D. Idaho)

Bustamante, Travis A. (Counsel for Appellees)

Cafferty Clobes Meriwether & Sprengel LLP (Counsel for Appellees)

Cafferty, Patrick (Counsel for Appellees)

Caliendo, Charles T. (Counsel for Appellees)

California Physicians' Service (Appellee)

California Physicians' Service, d/b/a Blue Shield of California (Appellee)

Callister, Joshua (Counsel for Appellees)

Cambia Health Solutions, Inc., f/d/b/a Regence Blue Shield of Idaho, Regence Blue Cross Blue Shield of Oregon, Regence Blue Cross Blue Shield of Utah, Regence Blue Shield of Washington (Appellee)

Campbell Partners LLC (Counsel for Appellees)

Campbell, Andy P. (Counsel for Appellees)

Campbell, A. Todd (Counsel for Appellees)

Capital BlueCross (Appellee)

CareFirst Blue Cross and Blue Shield of Maryland (Appellee)

CareFirst BlueChoice, Inc. (Appellee)

CareFirst of Maryland, Inc. (Appellee)

CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield (Appellee)

CareFirst, Inc. (Appellee)

Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc. (Appellee)

Caring for Montanans, Inc. (Appellee)

CB Roofing, LLC (Appellee)

Chavez, Kathleen (Counsel for Appellees)

Chesler, Evan R. (Counsel for Appellees)

Cihlar, Nate (Counsel for Appellees)

Clark, Anna Mercado (Counsel for Appellees)

Clobes, Bryan (Counsel for Appellees)

Cochran, Jennifer (Appellant)

Cohen, Hon. James I. (S.D. Fla.)

Cohen, Lucile H. (Counsel for Appellees)

Colatriano, Vincent J. (Counsel for Appellees)

Community Insurance Company (Appellee)

Cooper & Kirk, PLLC (Counsel for Appellees)

Cooper, Charles J. (Counsel for Appellees)

Cornelius, Hon. Staci G. (N.D. Ala.)

Cory Watson Crowder & DeGaris, P.C. (Counsel for Appellees)

Costello, Honor (Counsel for Appellees)

Cottrell, Christa C. (Counsel for Appellees)

Craker, Aaron (Appellant)

Cravath Swaine & Moore (Counsel for Appellees)

Crowell & Moring LLP (Counsel for Appellees)

Cylkowski, Sarah L. (Counsel for Appellees)

Davis & Taliaferro LLC (Counsel for Appellees)

Davis, Gregory (Counsel for Appellees)

Dellaccio, Douglas (Counsel for Appellees)

DeGiusti, Hon. Timothy D. (W.D. Okla.)

Del Sole Cavanaugh Stroyd LLC (Counsel for Appellees)

DeMasi, Karin A. (Counsel for Appellees)

Doherty, Hon. Rebecca F. (W.D. La.)

Doherty, Ronan (Counsel for Appellant)

Dominick Feld Hyde, PC (Counsel for Appellee)

Donnell, Sarah J. (Counsel for Appellees)

Dryden, Benjamin R. (Counsel for Appellees)

Dyer, Karen (Counsel for Appellees)

Eisler, Robert (Counsel for Appellees)

Empire HealthChoice Assurance, Inc. (Appellee)

Empire HealthChoice Assurance, Inc., f/k/a Empire Blue Cross Blue Shield

(Appellee)

Employee Services, Inc. (Appellant)

Erickson, Hon. Ralph R. (D.N.D.)

Excellus Blue Cross Blue Shield (Appellee)

Excellus BlueCross BlueShield of New York (Appellee)

Excellus Health Plan, Inc. d/b/a Excellus BlueCross BlueShield (Appellee)

Feinberg, Kenneth (Mediator)

Feinstein, Richard (Counsel for Appellees)

Foley & Lardner LLP (Counsel for Appellees)

Foote, Mielke, Chavez & O'Neil LLC (Counsel for Appellees)

Foote, Robert M. (Counsel for Appellees)

Franz, Morgan B. (Counsel for Appellees)

Galactic Funk Touring, Inc. (Appellee)

Gentle, Edgar C. (Special Master)

Gilbert, Sarah (Counsel for Appellees)

Gillis, H. Lewis (Counsel for Appellees)

Gordon, Jr., Ben W. (Counsel for Appellee)

Grant & Eisenhofer (Counsel for Appellees)

Green, Cheri D. (Counsel for Appellees)

Group Hospitalization and Medical Services, Inc. (Appellee)

Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield (Appellee)

Guin, Stokes & Evans, LLC (Counsel for Appellees)

Guin, David (Counsel for Appellees)

Gustafson Gluek PLLC (Counsel for Appellees)

Gustafson, Daniel (Counsel for Appellees)

Harris, Hon. Alonzo (27th Judicial District Court, St. Landry Parish, Louisiana)

Harwood, Jr., Hon. R. Bernard (Special Master)

Hauser, Brian C. (Counsel for Appellees)

Hausfeld LLP (Counsel for Appellees)

Hausfeld, Michael D. (Counsel for Appellees)

Hawaii Medical Service Association d/b/a Blue Cross and Blue Shield of Hawaii (Appellee)

Hazzard Law, LLC (Counsel for Appellees)

Hazzard, Brent (Counsel for Appellees)

HD Operations Holding Company, Inc. (Appellant)

Health Care Service Corporation (Appellee)

Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois, Blue Cross Blue Shield of New Mexico, Blue Cross Blue Shield of Oklahoma, Blue Cross and Blue Shield of Montana, Blue Cross Blue Shield of Texas (Appellee)

Hedlund, Daniel C. (Counsel for Appellees)

Hellums, Chris T. (Counsel for Appellees)

Hibbett Sports, Inc (Appellee)

Highmark Blue Cross Blue Shield of Delaware, Inc. (Appellee)

Highmark Blue Cross Blue Shield of West Virginia (Appellee)

Highmark Health Services, d/b/a Highmark Blue Cross Blue Shield of Delaware, Highmark Blue Cross Blue Shield, and Highmark Blue Cross Blue Shield of West Virginia (Appellee)

Highmark Inc. (Appellee)

Highmark Western and Northeastern New York Inc. (Appellee)

Hill Hill Carter Franco Cole & Black, P.C. (Counsel for Appellees)

HMO Missouri Inc. (Appellee)

HMO Missouri, Inc. (Anthem Blue Cross and Blue Shield of Missouri) (Appellee)

Hodge, David J. (Counsel for Appellees)

Hogan Lovells US LLP (Counsel for Appellees)

Hogan, E. Desmond (Counsel for Appellees)

Hogewood, Mark M. (Counsel for Appellees)

Holmstead, Zachary D. (Counsel for Appellees)

Home Depot U.S.A., Inc. (Appellant)

Hoover, Craig A. (Counsel for Appellants)

Horizon Blue Cross and Blue Shield of New Jersey(Appellee)

Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross and Blue Shield of New Jersey (Appellee)

Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey (Appellee)

Hoss, Henry D. (Counsel for Appellants)

Hovland, Hon. Daniel L. (D.N.D.)

Hume, Hamish P.M. (Counsel for Appellees)

Huppert, Hon. Michael D. (5th Judicial District Court, Polk County, Iowa)

Independence Hospital Indemnity Plan, Inc., f/k/a Independence Blue Cross (Appellee)

Isaacson, William A. (Counsel for Appellees)

Jarvey, Hon. John A. (S.D. Iowa)

Johnson, John M. (Counsel for Appellees)

Jones Ward PLC (Counsel for Appellees)

Jones, Lawrence (Counsel for Appellees)

Jones, Megan (Counsel for Appellees)

Jose, Elizabeth (Counsel for Appellees)

Kappel, Brian P. (Counsel for Appellees)

Kaufman, David R. (Counsel for Appellees)

Kennedy, Lauren R. (Counsel for Appellees)

Kilpatrick Townsend & Stockton LLP (Counsel for Appellees)

Kilpela, Jr., Edwin J. (Counsel for Appellees)

Kimble, Cavender C. (Counsel for Appellees)

Kirkland & Ellis LLP (Counsel for Appellees)

Koch, H. James (Counsel for Appellees)

Korn, David H. (Counsel for Appellees)

Lawrence, Hon. William T. (S.D. Ind.)

Laytin, Daniel E. (Counsel for Appellees)

Lemmon Law Firm (Counsel for Appellees)

Lemmon, Andrew (Counsel for Appellees)

Levin Papantonio Thomas Mitchell Rafferty & Proctor, P.A. (Counsel for Appellees)

Lifetime Healthcare, Inc. (Appellee)

Lightfoot Franklin & White LLC (Counsel for Appellees)

Lite DePalma Greenberg & Afanador, LLC (Counsel for Appellees)

Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana (Appellee)

Lowrey, IV, Frank M. (Counsel for Appellant)

Lungstrum, Hon. John W. (D. Kan.)

Kravitz, Carl S. (Counsel for Appellees)

Maier, Jeny M. (Counsel for Appellees)

Malatesta, III, John Thomas A. (Counsel for Appellees)

Martin, John D. (Counsel for Appellees)

Maynard Cooper & Gale PC (Counsel for Appellees)

McAfee & Taft A Professional Corporation (Counsel for Appellants)

McCafferty, Hon. Landya B. (D.N.H.)

McCallum, Methvin & Terrell, P.C. (Counsel for Appellees)

McDevitt, Larry (Counsel for Appellees)

McDonald, Yawanna N. (Counsel for Appellees)

McDowell, Patrick M. (Counsel for Appellees)

McGartland & Borchardt LLP (Counsel for Appellees)

McGartland, Michael (Counsel for Appellees)

McKinney, Rebekah Keith (Counsel for Appellee)

McLeod, Aaron G. (Counsel for Appellees)

Means Gillis Law, LLC (Counsel for Appellees)

Meriwether, Ellen (Counsel for Appellees)

Methvin, Robert (Counsel for Appellees)

Moreno, Hon. Federico A. (S.D. Fla.)

Morris, King & Hodge (Counsel for Appellees)

Mullins, M. Richard (Counsel for Appellants)

Naranjo, Michael A. (Counsel for Appellees)

Nelson Mullins Riley & Scarborough LLP (Counsel for Appellees)

Nix, Jess R. (Counsel for Appellees)

Nix, Richard D. (Counsel for Appellants)

Norman, Brian K. (Counsel for Appellants)

O'Connor, Hon. Reed. C. (N.D. Tex.)

Pacella, Mario Anthony (Counsel for Appellee)

Page, E. Allen (Counsel for Appellant)

Paul Weis (Counsel for Appellees)

Payne, Joshua K. (Counsel for Appellees)

Payton, Gwendolyn (Counsel for Appellees)

Pearce, Bevill, Leesburg, Moore, P.C. (Appellee)

Pennington, Michael R. (Counsel for Appellants)

Pettus Plumbing & Piping, Inc. (Appellee)

Phillips Lytle LLP (Counsel for Appellees)

Physicians' Service, d/b/a Blue Shield of California (Appellee)

Pittman, Dutton & Hellums, P.C. (Counsel for Appellees)

Priester, James L. (Counsel for Appellees)

Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska
(Appellee)

Proctor, Hon. R. David (N.D. Ala.)

Putnam, Hon. T. Michael (N.D. Ala.)

Ragsdale, Barry Alan (Counsel for Appellee)

Redgrave, LLP (Counsel for Appellees)

Redgrave, Jonathan M. (Counsel for Appellees)

Reeves, Harold S. (Counsel for Appellees)

Regence BlueCross BlueShield of Oregon (Appellee)

Regence BlueCross BlueShield of Utah (Appellee)

Regence BlueShield (Appellee)

Regence BlueShield of Idaho, Inc. (Appellee)

Reuben, Mindee (Counsel for Appellees)

Rheaume, Jr., Thomas J. (Counsel for Appellees)

Richie, J. Thomas (Counsel for Appellants)

RightChoice Managed Care, Inc. (Appellee)

Riley & Jackson P.C. (Counsel for Appellees)

Riley, Jr., Robert R. (Counsel for Appellees)

Rocky Mountain Hospital & Medical Service Inc., d/b/a Anthem Blue Cross Blue Shield of Colorado (Appellee)

Rocky Mountain Hospital & Medical Service Inc., d/b/a Anthem Blue Cross Blue Shield of Nevada (Appellee)

Roman, Tracy A. (Counsel for Appellees)

Rowe, Stephen A. (Counsel for Appellees)

Rutenberg, Alan D. (Counsel for Appellees)

Ruzic, Emily M. (Counsel for Appellants)

Sansbury, Michael T. (Counsel for Appellees)

Saw, Edmund Y. (Counsel for Appellees)

Saxon, John (Counsel for Appellees)

John D. Saxon, P.C. (Counsel for Appellees)

Schmidt, Jr., John G. (Counsel for Appellees)

Shamoun & Norman, LLP (Counsel for Appellees)

Shearman & Sterling LLP (Counsel for Appellees)

Slate, Pamela B. (Counsel for Appellees)

Smith, Cyril V. (Counsel for Appellees)

Smith, Scott Burnett (Counsel for Appellants)

Snyder, Hon. Christina A. (C.D. Cal.)

Snyder, Eric B. (Counsel for Appellee)

Sooy, Kathleen Taylor (Counsel for Appellees)

Spencer, Mark D. (Counsel for Appellants)

Spotswood, Robert K. (Counsel for Appellees)

Spotswood Sansom & Sansbury LLC (Counsel for Appellees)

Stenerson, Todd M. (Counsel for Appellees)

Stokes, Tammy (Counsel for Appellees)

Strauss & Boies (Counsel for Appellees)

Strom Law Firm (Counsel for Appellee)

Sweet, Benjamin (Counsel for Appellees)

Terrell, James M. (Counsel for Appellees)

The Home Depot Group Benefits Plan (Appellant)

The Home Depot, Inc. (HD) (Appellant)

The Home Depot Medical and Dental Plan (Appellant)

Topographic, Inc. (Appellant)

Triple-S Salud, Inc. (Appellee)

USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue
Shield (Appellee)

Van Winkle Law Firm (Counsel for Appellees)

Varney, Christine R. (Counsel for Appellees)

Voorhees, Hon. Richard (W.D.N.C.)

Wallace, Jordan, Ratliff & Brandt, LLC (Counsel for Appellees)

Walsh, Stephen A. (Counsel for Appellees)

Watson, McKinney, LLP (Counsel for Appellee)

Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC (Counsel for Appellees)

Wellmark Blue Cross and Blue Shield of Iowa (Appellee)

Wellmark Blue Cross and Blue Shield of South Dakota (Appellee)

Wellmark Health Plan of Iowa, Inc.

(Appellee)Wellmark Holdings, Inc.

(Appellee)

Wellmark Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa and

Wellmark Health Plan of Iowa, Inc. (Appellee)

Wellmark, Inc. d/b/a Blue Cross and Blue Shield of Iowa and

WellmarkBlue Cross Blue Shield of South Dakota (Appellee)

Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue

Shieldof South Dakota (Appellee)

WellPoint, Inc. (Appellee)

West, Kimberly R. (Counsel for Appellees)

Wilkerson, David (Counsel for Appellees)

Witt, P.C., Helen E. (Counsel for Appellees)

Zeiger, P.C., Jeffrey J. (Counsel for

Appellees)Zott, David J. (Counsel for

Appellees)

Zuckerman Spaeder, LLP (Counsel for Appellees)

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, Objector-Appellants submit this CorporateDisclosure Statement in order to declare that neither party is a non-governmental corporation.

# STATEMENT REGARDING ORAL ARGUMENT

Objector-Appellants believe the issue raised by their appeal may be resolved by reference to the parties' briefs without the necessity of oral argument.

Dated: December 12, 2022                Respectfully submitted,

/s/ George W. Cochran
George W. Cochran
*Counsel for Objector-Appellants*
*Jennifer Cochran and Aaron Craker*
1981 Crossfield Circle
Kent, Ohio 44240
Tel:  (330) 607-2187
Fax:  (330) 230-6136
lawchrist@gmail.com

# TABLE OF CONTENTS                    **Page**

Certificate of Interested Persons and........................................................i

Corporate Disclosure Statement and Statement Regarding Oral Argument .......xxii

Table of Contents .................................................................xxiii

Table of Citations ................................................................xxv

Jurisdictional Statement .............................................................1

Statement of the Issue ...............................................................2

Statement of the Case ...............................................................2

Summary of the Argument .............................................................5

Standard of Review……………………………………………………………..7

Argument...........................................................................7

The District Court Abused Its Discretion By Approving A Distribution Of Unclaimed Funds That Is *Fundamentally Unfair* Because It Enriches Employers At Employees' Expense Without Addressing The  Employer's ERISA Obligations Or Providing Employees Adequate Representation…………………………………..7

    A.    A Distribution Of Unclaimed Funds That Rewards Employers at Employees' Expense Is *Ipso Facto* Unfair Because It Violates Rule 23's Requirement Of Adequate Representation and the Settlement's Own Mandate to Treat All Class Members "Equitably"…………………..9

    B.    The Distribution Of Unclaimed Funds Also Ignores FI Group Employers' ERISA's Obligation To Handle Plan Assets Exclusively For the *Employees'* Benefit……………………………………………………15

xxiii

C.    This Intraclass Conflict Can't Be Cured By Tossing A 'Hot Potato' Onto The Employers' Lap ……………………………………………...22

    1.    Because A Class Action Is The Best Vehicle For Resolving This Inequity, Pushing The Issue Downstream Violates the Settlement's Matching Requirement to Allocate Unclaimed Premiums "Economically"…………………………………...23

    2.    The Only Way To Resolve This Structural Defect Is To Appoint Independent Counsel and an FI Group Employee To Represent A Subclass Of Employees For the Purpose of Ensuring a Fair Allocation Method That Treats All Class Members *Equitably* And Distributes All Unclaimed Premiums *Economically* Without Tripping Over ERISA …………………………………...26

Conclusion ...........................................................................................30

Certificate Of Compliance......................................................................xxvi

Certificate Of Service............................................................................xxvi

xxiv

# TABLE OF CITATIONS

**<u>Cases</u>**                                                                               **<u>Page</u>**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)…………………………….8, 13

*Auto Ventures, Inc. v. Moran*, 1997 WL 306895 (S.D.Fla.1997)………………27

*Bennett v. Behring Corp*., 737 F.2d 982 (11th Cir. 1984)……………………………...10

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)…………………………..…..9

*First Nat. Life Ins. Co. v Sunshine-Jr. Food Stores, Inc*., 960 F.2d 1546
    (11th Cir. 1992)……………………………………………………………17

*Gimeno v. NCHMD, Inc*., 38 F.4th 910 (11th Cir. 2022)………………………..16

*Hamilton v. Allen-Bradley Co.* , 244 F.3d 819 (11th Cir. 2001)…………………16

*Hines v. Widnall*, 334 F.3d 1253 (11th Cir. 2003)………………………………...7

*Holmes v. Cont'l Can Co*., 706 F.2d 1144 (11th Cir. 1983)……………………...10

*In re Baldwin-United Corp*., 105 F.R.D. 475 (S.D.N.Y.1984)…………………...14

*In re HealthSouth*, 213 F.R.D. 447 (N.D. Ala. 2003)……………………………29

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
    827 F.3d 223 (2nd Cir.2016)…………………………………………..27

*ITPE Pension Fund v. Hall*, 334 F.3d 1011 (11th Cir. 2003)……………………...18

*Jenkins v. Prime Ins. Co.*, 32 F.4th 1343 (11th Cir. 2022)…………………………1

*Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020)……………………9

*Johnson v. General Motors Corp.*,  598 F.2d 432, 435 (5th Cir.1979)…………..26

*Juris v. Inamed Corp.*, 685 F.3d 1294 (11th Cir. 2012)…………………………..26

*Kemp v. Birmingham News Co.*,  608 F.2d 1049 (5th Cir.1979)…………………26

*Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir.2004)………………...7

*Malchman v Davis*, 706 F.2d 426 (2d Cir.1983)……………………………………14

*Mars Steel v. Continental Illinois Nat'l Bank & Trust*, 834 F.2d 677
    (7th Cir.1987)……………………………………………………………………14

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999)………………………………………8

*Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir.2000)………………...15

*Shiyang Huang v. Equifax Inc. (In re Equifax Inc. Customer Data Sec.*
    *Breach Litig.*), 999 F.3d 1247 (11th Cir. 2021)……………………………….7

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3rd Cir. 2010)…………………………13

*Tweedie v. Waste Pro. of Fla., Inc.* (M.D. Fla. 2021)……………………………24

*Twigg v. Sears, Roebuck & Co.*,  153 F.3d 1222 (11th Cir.1998)…………………26

*Valley Drug Co. v. Geneva Pharms., LLC*, 350 F.3d 1181
    (11th Cir. 2003)…………………………………………………………...26, 28

*Walters v. Nat. Ass'n of Radiation Survivors*, 473 U.S. 305 (1985)……………...26

## **Statutes/Rules**

28 U.S.C. §§ 1331 and 1337(a)……………………………………………………1

Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26……………………1

28 U.S.C. § 1291…………………………………………………………………...1

29 U.S.C. §1002(21)(A)…………………………………………………………..16

FRCP Rule 23……………………………………………………...10, 11, 22

FRCP 54(b)………………………………………………………………1

FRAP 28(i)……………………………………………………………....3

## **Publications**

Managing Class Action Litigation: A Pocket Guide for Judges. Barbara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2005………………………9

*Manual for Complex Litigation* § 21.61………………………………………..10

*Reconsidering Indirect-Purchaser Class Actions*. Stephen Carr. Florida Law Review, Vol. 67, Issue 2 (Jan. 2016)………………………………………………13

xxvii

## JURISDICTIONAL STATEMENT

The MDL Court, in tandem with the district courts where the subscriber track cases were originally filed, exercised federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337(a) because Plaintiffs asserted claims under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 to obtain injunctive relief and recover treble damages against the Individual Blue Plans and the Blue Cross Blue Shield Association ("BCBSA") for injuries sustained by Plaintiffs and their Classes.

Pursuant to 28 U.S.C. § 1291, the Eleventh Circuit Court of Appeals has appellate jurisdiction over Objector-Appellants Jennifer Cochran and Aaron Craker's ("Objector-Appellants") challenge to the Final Order and Judgment Granting Approval of Subscriber Class Action Settlement entered by the MDL Court on August 9, 2022 [Dkt. 2931] (amended September 7, 2022 [Dkt. 2939]), as well as the Order Awarding Subscriber Plaintiffs' Counsel Attorneys' Fees and Expenses entered on August 9, 2022 [Dkt. 2932]. Under FRCP 54(b), a district court may enter an appealable judgment as to fewer than all claims or parties if the district court "expressly" determines there is "no just reason for delay." *Jenkins v. Prime Ins. Co.*, 32 F.4th 1343, 1345 (11th Cir. 2022). The record evidence shows Objector-Appellants' timely objection was subsequently overruled. (Dkt. 2931 at 45.) Their Notice of Appeal was timely filed on September 7, 2022 (Dkt. 2943).

## STATEMENT OF THE ISSUE

*Did the district court abuse its discretion by approving a reallocation of unclaimed employee funds that is fundamentally unfair because it enriches employers at employees' expense without addressing the employer's ERISA obligations or providing employees adequate representation?*[1]

## STATEMENT OF THE CASE

Pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure, Objector-Appellants hereby adopt Home Depot, Inc.'s Statement of the Case in its opening brief. (Dkt. 120 at 1-16). More germane to Objector-Appellants' appeal: the Settlement Agreement establishes two classes of subscribers for purposes of *settlement only*: a Damages Class and an Injunctive Relief Class. The Damages Class includes Individual Members, Insured Groups (including employees) and Self-Funded Accounts covered by a Blue-Branded Commercial Health Benefit Plan offered by any Defendant during the Class Period. (Dkt. 2610-6 at ¶ 1.v). An "Authorized Claimant" ("Claimant") is any Settlement Class Member entitled to a distribution from the Settlement Fund "pursuant to the Plan of Distribution ("Plan") approved by the Court in accordance with the terms of this Agreement." (Id. at ¶ 1.c). The Claims Administrator of the Net Settlement Fund ("Administrator") must

---

[1] Because Objector-Appellants devoted all of their brief to this compelling issue, their challenge to Class Counsel's fee award is not included.

follow this Plan in deciding every Claimant's award. (Id. at ¶ 27).

Since employers and employees pay jointly for coverage, the Plan provides two options for calculating an FI Group employee's ("employee's") portion of the premium contributions. Using data provided by Defendants, the Administrator first calculates the total premiums paid by the employee. (Id. at ¶ 19.a). If either party believes the calculation is erroneous, documentation must be submitted to prove the correct amount. Otherwise, the Plan will allocate 85% of total premiums paid for single coverage (66% for family coverage) to the employer ("default allocation of unclaimed funds"). (Dkt. 2812-1 at 18). Because the employees' portion was 'increased somewhat' when setting the default parameters, all refunds not claimed by employees are awarded to the *employer*. (Dkt. 2715-1 at ¶ 19(f); Dkt. 2610-9 at ¶ 38). Plaintiffs concede, however, that employee percentages were enhanced just *one point* above the minimum (and *five points* below the maximum) in the range of actual contributions. (Dkt. 2812-1 at 36-37). Nonetheless, Class Counsel claimed this enhancement justifies giving employers all of the employees' unclaimed funds. (Dkt. 2715-1 at ¶ 18).

What happens to the *employer's* unclaimed funds is radically different. "If an FI Employee submits a claim for a particular FI Group, and that FI Group does not

submit a claim, then the amounts that would have been allocated to that FI Group[2] shall remain in the balance of the FI Net Settlement Fund for distribution to *all other FI Authorized Claimants* in accordance with this Plan." (emphasis added) (Dkt. 2610-2 at ¶ 20). Consequently, employers reap a windfall from employees' unclaimed funds while employers' own unclaimed funds are added to the net residual fund for pro-rata allocation among the entire class.

This double-standard contradicts the Settlement's mandate to distribute residual funds "in an equitable and economic fashion." (Id. at ¶ 30). That class representatives are dominated by *employers*—including the representative for the Self-Funded Sub-Class–might explain this discrepancy.[3] By comparison, only a handful of individual class representatives were enrolled in a fully-insured group policy through their employer. (Dkt. 2616 at ¶¶ 17-80). In approving the settlement, the district court denied all objections without addressing Objector-Appellants' specific concern. In the process, it also abused its discretion.

---

[2] In the settlement's definitional section, "Fully Insured Group" is synonymous with "employer". (Dkt. 2610-2 at 14).

[3] Hibbett Sports, Inc., a publicly-traded retailer of sporting goods, purchased an "administrative services only" contract from a Blue Plan. (Dkts. 2812-1 at 66; 2931 at 75).

## SUMMARY OF THE ARGUMENT

The district court's approval of a distribution plan for allocating unclaimed FI Group funds[4] that's fundamentally unfair to unrepresented employees was an abuse of discretion. The plan's structure has a fatal defect: employees' unclaimed premium refunds are awarded to the employer, but the employers' own unclaimed premium refunds are shared with the entire class. As a result of violating Rule 23's *adequate representation* requirement, Class Counsel's discrimination against employees contradicted the settlement's mandate to treat all class members *equitably*. The distribution of unclaimed funds also ignores an employer's obligation to handle employee contributions exclusively for the employees' benefit. Because the funds are destined to become plan assets, the employer's fiduciary obligations arose as soon as the settlement was finalized. Since their employees' claims were set to expire, employers should have forwarded the settlement notice to all covered beneficiaries. The Settlement Website, however, states that employers need not inform employees of the settlement. It also assumes they will receive a court-approved notice.

Because the settlement fails to safeguard employees' interest, the U.S. Department of Labor ("DOL") testified that it violates Rule 23's *adequate representation* requirement. Despite Class Counsel's attempt to devalue employees'

---

[4] Hereinafter, this Plan feature is referred to as the "distribution of unclaimed funds"

rights, the distribution of unclaimed funds is more likely due to *collusion*.

Nonetheless, the district court assured DOL that numerous employer-representatives stand ready to do the right thing. Equally confident about handling claims, the court also worried that DOL's proposal would force the Settlement Administrator to supervise one murky dispute after another. In reality, the opposite is true: while the default allocation between employers and employees is straightforward, the alternative procedure for proving actual plan contributions is extremely cumbersome. Paradoxically, the court *admitted* that the approved plan may spark "millions" of individual suits over the employers' ERISA responsibility. His ominous prediction belies any notion that pushing the issue downstream is better than tackling it directly in the forum created for this purpose.

The Eleventh Circuit warns a class cannot be certified when members have opposing interests—especially when some will benefit by harming others. To pass Rule 23, *all* class members must be handled equitably. To address this intra-class conflict, some guarantee of *adequate representation* should have been baked into the structure. Only by dividing the Subscriber Class into distinct subclasses—each with its own counsel and representative plaintiff—can this structural defect be repaired without tripping over ERISA.

## STANDARD OF REVIEW

A proposal to settle a class action lawsuit should not be approved before ensuring its terms are "fair, reasonable, and adequate". *Shiyang Huang v. Equifax Inc. (In re Equifax Inc. Customer Data Sec. Breach Litig.*), 999 F.3d 1247 (11th Cir. 2021). Neither should an action be certified for class treatment without ensuring every class member is "adequately represented". *Valley Drug Co. v. Geneva Pharms., LLC*, 350 F.3d 1181, 1189 (11th Cir. 2003). When the class is certified for *settlement purposes only*, the comparative treatment of distinct class members must be rigorously analyzed. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848–49 (1999).

Both of the foregoing decisions are reviewed for abuse of discretion. *Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir.2003). A district court crosses the line if it applies an incorrect legal standard, follows improper procedures, makes clearly erroneous factual findings, or applies the law in an unreasonable or incorrect manner. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir.2004).

## ARGUMENT

**I. The District Court Abused Its Discretion By Approving A Distribution Of Unclaimed Funds That Is *Fundamentally Unfair* Because It Enriches Employers At Employees' Expense Without Addressing The  Employer's ERISA Obligations Or Providing Employees Adequate Representation.**

Because the district court abused its discretion by certifying a settlement class that discriminates against unrepresented employees, this Court must vacate the class certification and reverse its settlement approval. At the close of the twentieth

century, the Supreme Court overturned two of the largest mass tort settlements in U.S. history because intra-class conflicts had rendered representation inadequate.[5] *Amchem* was especially concerned about the uneven allocation of settlement funds among various categories of plaintiffs—rewarding some while denying others. In light of these incompatible interests, some *structural* guarantee of fair and adequate representation for each constituency had to be baked into the plan. *Amchem Products*, 521 U.S. at 627.  Only dividing the settlement class into distinct *subclasses*—each with its own counsel and representative plaintiff—could overcome the problem. Class Counsel's failure to do so in these seminal cases didn't just undermine class certification—it negated the entire settlement.

The same warning signs appear in the present settlement. Because a settlement class enhances the opportunity for collusion, the impact on employees should have been rigorously analyzed. *Ortiz v. Fibreboard Corp*., 527 U.S. 815, 848–49 (1999) (requiring "heightened attention" to certification of settlement-only class action because certification "effectively concludes the proceeding"). Therefore, approving a distribution of unclaimed funds that robs the *only* unrepresented segment of the class abused the court's discretion. Since 2003, the amendments to Rule 23 have "unambiguously placed [the trial court] in the position of safeguarding the interests

---

[5] *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Ortiz v. Fibreboard Corp*., 527 U.S. 815 (1999).

of absent class members by scrutinizing settlements approved by class counsel."[6]

Topping the list are *intra-class conflicts*:

> There may be conflicts among groups within the proposed class. Question whether the claims of class members are homogeneous, and explore the possibility of creating subclasses and sending the parties back to renegotiate and take into account the differing interests of class members."

(Id. at 16). Unfortunately, the Plan's structure for distributing unclaimed funds fails the Supreme Court's test. Had the district court looked under the hood, it would have found an engine running on half its pistons (employers are running fine while employees are left behind).

### A.    A Distribution Of Unclaimed Funds That Rewards Employers at Employees' Expense Is *Ipso Facto* Unfair Because It Violates Rule 23's Requirement Of Adequate Representation and the Settlement's Own Mandate to Treat All Class Members "Equitably".

"While courts should not casually second-guess class settlements brokered by the parties, they should not greenlight them, either, just because the parties profess that their dubious deal is 'all right, all right, all right.'" *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021). Before Rule 23 was tweaked in 2018, courts exercised broad discretion as class fiduciary when evaluating fairness. *See*, *e.g.*, *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1253 (11th Cir. 2020). This Court charged district

---

[6] Managing Class Action Litigation: A Pocket Guide for Judges. Barbara J. Rothstein & Thomas E. Willging. Federal Judicial Center, 2005 at 8.

judges to exercise "careful scrutiny [to] guard against settlements that may benefit the class representatives or their attorneys at the expense of absent class members." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983). The judge must adopt the role of a skeptical client and critically examine the proposed settlement terms. *Manual for Complex Litigation* § 21.61. To that end, lower courts should weigh the Bennett factors.[7]

With Rule 23's latest amendment, the boundaries of judicial discretion were clearly defined. To survive appellate review, "the district court must show it has explored comprehensively all [Rule 23(e)(2)] factors, and must give a reasoned response to all non-frivolous objections." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021). When the settlement precedes class certification, the court must also look for "any subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations.". (Id. at 607).

Of the Rule's factors, *treating all class members equitably relative to each other* is critical. Rule 23(e)(2)(D). Arranging each element logically reveals a clear command: (1) similarly-situated class members (2) must be treated the same (3) when compared to each other (4) to ensure the settlement is "fair, reasonable and adequate." Against this standard, the inequity of the settlement's distribution of

---

[7] *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984).

unclaimed funds is readily apparent. Not surprisingly, Plaintiffs' expert strained to

justify the 'economic fairness' of gifting an employer its employees' wages:[8]

> First, as long as an FI Group submits a claim, the appropriate claims
> for that FI Group and its employees from the FI Net Settlement Fund
> depend upon the total premiums associated with that FI Group. The
> division of group premiums is a zero sum exercise with each dollar
> assigned to either the FI Group or one of its FI Employees. The
> resulting allocation between the FI Group and its FI Employees does
> not affect the total premiums paid by any other claimant that is
> unaffiliated with that FI Group and it is reasonable that those claimants
> have no opportunity to make a claim on those premiums.
>
> Second, I understand that claims by FI Employees face potential
> standing challenges compared to those of FI Groups If the FI
> Employee claims were to fail, I understand that the FI Groups have the
> opportunity to seek compensation based on the entire FI Group
> Premium. This is economically consistent with treating the FI Group
> as the residual claimant.

(Dkt. 2610-9 at ¶¶ 19-20). The expert's authoritative defense, however, merely

rationalizes the windfall awaiting every employer who raided the payroll year-after-

year to subsidize the company's premiums. First and foremost, zero-sum theory has

no application to the Plan's distribution of unclaimed funds. At best, the employer's

obligation to pay the company's premiums for a Blue Plan could be considered a

*series* of zero sum games (whereby every dollar deducted from an employee's

paycheck is one less dollar the company must contribute) that is completed month-

---

[8]Raising employee default percentages to increase their participation was another rationale
given for favoring employers. If the parties really wanted this outcome, however, they
would have placed employees at the *top* of the range, not near the *bottom*. Because
employers' percentages were raised even higher, this "plan" had no chance of succeeding.

after-month. In contra-distinction, the settlement requires distributing all unclaimed funds for games already *completed* to the employer—after-the-fact, and without the employees' consent. This unilateral reformation of the employer-employee relationship destroys the game's premise by breaking its rules. To sustain the expert's analogy, employers would have to make a reasonable effort to locate FI Group's group's non-claiming employees before their claims expire. Only then could the remaining unclaimed funds be distributed for pro-rata allocation to *all* settlement class members. Try as you might, there's no conceivable scenario where the money ends up in the *employer's* lap.

To avoid this trap, the expert conflates two concepts. In the process, he's snagged by a bigger one: the *non sequitur*. First, there are only two ways to distribute unclaimed funds: (1) a 'claims made' basis (where residual funds revert to the defendant) or (2) a 'common fund' (where the funds are shared among all class members). That the current settlement anticipates a *common fund* is clear from the Agreement:

> If there is any balance remaining in the Escrow Account after distributions to Authorized Claimants, the Fee and Expense Award, and Service Awards, and after any payment in full of the remaining balance of the Notice and Administration Fund to Settling Defendants (including accrued income), the Claims Administrator will, subject to Court approval, **reallocate the Settlement Fund among Settlement Class Members** in an equitable and economic fashion. (emphasis added)

(Dkt. 2610-2 at 48). Since the settlement requires distributing residual funds to *all* settlement class members, Plaintiffs' expert had no reason to worry about one FI Group 'laying claim' to another Group's unclaimed funds. *But for* the single exception of awarding unclaimed funds to employers, any money not claimed by employees would be reallocated to all claimants on a pro-rata basis.

Second, the expert's concern about employee standing is a red herring. Distinguishing employees as a subset of claimants acknowledges *ab initio* that they possess distinct interests requiring independent counsel. The most common way to treat this situation in an antitrust class action is to separate direct and indirect purchasers into two classes.[9] Here, it can be said the employer *directly* purchases a fully-insured group health plan, while participating employees contribute *indirectly* by payroll deduction. Had the employees received adequate representation, their Sub-Class counsel would have corrected this structural defect.

Third, certifying a class for settlement purposes only removes the "intractable management problems" of trial because the burden of establishing liability is removed. *Amchem*, 521 U.S. at 620. Fourth, commonality and predominance are not defeated merely because rights and remedies differ among the states. *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3rd Cir. 2010). Fifth, the district court's preliminary

---

[9] Stephen Carr. *Reconsidering Indirect-Purchaser Class Actions*. Florida Law Review, Vol. 67, Issue 2 (Jan. 2016) at 915.

order approving settlement declared *all* Subscriber Plaintiffs (including employees) have standing to assert the claims. (Dkt. 2812-1 at 40). Finally, Class Counsel concedes the employees' default allocation percentages barely exceed the minimum actually contributed. Their admission implies a direct relationship between employee *representation* and employee *recovery*. Even the assumption that employers possess greater rights was never questioned.

This blatant discrimination against employees—without adequate representation during key negotiations affecting their rights—could even give rise to charges of *collusion*. *See, e.g. In re Baldwin-United Corp.*, 105 F.R.D. 475, 480 (S.D.N.Y.1984); *Mars Steel v. Continental Illinois Nat'l Bank & Trust*, 834 F.2d 677, 680 (7th Cir.1987); *Malchman v Davis*, 706 F.2d 426, 433 (2d Cir.1983). Yet, paradoxically, even the *allocation mediator* confused the Plan's distribution of unclaimed funds with a pro-rata allocation. (Dkt. 2610-8 at ¶7). *Genuine* pro-rata allocation, however, doesn't need a sophisticated defense. It simply distributes residual funds proportionally among *all* claimants according to the Plan. This tried-and-true method leaves no wiggle room for fairness.

Objector-Appellants' concern is far from hypothetical. The fallout from the settlement's distribution of unclaimed funds is quantifiable. Above all, the default allocation percentages—combined with the distribution of unclaimed funds—*guarantees* employers will benefit from this settlement at employees' expense. This

Court has warned "a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir.2000).

Instead of providing employees adequate representation, the distribution of unclaimed funds hits them with a *double-whammy*: (1) because the employers' windfall will increase their claim participation, the average employee's award will shrink even further;[10] (2) because unclaimed funds won't be added to the common pool shared by all claimants, employees will be robbed of their rightful portion. A greater offense to fairness would be hard to find; a simpler way to correct the inequity would be hard to miss: *adequate representation*.

### B.    The Distribution Of Unclaimed Funds Also Ignores FI Group Employers' ERISA's Obligation To Handle Plan Assets Exclusively For the *Employees*' Benefit.

To add insult to injury, the disincentive to notify employees of their rights may violate the employer's ERISA obligation. Since the distribution of unclaimed funds designates employees' unclaimed funds as plan assets, the employer's fiduciary role arose the moment the Settlement was approved. After all, an employer

---

[10] See https://melitagroup.com/blog/blue-cross-blue-shield-class-actionlawsuit/ (accessed 07/26/21). If 100% of eligible claimants participate in the Settlement, the average total annual award (excluding individual plans and ASO contracts) will be $2.78.

can become a functional fiduciary simply by exercising discretionary authority over the assets. 29 U.S.C. §1002(21)(A); *Hamilton v. Allen-Bradley Co.* , 244 F.3d 819, 824 (11th Cir. 2001) (obligation may arise "from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document"). Once the employer is deemed a fiduciary, it becomes liable for breaching a fiduciary responsibility.

This Circuit has already affirmed ERISA's fiduciary obligations arise the moment they're created. In *Gimeno v. NCHMD, Inc*., 38 F.4th 910 (11th Cir. 2022), the Court considered whether ERISA authorizes the equitable recovery of unperfected benefits due to an employer's failure to act timely. The employee's widow alleged she was denied life insurance coverage years after the employer failed to notify him of the need to submit proof of insurability upfront. *Id.* at 913. Although the ERISA implications were a matter of first impression in the Eleventh Circuit, the Court ultimately sided with the widow.

Similarly, the current settlement entrusts plan employers with managing the distribution of unclaimed funds in the best interest of their employees. (Dkt. 2715-1 at 11). Although the initial distribution could take years, the plan conceived for distributing unclaimed funds may have created the same fiduciary obligation enforced in *Gimeno*. Since employers must provide plan information on demand, employees could even seek an equitable accounting to determine how they plan to

16

spend their money. *First Nat. Life Ins. Co. v Sunshine-Jr. Food Stores, Inc*., 960 F.2d 1546, 1550 (11th Cir. 1992) (Clark concurring). Because the employees' rights were sealed upon the settlement's approval, employers should have made a reasonable effort to forward the class notice to every participating employee. Instead, the Settlement Website stated that employers need not tell employees about the settlement and represented all covered employees will receive a class notice.[11]

The national institution charged with *enforcing* ERISA respectfully disagrees. As an independent federal agency, the U.S. Department of Labor's ("DOL's") mission is to "foster, promote, and develop the welfare of the wage earners, job seekers, and retirees of the United States; improve working conditions; advance opportunities for profitable employment; and assure work-related benefits and rights." To that end, the Secretary is responsible for administering and enforcing Title I of ERISA. In his own words:

> The Secretary thus has a strong interest in ensuring that settlements that impact ERISA-covered employee benefits plans comply with the fiduciary requirements of Title I of ERISA. The Secretary also has a strong interest in ensuring that assets of ERISA plans are properly allocated in settlements, and that their participants and beneficiaries receive all benefits to which they are entitled.

(Dkt. 2812-13 at 3). His strong interest is well-founded. ERISA warns "the assets of a plan shall never inure to the benefit of any employer [and] shall be held for the

---

[11] https://www.bcbssettlement.com/faq (accessed 12/08/22).

exclusive purposes of providing benefits to participants in the plan and their beneficiaries []." (Id. at 5). After reviewing the papers, the Secretary had "several substantial legal concerns that he believes need to be resolved before the proposed settlement is approved by the Court." (Id. at 2).

Most disturbing was that 100% of a group's unclaimed *employee* premiums will be awarded to the *employe*r. (Id. at 4). The Secretary cautioned that ERISA fiduciaries must act "with respect to a plan solely in the interest of participants and beneficiaries" for the singular purpose of providing benefits. Id. In fact, he considers this duty "the highest known to law." Id. (citing *ITPE Pension Fund v. Hall*, 334 F.3d 1011 (11th Cir. 2003). At the fairness hearing, DOL's counsel summed up the Secretary's apprehension:

> We are concerned that the proposed settlement does not account for the specific legal interests of class-member ERISA plans, the potential for *conflicts* between ERISA plans and other class members, e.g., sponsoring employers, and the potential for the assets of ERISA plans to improperly flow to their *employer sponsors*.
>
> * * *
>
> Based on the lack of class representation and the seeming conflation of ERISA plans and their employer sponsors, the Secretary is concerned that the proposed settlement conflicts with Rule 23's *adequate representation* requirement. (emphasis added)

(Id. at 6-7). His concern is heightened by the grave uncertainty surrounding an employer's ERISA responsibility under these circumstances. (Id. at 21). Employers are generally required to promptly deposit all employee contributions into the plan's

trust. Due to the settlement's unorthodox distribution of unclaimed funds, employers must now determine *when* unclaimed funds become plan assets and *how* the funds may be lawfully invested to benefit their employees.[12] Based on personal knowledge and experience, the Secretary fears the very concept of distributing unclaimed funds to the employer may constitute an *ipso facto* breach of their ERISA obligation. (Dkt. 2866 at 7). DOL's counsel couldn't agree more:

> [I]n our view, it's one thing for employers to obtain recoveries attributable to their own employer contributions, *but there is no conceivable justification, in our opinion, for employers to obtain recoveries attributable to employee contributions*. That--those recoveries should, in the first instance, go to the employees if they make claims. If they do not make claims, they should go to the plan in which the employees participated and to which they made contributions. (emphasis added)

(Id. at 8). Put another way: the *conception* of distributing unclaimed funds to employers gave *birth* to fiduciary responsibilities they never imagined. Instead of addressing this dilemma head-on, Class Counsel pushed the whole issue downstream in a footnote:

> These allocations relate solely to what an employer or employee receives under the Settlement, and do not in any way purport to dictate or address what, if any, obligations employers may have as fiduciaries of ERISA plans, or how that may impact their use of any funds received.

---

[12] While DOL hasn't advised employers on this issue, its guidance on Medical Loss Ratio rebates may be helpful. In deciding how to allocate a rebate (e.g. distributing to participants), the fiduciary must consider the costs and benefits of each option.

(Dkt. 2610-5 at 18, fn.16). The settlement's website only makes matters worse. In the Q&A, employers are told they need not notify employees about the settlement since they'll receive a notice from the court anyway. Apparently, Class Counsel assumed that acknowledging a *future* problem nullifies their *present* responsibility. In the process, they missed an obvious solution. Because the funds aren't plan assets until assigned to the employer, a pro-rata allocation among all claimants would have eliminated any concern about their fiduciary obligation because it would never *arise*. (Dkt. 2931 at 78-79). But if left alone, DOL counsel explained what's at stake:

> [W]hen employees do not make a claim, then a hundred percent of the premium for that employee gets -- reverts to the employer. And, of course, a hundred percent includes the portion of the premium that was paid for with employee contributions. And in our view, it's one thing for employers to obtain recoveries attributable to their own employer contributions, but *there is no conceivable justification, in our opinion, for employers to obtain recoveries attributable to employee contributions*.
>
> * * *
>
> And so the fact that the settlement agreement – and this is sort of the low-hanging fruit here -- does not ensure that these what I'll call unclaimed employee contributions go to the plan exemplifies -- or best exemplifies, in our view, why the plans do not seem to be adequately represented in this negotiation. (emphasis added)

(Dkt. 2866 at 8-9). DOL'S concern about adequate representation never reached the court's ears. First, the court assured the Secretary there were plenty of employers serving as class representatives who had employees' interests at heart. (Id. at 9). Next, he pushed ERISA concerns 'downstream' with the expectation that every employer will follow their lead. (Id. at 17). The court then added: "[I]f the employees

think the employer has not [] fulfilled its responsibility under ERISA, they could bring an administrative or litigation claim against the employer [] rather than making a settlement administrator police this for what may be millions of employers." (Id.) The Court preferred this approach over making the administrator resolve every dispute or figure out who actually submitted claims. (Id. at 17, 19). The court concluded that preserving an employee's right to sue his employer is sufficient. (Id. at 23). The final order stayed true to its word:

> [A]s the Settlement Proponents have made clear, (1) ERISA plan rights are not affected by the Settlement and, further, (2) the Settlement Agreement does not release any claims that an ERISA plan may have against an employer. To be clear, all ERISA duties still apply, all ERISA fiduciaries must comply with those duties, and this Settlement does nothing to change or alter ERISA rights. To the extent an ERISA plan does not approve of what an employer does with Settlement proceeds, the plan's right to sue the employer under ERISA is wholly unaffected by this Settlement.

(Dkt. 2931 at 76). Where the Secretary focuses on *plans,* Objector-Appellants target *employees*. Since a plan only exists to benefit employees, both interests are perfectly aligned—what hurts one, injures the other. At best, the lopsided distribution of unclaimed funds was an innocent oversight. At worst, it was intended to sweeten the employers' take so Class Counsel could close a multi-billion settlement primed to pay $600 million in fees. In the end, the court dismissed all concerns about employee representation with a simple answer: "[E]mployers and ERISA plans are responsible for complying with applicable ERISA and DOL guidance, and nothing in the

Settlement or the Plan of Distribution relieves them of those obligations." (Id. at 79).

### C.    This *Intraclass Conflict* Can't Be Cured By Tossing A 'Hot Potato' Onto The Employers' Lap.

That the very agency charged with enforcing ERISA couldn't fathom the employer's fiduciary obligation under the Settlement should have raised a red flag. The court's decision to kick the can down the road anyway was beyond illogical—it betrayed Rule 23's very purpose. According to the 1966 Advisory Committee, the Rule was intended to encourage cases with "economies of time, effort, and expense" and to discourage those that will "degenerate in practice into multiple lawsuits separately tried."[13] The Court's final order reversed the polarity between "good" and "bad" class settlements. As a consequence, the order could spawn—in the court's own words—"millions" of mini-trials once the settlement closes. (Dkt. 2866 at 9).

#### 1.    Because A Class Action Is The Best Vehicle For Resolving This Inequity, Pushing The Issue Downstream Violates the Settlement's Matching Requirement to Allocate Unclaimed Funds "Economically."

The legal and factual errors regarding the Plan's distribution of unclaimed funds are multi-faceted. First, the court assumed DOL was proposing a structural change to the settlement. In truth, the Secretary pleaded for adequate *representation*, not a revamped *structure*. (Dkt. 2866 at 6). Next, it speculated DOL's proposal will

---

[13] Advisory Committee Notes to 1966 Amendment of FRCP Rule 23 (Subsection (b)(3)).

force the administrator to supervise a mountain of murky ERISA disputes. (Dkt. 2715-1 at 14). Conversely, the court assumed the settlement will be easier to administer by maintaining the status quo. (Id.). The Court was wrong on both counts. On one hand, the alternative procedure for establishing a participant's actual contributions is laden with extraordinarily burdensome obstacles. The claims process set forth in the Plan contains no fewer than *seven steps*:

> **STEP ONE**: Claims Administrator informs claimant of opportunity to submit additional evidence that will assist his determination.

> **STEP TWO**:  Claimant completes claim form and submits "sufficient data, records, or other materials" supporting higher contribution

> **STEP THREE-A**: Claims Administrator decides (in his discretion) that claimant failed to provide sufficient data, records, or other materials to justify higher allocation.

> **STEP THREE-B**: Claims Administrator decides (in his discretion) that claimant provided sufficient data, records, or other materials to support a higher contribution for *part* of his claim only.

> **STEP FOUR**: Claims Administrator forwards findings and relevant materials pertaining to approved claim (in whole or part) to Settlement Administrator.

> **STEP FIVE**: Settlement Administrator determines (in his discretion) appropriate allocation after considering the following:

>> i. Any supporting data, records or other materials presented by the entities or persons submitting those materials in support of their election of the Alternative Option, considering both the reliability and the comprehensiveness of the materials;

>> ii. Any additional data, records, or other materials that either the Claims Administrator or the Settlement Administrator may request from parties impacted by the election of the Alternative option; and

iii. The same factors that are listed above that were taken into account by Class Counsel and the Allocation Mediator in approving the Default percentages, and any associated data, records, or other materials submitted by the parties regarding those factors.

**STEP SIX**: Settlement Administrator reports conclusion to Claims Administrator

**STEP SEVEN**: Claims Administrator notifies claimant of final decision (which is non-appealable)

In addition to being cumbersome, the procedure is saturated with subjectivity and discretion. Since employers aren't required to provide data on historical premiums or administrative fees either,[14] it also assumes employees have been diligently saving pay stubs for years. For all practical purposes, the alternative option converts the settlement's common fund into one that functions much like a *claims made* settlement. Only now, employees must bicker with an administrator so their funds don't revert to the employer. This burdensome procedure probably wouldn't even pass the traditional 'claims made' test. *See*, *e.g.*, *Tweedie v. Waste Pro. of Fla., Inc.* (M.D. Fla. 2021) at *12 (district court may consider such factors as an unjustifiably burdensome claims procedure and unduly preferential treatment of the class representative). Given these formidable hurdles, requiring the Claims Administrator to decide thousands of alternative applications may be *more* burdensome than making employers decide how to spend unclaimed funds.

---

[14] https://www.bcbssettlement.com/faq (accessed 12/08/22).

Most disturbing of all, Judge Proctor *admits* the approved Plan may ignite "millions" of individual lawsuits once the Settlement closes. (Dkt. 2866 at 8-9). This ominous prediction belies any notion that pushing the issue downstream is better than tackling it directly in the forum created for this very purpose. Still, the court was convinced that "the plan is going to be much more able to enforce rights efficiently if [employees] can go straight into a court of competent jurisdiction and assert [the ERISA] claim as opposed to get in line with everyone else here and eventually work their way to my desk and have me enforce that." (Id. at 26). That none of the representative employers seemed concerned about ERISA's nebulous implications is equally foreboding. As is the fact that Class Counsel's position on superiority *flip-flopped* the moment the ink dried on the $2.7 billion settlement. As alleged in the Fourth Amended Complaint:

> Treatment of this case as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a *single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender*. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate antitrust claims such as are asserted in this Complaint. This class action does not present any difficulties of management that would preclude its maintenance as a class action. (emphasis added)

 (Dkt. 2616 at ¶ 330). When Plaintiffs gave this assurance, the plans were already recognized as class members. To pretend Class Counsel didn't appreciate ERISA's impact on class manageability until the eleventh-hour strains credibility. Likewise,

the court's failure to address the employers' fiduciary obligations constitutes abuse of discretion.

**2. The Only Way To Resolve This Structural Defect Is To Appoint Independent Counsel and an FI Group Employee To Represent A Subclass Of Employees For the Purpose of Ensuring a Fair Allocation Method That Treats All Class Members *Equitably* And Distributes All Unclaimed Premiums *Economically* Without Tripping Over ERISA.**

Key to Objector-Appellants' challenge is that class action judgments bind *all* members of the class. *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1054 (5th Cir.1979). Consequently, traditional principles regarding res judicata and claim preclusion apply with equal force. *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226 (11th Cir.1998). One way an absent class member can attack a class settlement is lack of due process. *Johnson v. General Motors Corp.*, 598 F.2d 432, 435, 437 (5th Cir.1979). This flexible constitutional principle ensures fundamental fairness. *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320, (1985). A common pitfall is failing to provide adequate representation for each sub-group with distinct interests. *Juris v. Inamed Corp.*, 685 F.3d 1294, 23 Fla. L. Weekly Fed. C 1251 (11th Cir. 2012). A fundamental conflict on a significant issue could even defeat class certification *Valley Drug Co. v. Geneva Pharms., LLC*, 350 F.3d 1181, 1189 (11th Cir. 2003).

When a class plaintiff's interest conflicts with the class members he's supposed to represent, the law presumes their claims won't be "vigorously

prosecuted". *See, e.g.*, *Auto Ventures, Inc. v. Moran*, 1997 WL 306895 (S.D.Fla.1997) (refusing to certify a class of Toyota dealers because "the class collapses into distinct groups of winners and losers"). Conflicts that matter are "those that give rise to a significant potential for negotiation on behalf of an undifferentiated class to skew in some predictable way the design of class-settlement terms in favor of one or another subgroup for reasons unrelated to evaluation of the relevant claims."[15] This kind of structural defect may sap class counsel of the incentive to zealously represent both groups. *In re Payment Card Interchange Fee &amp; Merch. Disc. Antitrust Litig.,* 827 F.3d 223, 236 (2nd Cir. 2016). Only class counsel's interest in fees and defendant's interest in bundling claimants can explain their unified front. Id.

That Class Counsel recognized the importance of this bedrock principle in the present case is shown in their initiative to recruit separate counsel and plaintiff to represent the "Self-Funded Settlement Sub-Class" in settlement negotiations. (Dkt. 2610-6 at ¶ 31). After *seven years* of litigation (including four in mediation), Class Counsel finally realized the interests of Self-Funded members don't align with Individual Members and Insured Groups. At this stage of the proceedings, the Sub-Class representative could only take part in  settlement negotiations and award

---

[15] Samuel Issacharoff & Richard A. Nagareda. Class Settlements Under Attack, 156 U. PA. L. REV. 1649, 1684 (2008). See also Principles Of The Law Of Aggregate Litigation § 2.07(a)(1)(B) (AM. LAW INST. 2009).

allocations. At the time attorney Warren Burns (Hibbett's counsel) was appointed, "the amount of any split of the Net Settlement Fund between fully insured and self-funded claimants had not been determined, was not a condition of [his] retention, nor was any such split discussed before [his] engagement." (Dkt. 2610-7 at ¶ 4). Subsequent to his appointment, Burns reviewed all relevant discovery, retained independent experts and participated in all mediation sessions. (Id. at ¶¶ 5-6). After reviewing additional discovery, Burns assessed the settlement's impact, estimated appropriate allocations and negotiated favorable terms for his sub-class. (Id. at ¶ 7). Only then was the Court able to pronounce their allocation truly "equitable." (Dkt. 2931 at 4).

*The same steps should have been taken to protect employees' special vulnerability.* In contrast to Self-Funded members, employees had no separate representation during the settlement talks (including numerous consultations on allocation formulae and employer-employee ratios). To the contrary, the Long Form Notice skirted the issue entirely by assuring employees they "do not need to hire a lawyer because Co-Lead Counsel is working on your behalf."

The Eleventh Circuit frowns on this type of intra-class conflict. In *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003), retail and wholesale buyers were merged into a single class. The structure, however, appeared to benefit wholesalers at the end users' expense. To this Court's knowledge, "no circuit ha[d]

approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representatives of the class." *Id.* at 1190. (citing *In re HealthSouth Corp. Securities Litigation*, 213 F.R.D. 447, 462 (N.D.Ala.2003). The Court explained that:

> …the claims of these disparate groups cannot be mixed together under Rule 23(a) where the economic reality of the situation leads some class members to have economic interests that are significantly different from—and potentially antagonistic to—the named representatives purporting to represent them.

*Id.* at 1195. Even the *possibility* of a disparate outcome had rendered the groups incompatible. *Id.* at 1194. According to a footnote:

> Even if we assume ex arguendo that all of the plaintiff class members share one common interest, e.g., vindicating the nation's antitrust laws, this common interest alone would not be sufficient to satisfy Rule 23(a)(4) because *a fundamental conflict still exists where the actual economic interests and objectives of the class members diverge* because some members experienced a net benefit from the defendant's conduct while others are harmed. (emphasis added)

(Id. at footnote 22). In light of *Valley Drug*'s serious conflict, the Court felt compelled to vacate the certification order. The distribution of unclaimed funds approved by the district court crosses the same line. The only difference here is that the fallout is far more serious. There's no way around it, a structural problem requires a structural solution—adequate representation for employees.

## CONCLUSION

The district court abuse its discretion by approving a distribution of unclaimed employee funds that is fundamentally unfair because it enriches employers at employees' expense without addressing the employer's ERISA obligations or providing employees adequate representation. Accordingly, Objector-Appellants respectfully ask this Court to vacate its certification of the class action and to reverse the approval of the settlement, with instructions on remand to provide adequate representation for a separate Sub-Class of FI Group employees in order to develop a fair method of allocating unclaimed funds that treats all Authorized Claimants *equitably* and distributes all unclaimed funds *economically* without tripping over ERISA.

Dated: December 12, 2022          Respectfully submitted,

/s/ George W. Cochran
George W. Cochran
*Counsel for Objector-Appellants*
*Jennifer Cochran and Aaron Craker*
1981 Crossfield Circle
Kent, Ohio 44240
Tel:  (330) 607-2187
Fax:  (330) 230-6136
lawchrist@gmail.com

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,061 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: December 12, 2022.

*/s/ George W. Cochran*
George W. Cochran
1981 Crossfield Circle
Kent, Ohio 44240
Tel:  (330) 607-218
Fax:  (330) 230-6136
lawchrist@gmail.com

*Counsel for Objectors-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Those counsel for Appellants and Appellees who are registered ECF users will be served by the ECF system.

Dated: December 12, 2022.

*/s/ George W. Cochran*
George W. Cochran
1981 Crossfield Circle
Kent, Ohio 44240
Tel:  (330) 607-218
Fax:  (330) 230-6136
lawchrist@gmail.com

*Counsel for Objectors-Appellants*

xxviii