**No. 22-13051-HH**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION (MDL 2406)

**On Appeal from the United States District Court for the
Northern District of Alabama, Southern Division,
No.  2:13-CV-20000-RDP**

### REPLY BRIEF OF APPELLANTS
### TOPOGRAPHIC, INC. AND EMPLOYEE SERVICES, INC.

Richard D. Nix
Henry D. Hoss
M. Richard Mullins
Mark D. Spencer
MCAFEE & TAFT A PROFESSIONAL
CORPORATION
Eighth Floor, Two Leadership Sq.
211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439
richard.nix@mcafeetaft.com
henry.hoss@mcafeetaft.com
richard.mullins@mcafteetaft.com
mspencer@mcafeetaft.com

Michael R. Pennington
J. Thomas Richie
Emily M. Ruzic
BRADLEY ARANT BOULT CUMMINGS LLP
1819 5th Avenue North
Birmingham, Alabama 35203
(205) 521-8447
mpennington@bradley.com
trichie@bradley.com
eruzic@bradley.com

Virginia N. Adamson
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division St, Suite 700
Nashville, Tennessee 37203
(615) 252-3885
jadamson@bradley.com

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, Alabama 35801
(256) 517-5198
ssmith@bradley.com

*Counsel for Appellants Topographic, Inc. and Employee Services, Inc.*

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11TH CIR. R. 26.1 and 11TH CIR. R. 26.1-1(b), Appellants hereby certify that the list of those interested in the outcome of this appeal in Appellants' Brief is complete.

**Corporate Disclosure**. Pursuant to FED. R. APP. P. 26.1 and 11TH CIR. R. 26.1-1, 26.1-2, and 26.1-3, Appellants submit this Corporate Disclosure Statement and state as follows:

1. Appellant Topographic, Inc. has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

2. Appellant Employee Services, Inc. has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

## TABLE OF CONTENTS

**Page**

Certificate Of Interested Persons And Corporate Disclosure Statement ..............C-1

Table of Citations ....................................................................................... ii

Introduction ....................................................................................................1

Argument.........................................................................................................2

    I.    The District Court applied the wrong standard of review....................2

    II.    The District Court erred by approving the self-funded damages period...........................................................................................18

    III.    The District Court erred by approving the settlement based on an arbitrary 50% discount factor. ......................................................27

    IV.    No allocation was necessary. ...........................................................29

Conclusion .....................................................................................................30

T<small>ABLE OF</small> C<small>ITATIONS</small>

**Page(s)**

**Cases**

*Am. Pipe & Constr. v. Utah*,
   414 U.S. 538 (1974)...................................................................1, 18, 23, 25, 27

*In re: Androgel Antitrust Litig. (No. II)*,
   2015 WL 9581828 (N.D. Ga. Dec. 30, 2015) ....................................................17

*In re Blue Cross Blue Shield Antitrust Litig.*,
   No. 18-90020 (11th Cir. Dec. 12, 2018)............................................................20

*Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984) ......................................11

*Cargill v. Monfort of Colo.*,
   479 U.S. 104 (1986)...........................................................................................27

*Carter v. Forjas Taurus, S.A.*,
   701 F. App'x 759 (11th Cir. 2017) ....................................................................16

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .........................................................................4, 16

*In re Chicken Antitrust Litig.*,
   669 F.2d 228 (5th Cir. Unit B 1982) .................................................................12

*Cliff v. Payco Gen. Am. Credits*,
   363 F.3d 1113 (11th Cir. 2004) ...........................................................18, 23, 25

*Coon v. Ga. Pac.*,
   829 F.2d 1563 (11th Cir. 1987) ........................................................................27

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ......................................................................12, 29

*Crown, Cork & Seal v. Parker*,
   462 U.S. 345, 353–54 (1983)................................................................18, 19, 27

*Day v. Persels & Assocs.*,
   729 F.3d 1309 (11th Cir. 2013) ..................................................................14, 24

\*_Dewey v. Volkswagen Aktiengesellschaft_,
   681 F.3d 170 (3d Cir. 2012) ................................................................29

_Drazen v. GoDaddy.com, LLC_,
   2020 WL 4606979 (S.D. Ala. Aug. 11, 2020).....................................4

_Epic Games v. Apple_,
   559 F. Supp.3d 898 (N.D. Cal. 2021) ....................................................9

\*_In re Equifax_,
   999 F.3d 1247 (11th Cir. 2021) ..........................................................17

_Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec._,
   2010 WL 1737875 (S.D. Ind. Apr. 28, 2010)....................................17

\*_Griffin v. Singletary_,
   17 F.3d 356, 360 (11th Cir. 1994) ......................................................18

_Halley v. Honeywell Int'l_,
   861 F.3d 481 (3d Cir. 2017) ...............................................................12

_Herrera v. Charlotte School of Law_,
   818 F. App'x 165 (4th Cir. 2020) .......................................................28

\*_Holmes v. Continental Can Company_,
   706 F.2d 1144 (11th Cir. 1983) ..................................................._passim_

_In re Holocaust Victim Assets Litig._,
   424 F.3d 132 (2d Cir. 2005) .................................................................4

_In re Ins. Brokerage Antitrust Litig._,
   618 F.3d 300 (3d Cir. 2010) ...............................................................20

_Kim v. Allison_,
   8 F.4th 1170 (9th Cir. 2021) .................................................................2

_King v. Cessna Aircraft_,
   2010 WL 5253526 (S.D. Fla. Sept. 13, 2010) ...................................25

_Krupski v. Costa Crociere S. p. A._,
   560 U.S. 538 (2010).............................................................................25

*Makro Capital of America, Inc. v. UBS AG*,
  543 F.3d 1254 (11th Cir. 2008) ..........................................................25

*Muransky v. Godiva Chocolatier*,
  922 F.3d 1175 (11th Cir. 2019) ...........................................................3

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................5

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ...............................................................6

*Reynolds v. King*,
  790 F. Supp. 1101 (M.D. Ala. 1990) ....................................................3

*\*Roes, 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ..........................................................2, 5

*Sali v. Corona Reg'l Med. Ctr.*,
  907 F.3d 1185 (9th Cir. 2018) .............................................................14

*Sanders-Burns v. City of Plano*,
  594 F.3d 366 (5th Cir. 2010) ...............................................................25

*Sher v. Raytheon*,
  419 F. App'x 887 (11th Cir. 2011) ......................................................13

*In re Southwest Airlines Voucher Litig.*,
  799 F.3d 701 (7th Cir. 2015) ................................................................4

*Sterling v. Stewart*,
  158 F.3d 1199 (11th Cir. 1998) ...........................................................12

*Sullivan v. DB Invs.*,
  667 F.3d 273 (3d Cir. 2011) .................................................................4

*ZF Meritor v. Eaton*,
  696 F.3d 254 (3d Cir. 2012) ...............................................................13

**Statutes**

15 U.S.C. § 15(a) ....................................................................................27

15 U.S.C. § 26 .........................................................................................26

## Other Authorities

*FED. R. CIV. P. 15(c) ...........................................................................18, 25

FED. R. CIV. P. 19(a)–(b) ...........................................................................20

*FED. R. CIV. P. 23(e)(2) ........................................................................*passim*

*FED. R. EVID. 702 ...........................................................................13, 15

6A FEDERAL PRACTICE & PROCEDURE CIVIL § 1498.1 & nn.13–18 (3d
    ed. Aug. 2022 update) ...........................................................................25

## INTRODUCTION

The District Court failed to satisfy its fiduciary duty under Rule 23(e)(2)(D) and *Holmes v. Continental Can Company* to carefully scrutinize this settlement allocation. Instead, it approved a 93.5%-6.5% allocation ratio based on erroneous factual findings and an inadequate evidentiary record. Rather than substantiate the allocation, the Fully Insured Subclass's brief attempts—unsuccessfully—to deflect attention from its lack of support. The Self-Funded Subclass's expert could not explain the math supposedly supporting the allocation, preventing Self-Funded Subclass Objectors and in turn the District Court from checking the math. This Court cannot check the math either because the numbers are not in the record. Rule 23(e)(2)(D) and *Holmes* require a cross-check of the math to prevent a sellout. Thus, the Court may reverse on this ground alone. Appropriate scrutiny of the record would produce an allocation closer to 50%-50%.

Additionally, the erroneous allocation rests on the District Court's mistaken approval of the foreshortened Self-Funded damages period. Whether under relation-back principles or *American Pipe* tolling, BCBS had actual notice that self-funded plans' claims were part of the nationwide injunctive relief class from the beginning. The District Court erred in finding otherwise. The District Court also erred by

applying a 50% discount to the Self-Funded Subclass's claims. This unsupported double discount was error.

In sum: The District Court's failure to provide adequate scrutiny allowed a sellout of the Self-Funded Subclass's claims. Its approval must be reversed.

**ARGUMENT**

## I. The District Court applied the wrong standard of review.

The District Court failed to provide careful judicial scrutiny of the facially unfair allocation as required by amended Rule 23(e)(2) and *Holmes*. As a result, it approved an allocation supported by little more than the inadequate assurances of counsel. The Fully Insured Subclass's counterarguments fail.

*First*, the Fully Insured Subclass is wrong that the District Court should have applied "rational basis review." F.I.106. Amended Rule 23(e)(2) requires courts to apply "heightened scrutiny" to class settlements, and failure to do so is an abuse of discretion. *Kim v. Allison*, 8 F.4th 1170, 1179 (9th Cir. 2021); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir. 2019). Rule 23(e)(2) specifically requires independent review of whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This Court's decision

2

in *Holmes* predates but is consistent with amended Rule 23(e)(2)(D). Under *Holmes*, "a factual showing," i.e., math, is necessary to approve a facially unfair allocation. 706 F.2d 1144, 1148 (11th Cir. 1983). The assurances of counsel do not suffice. *Id.* at 1148–51.

The Fully Insured Subclass does not address Objectors' argument that amended Rule 23(e)(2)(D) itself requires heightened scrutiny. It instead misquotes *Holmes* as requiring that "[a]n allocation need only be 'rationally based on legitimate considerations.'" F.I.104 (quoting 706 F.2d at 1148). Although it string cites cases supposedly demonstrating the absurdity of Objectors' contrary interpretation, *id.* at 107 n.32, most of them cite *Holmes* without discussing its holding or reasoning, and none of them address the facially unequal allocation at issue there.

Courts that have discussed *Holmes* in more depth have *agreed* with Objectors that *Holmes* articulates a heightened scrutiny standard, under which "a disparate distribution raises" an "inference of unfairness" that "may be rebutted by a *factual showing*."[1] *Reynolds v. King*, 790 F. Supp. 1101, 1106 (M.D. Ala. 1990) (emphasis

---

[1] *See, e.g.*, *Muransky v. Godiva Chocolatier*, 922 F.3d 1175, 1196–97 (11th Cir. 2019), *reversed on standing grounds by*, 979 F.3d 917 (11th Cir. 2020) (recognizing that, under *Holmes*, a "substantial burden falls upon the proponents of

in original). They also agree that, under this standard, "statements from class counsel" are insufficient to rebut the inference of unfairness. *Id.* Moreover, *Holmes* resembles cases involving other potentially suspect circumstances that trigger heightened scrutiny. *See, e.g.*, *In re Southwest Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015) ("Clear-sailing and kicker clauses weigh substantially against the fairness of a settlement and call for 'intense critical scrutiny by the district court.'" (citation omitted)).

The Fully Insured Subclass's attempt to distinguish *Holmes* factually based on the creation of subclasses here is no more successful. F.I.107. The *relevant* factual similarity to this case is the "facially unfair[ ] allocation." *Holmes*, 706 F.2d at 1150.

The Fully Insured Subclass's assertion that the District Court properly applied "rational basis review" relies on inapposite, mostly out-of-circuit, precedents—reciting the appellate review standard,[2] or addressing distinct challenges to an intra-class allocation or inadequate representation,[3] or recognizing that settlement

---

the settlement to demonstrate and document its fairness"); *Drazen v. GoDaddy.com, LLC*, 2020 WL 4606979, at *4 n.6 (S.D. Ala. Aug. 11, 2020) (similar).

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 253–54 (3d Cir. 2001).

[3] *See, e.g.*, *Sullivan v. DB Invs.*, 667 F.3d 273, 326 (3d Cir. 2011); *In re Holocaust Victim Assets Litig.*, 424 F.3d 132, 146 (2d Cir. 2005).

proceeds may be distributed based on the strength of claims.[4]  F.I.104–08. *Holmes* is binding. The District Court erred by not following it.

The Fully Insured Subclass's claim that judicial review "should be particularly deferential" when two subclasses reached an allocation agreement after arms-length negotiation, F.I.105, is another assurance of counsel ignoring amended Rule 23(e)(2). The Ninth Circuit has reasoned persuasively that giving the settlement a "presumption of reasonableness" based on counsel's recommendations, as the District Court mistakenly did here, *see* R-2931-36; R-2641-52, is "inappropriate under" amended Rule 23(e)(2). *Roes, 1-2*, 944 F.3d at 1049 n.12. That rule "now identifies 'whether . . . the proposal was negotiated at arm's length' as one of four factors that courts must consider and does not suggest that an affirmative answer to that one question creates a favorable presumption on review of the other three," including Rule 23(e)(2)(D)'s requirement that the proposed settlement "treats class members equitably relative to each other." *Id.*; FED. R. CIV. P. 23(e)(2)(D). Here, the District Court should have viewed as "matters of concern" under Rule 23(e)(2)(D) both the unfair allocation and the "from the beginning of time" release, which bound the Self-Funded Subclass to a release of identical substantive and temporal scope to

---

[4] *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).

that of Fully Insured claimants, despite allowing them to submit claims for only 6.5% of the Settlement and less than half of the Fully Insured class period. FED. R. CIV. P. 23(e)(2) advisory committee's notes on 2018 amendments.

*Second*, the Fully Insured Subclass mistakenly confuses suspicious circumstances triggering heightened scrutiny with actual collusion. F.I.108–11. These are separate inquiries. A variety of settlement provisions, including a facially unfair allocation, present suspicious circumstances that require heightened scrutiny of a settlement's fairness, even if they do not establish collusion. *See, e.g.*, *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 283 (7th Cir. 2002) ("Although there is no proof that the settlement was actually collusive . . . , the circumstances demanded closer scrutiny."). Pointing to Objectors' counsel's agreement that there was no evidence of a "collusive settlement" deflects from the heightened scrutiny of the *allocation* that Rule 23(e) and *Holmes* require.

The Fully Insured Subclass also does not address any of the specific circumstances Objectors argued were suspicious. *See* S.F.63–64. Indeed, in attempting to explain that its expert Ariel Pakes' estimate of the Self-Funded Subclass's allocation range was not "circular," the Fully Insured Subclass resorts to a footnote in mediator Kenneth Feinberg's declaration that describes in three

6

unilluminating sentences an analysis by Pakes that is not in the record. F.I.109–10 (quoting R-2610(8)-¶12 n.4). It thereby highlights the absence of *evidence* supporting the allocation.

The Fully Insured Subclass also points to Special Master Ed Gentle's declaration in support of the allocation's reasonableness. F.I.111 (citing R-2610(12)). But the record does not support Gentle here, and the District Court did not rely on him in approving the allocation. The District Court's preliminary approval rested on mediator Feinberg's statement that the allocation treated class members equitably—based solely on the improper gross-net comparison of fully insured premiums (including claims costs) to ASO fees (excluding claims costs) and on the disproportionate class periods—and Fully Insured Subclass counsel's assurances to that effect. *See* S.F.66–67; R-2641-50-52. Such assurances are "insufficient." *Holmes*, 706 F.2d at 1150–51. Yet, the allocation's proponents provided no means of checking the allocation's math at the preliminary approval stage.

At final approval, the only new evidence offered was Mason's report, but it did not cure the evidentiary deficit because it presented post-hoc justifications for a pre-ordained allocation. The timing of Self-Funded Subclass counsel's development

of a damages range makes this clear. As the Fully Insured Subclass admits, it took "years of work and millions of dollars in expert fees" to estimate fully insured damages. F.I.118. But Self-Funded Subclass counsel, Burns, agreed to the total damages amount in November 2019, less than 60 days after gaining access to data enabling him to "assess the impact of the settlement on the Self-Funded Sub-Class." R-2610(7)-¶¶6–8. And within the same period, he narrowed his clients' damages range to under 15% of the total. *Id.* ¶9 (Burns approached Feinberg in November 2019); R-2865-127:21–128:9 (Burns estimated his clients' damages at the "high[est]" at 10–15% before approaching Feinberg); R-2610(8)-¶12 (Burns finally presented a 7.6–16% range). Burns, like Feinberg, viewed the gross-net comparison as the factor shaping the allocation. R-2610(7)-¶10, R-2610(8)-¶¶12, 14.

*Third*, the Fully Insured Subclass's arguments about the substantially greater competitiveness of the fully insured marketplace expose the inadequate evidentiary basis underlying the District Court's competitiveness findings. R-2931-58. The Fully Insured Subclass fails to specifically rebut any of Objectors' contrary evidence. *See* S.F.72–75. For example, it fails to explain how BCBS could stay afloat by breaking even or losing money on plans that a BCBS expert stated "constitute almost two-thirds of Blues' enrollment." R-2469(2)-10 ¶19. Instead, it argues statements by one of Objectors' experts that he did not try to calculate overcharges

prove the "falsity" of equating the self-funded and fully insured markets. F.I.113–14. This is another deflection. The allocation's proponents did not calculate relative overcharge, R-2825(1)-¶30 (Mason admitting he did not "estimate overcharge"), even though that was their burden, *Holmes*, 706 F.2d at 1147.

The "internal documents" that the Fully Insured Subclass cites and upon which the District Court relied, F.I.112; R-2931-58, do not provide the missing math. They (a) do not identify what is included in each revenue category, R-2868(1)-3–4, R-2868(2)-3, R-2812(11)-2–3; R-2812(12)-2–3; (b) fail to demonstrably account for profit from unbundled products and services and decisions to "spread out [general and administrative] cost," which former Anthem CFO Wayne DeVeydt testified in the Anthem-Cigna trial disguises the profitability of self-funded business, R-2845(4)-32–35; and (c) contradict each other and the Court's reading of them. *See* R-2877(1)-2–7. For example, two show that although operating profit—gross profits minus operating expenses—was greater on a per-member-per-month basis for fully insured plans, operating *margin*—operating profit divided by total revenue—was greater for self-funded plans. R-2812(11)-3; R-2868(2)-3. Operating margin is a measure of profitability that courts use to determine market power in antitrust cases. *See, e.g.*, *Epic Games v. Apple*, 559 F. Supp.3d 898, 952–53, 993, 1037–38 (N.D.

Cal. 2021). Thus, these documents contradict the District Court's conclusion that the self-funded market is "significantly more competitive." R-2931-58.

Nor do the other documents show that self-funded business was "often not profitable." F.I.112–13; R-2931-58. They illustrate that the allocation's proponents, Mason, and the District Court ignored profit from unbundled services and products sold to self-funded plans, including stop-loss, vision, dental, and pharmacy insurance. *See* R-2845(4)-32:18–33:5; R-2998(1)-110–15. For example, one document states ASO "[m]argins will be made with value-added services." R-2812(10)-3; *see also* R-2868(4)-7 (similar); R-2868(6)-3 (similar). The other documents are articles about the general healthcare market that say little about BCBS's ability to charge supracompetitive prices, R-2868(3)-4; R-2868(5)-3, given that BCBS's unique competitive advantage is its network, R-2998(1)-107, 116.

*Fourth*, the supposedly "substantial" evidence that the Fully Insured Subclass claims at pages 114–17 supported approval of the settlement confirms that the allocation's evidentiary basis was *not* adequate. Each citation in its bulleted list of findings leads back to the same inadequate sources—assurances of counsel, a mediator's declaration, unreliable expert opinions, and internally inconsistent documents. For example, the documents the Fully Insured Subclass cites in support

10

of the District Court's competitiveness findings (bullet points three and four) are the documents and articles discussed above. F.I.115. The next bullet purports to cite a separate finding that the "ASO market is significantly more competitive," but it cites the District Court order, citing Mason's testimony, which rested on the same documents. *Id.* (citing R-2931-37 (citing R-2865-41–44)); *see also* R-2825(1)-¶¶24– 26. Two pages later, the Fully Insured Subclass argues "ample additional evidence" supported the allocation's reasonableness. *Id.* at 117. Yet, once again, it cites the same documents, plus Mason's report and the District Court's opinion, which in turn cites Feinberg, Mason, and the same documents. *Id.* None of these provide the math to permit a cross-check of the allocation's fairness.

Indeed, there was no evidence of the Self-Funded Subclass's range of possible recovery and no overcharge analysis of its claims in violation of *Bennett*. *See* S.F.67– 68 (citing *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984)). The Fully Insured Subclass fails to show otherwise. F.I.117–18. It cites only Mason's estimate of the "ratio of recoveries" and "evidence from . . . Dr. Pakes . . . of the range of potential recoveries for all Subscribers." *Id.* But it cites the District Court's order for the latter "evidence," not Pakes' declaration. *Id.* (quoting R-2931-40). In fact, Pakes stated that "[his] report does not contain an analysis of entry into the ASO market." R-2610-11 ¶7. Instead, he estimated ASO damages using the negotiated 6.5%. *Id.*; *see*

*also* S.F.68. In short, the Fully Insured Subclass fails to show that the record evidence is sufficient under Rule 23(e)(2)(D) and *Holmes* to support the allocation.

The Fully Insured Subclass's contrary authorities mostly predate amended Rule 23(e)(2) and are inapposite or distinguishable. F.I.116–19.[5] Moreover, the "strong judicial policy favoring settlement," which the Fully Insured Subclass highlights, F.I.118–19, does not require approval of a sellout. *See Holmes*, 706 F.2d at 1147 (acknowledging "settlement[s]" are "preferred").

*Fifth*, the Fully Insured Subclass fails to rehabilitate Mason. As it did below, the Fully Insured Subclass distorts and selectively ignores Objectors' criticisms of Mason. To clarify: Objectors have consistently argued that Mason's report was

---

[5] *See, e.g.*, *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 219 (5th Cir. 1981) (holding two subclasses could negotiate a "share-and-share-alike" allocation "without each subclass undertaking extensive analysis of its relative damages *if*," unlike here, "the available evidence is, at the time of the negotiations, insufficient to indicate a need for it"); *In re Chicken Antitrust Litig.*, 669 F.2d 228, 240 (5th Cir. Unit B 1982) (disagreeing that "allocation scheme . . . b[ore] no relation to economic data"); *Halley v. Honeywell Int'l*, 861 F.3d 481, 492 (3d Cir. 2017) (out-of-circuit precedent holding district court did not abuse its discretion by approving a settlement "without specifically identifying the best possible recovery for the class" where, unlike here, it had "sufficient other information to judge the [settlement's] fairness"); *Sterling v. Stewart*, 158 F.3d 1199, 1204 (11th Cir. 1998) (holding district court "did not err by applying too lenient a standard" where it applied a higher than requisite standard).

presented to backfill an inadequate evidentiary record but offered nothing more than post-hoc justifications for a predetermined allocation that was based on the erroneous gross-net comparison. His report was first offered in September 2021, R-2812(9)—only after Objectors filed their expert reports criticizing the gross-net comparison, *see* 2812(19)-111—and first discussed in any detail the three other proxies. Mason unsuccessfully attempted to justify the 93.5%-6.5% allocation, including by applying an arbitrary double discount to each of his proxies. Objectors attacked all his proxies, R-2845-19–23; S.F.75–76, but they also noted that, without the double discount, his net revenue proxy would result in a much higher self-funded allocation, R-2845-22—48.25% with the full damages period.[6] That proxy best reflects the realities of the commercial health insurance market. S.F.73–75.

Mason's report has several serious flaws. *See* S.F.68–76. But his reliance on numbers he did not understand—numbers that are not in the record, that were not provided to Objectors, and that the District Court did not and could not have reviewed—renders his report fundamentally unreliable. FED. R. EVID. 702(b); *ZF Meritor v. Eaton*, 696 F.3d 254, 293–94 (3d Cir. 2012); *see also Sher v. Raytheon*,

---

[6] Mason allocated the Self-Funded Subclass 19.3% before his 50% discount. R-2845-22. Giving the Self-Funded Subclass the full 12.5-year damages period, rather than the truncated 5-year damages period, would result in an allocation of 48.25% = (19.3/5) x 12.5.

419 F. App'x 887, 890–91 (11th Cir. 2011) (holding "district court erred as a matter of law" by failing to evaluate admissibility of expert opinions under *Daubert* at certification stage); *Sali v. Corona Reg'l Med. Ctr.*, 907 F.3d 1185, 1189 (9th Cir. 2018) (Bea, J., dissenting) (noting "Second, Third, Fifth, and Seventh Circuits" agree this is necessary); R-2865-36:11–15, 82:2–4. The District Court erred by relying on Mason and approving an unsupported allocation. *See Holmes*, 706 F.2d at 1150–51 (holding testimony that would not ordinarily be admissible evidence could not support unfair allocation); *Day v. Persels & Assocs.*, 729 F.3d 1309, 1327 (11th Cir. 2013). Mason's report also reveals his misunderstanding of the healthcare market, including his mistaken assumption that self-funded plans purchase only administrative services. R-2825(1)-¶¶20, 37.

Although each of Mason's proxies failed to show the math supporting the allocation, they also rested on various mistaken conclusions. The first proxy, comparing gross fully insured premiums (including claims costs) to self-funded revenues net claims costs, was flawed for the reasons discussed in Objectors' opening brief. S.F.69, 73–75; R-2825(1)-14 n.54, ¶ 39. Indeed, the Fully Insured Subclass's own expert calculated fully insured damages by excluding claims costs. *See* R-2610(11)-¶4. The District Court did not rely on Mason's second proxy, instead adopting Mason's conclusion that the net revenue self-funded number is too high

because it did not account for Mason's incorrect competitiveness theories. R-2931-58 (citing R-2825(1)-¶41); *see also* F.I.121. Recognizing that BCBS's "[quarterly financial reports] do not report profits for Fully-Insured and ASO accounts," R-2825(1)-¶42, Mason resorted for his third proxy to some of the documents critiqued above to estimate operating gain. *See id.* nn. 63, 64, 65, 67 (citing R-2812-10, R-2868(1), R-2868(2)-3, and a periodical). Like his first proxy, Mason's fourth proxy rests on his mistaken assumption that self-funded members only purchased administrative services, *see* R-2825(1)-¶¶46–48, when they routinely purchased risk-transfer products, including stop-loss, dental, vision, and pharmacy insurance.

The Fully Insured Subclass's remaining arguments about Mason are no more persuasive. The Fully Insured Subclass concedes that the medical loss ratio rules are relevant to Mason's first proxy and to 75% of the Fully Insured Class Period, refuting its argument that the rules are "of no moment." F.I.123–24. Moreover, the Fully Insured Subclass admits that Mason could not describe the revenue streams he used, simply asking the Court to trust that they included "any relevant revenue source." *Id.* at 124–125. Its related assertion that use of Anthem trial testimony is "inapposite" to the allocation issue here, *id.* at 125 n.38, is unpersuasive given its repeated claims otherwise below. *See, e.g.*, R-1613-146:14–16 ("It is clear that [Anthem/Cigna] . . . has considerable relevance to what we're doing here."); R-2865-88:15–89:24. The

15

Fully Insured Subclass is also wrong, F.I.125, that Rule 702 does not apply, *see supra* pp. 13–14. And contrary to the Fully Insured Class's own authority, F.I.126, the District Court did not "carefully consider[]" all "the expert advice," *Cendant*, 264 F.3d at 254, or substantively explain why it rejected Corley's and BDO's methodologies, *see Carter v. Forjas Taurus, S.A.*, 701 F. App'x 759, 767–68 (11th Cir. 2017). The Court failed to recognize that Objectors' experts, like Mason, employed proxies for antitrust damages—premiums and premium equivalents (BDO) and revenues (Corley). R-2998(1)-51–52; R-2998(1)-106, 118–19; *see also* S.F.121 (explaining a premium equivalent takes a self-funded plan's administrative services fees and adds claims costs).

*Sixth*, contrary to the Fully Insured Subclass's argument otherwise, F.I.126–27, the District Court found that self-funded plans did not buy insurance, and this factual finding reflected its fundamental misunderstanding of BCBS's business model. R-2931-57. The Court repeated this finding four pages later, stating, "Self-Funded [entities] are just that—self-funded. That is, they did not buy insurance from the Blues." R-2931-61. This finding was clearly erroneous. *See, e.g.*, R-2715(1)-¶24. Indeed, the Fully Insured Subclass does not dispute that such a finding would have been clearly erroneous. *Amici*'s concern about the potential ramifications of the District Court's factual finding are entirely appropriate.

16

*Finally*, the District Court erred by denying Objectors' discovery request; the Fully Insured Subclass mistakenly argues otherwise. F.I.140. The common-interest privilege does not cover communications between one subclass's expert and counsel for the other subclass in these circumstances. Here, the two subclasses were adversaries in a "zero sum situation" where "a gain to one . . . entail[ed] a corresponding loss for the other," *Holmes*, 706 F.2d at 1160, and where this adverse relationship lasted "until the district court approve[d] the settlement," *In re Equifax*, 999 F.3d 1247, 1264 (11th Cir. 2021). This is just another way of saying that (a) the two subclasses do not share "an identical legal . . . interest," and that (b) communications related to their adverse relationship, i.e., the amount of damages allocated to one subclass instead of the other, are not "designed to further" any such interest. *In re: Androgel Antitrust Litig. (No. II)*, 2015 WL 9581828, at *2 (N.D. Ga. Dec. 30, 2015) (citation omitted).

The Fully Insured Subclass cites no authority applying the common-interest privilege where two parties were adverse at the time communications were exchanged. For example, the four cases it cites supposedly "recogniz[ing]" the privilege covers "settlement communications," F.I.141, each involved parties to a joint defense or prosecution. *See, e.g.*, *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec.*, 2010 WL 1737875, at *4 (S.D. Ind. Apr. 28, 2010) (rejecting the

argument that the privilege applied based "merely [on parties'] shared interest in settling the coverage litigation").

## II.    The District Court erred by approving the self-funded damages period.

The District Court erroneously found that the "allocation is justified by the different time periods for the classes." R-2931-59. Whether under Rule 15 relation back principles[7] or under *American Pipe* tolling, the key question is whether BCBS had notice of self-funded claims. *Cliff v. Payco Gen. Am. Credits*, 363 F.3d 1113, 1132–33 (11th Cir. 2004); *Griffin v. Singletary*, 17 F.3d 356, 360 (11th Cir. 1994) (confirming "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class . . . until class certification is denied" under *American Pipe* (quoting *Crown, Cork & Seal v. Parker*, 462 U.S. 345, 353–54 (1983))); *Am. Pipe & Constr. v. Utah*, 414 U.S. 538, 554–55 (1974) (holding class claims are tolled when the defendants receive notice of "the substantive claims being brought against them" and "the number and generic identities of the potential plaintiffs").

---

[7] The Fully Insured Subclass argued below that self-funded plans' claims needed to relate back under Rule 15(c). *See* R-2868-32.

*First*, the Self-Funded Subclass has always been central to the nationwide injunctive class, meaning its members' claims are tolled as a matter of law. *See Crown, Cork & Seal*, 462 U.S. at 352–54. *Cerven* sought *per se* injunctive relief on behalf of all persons and entities "currently insured" by a Blue plan that was a party to an anticompetitive license agreement with BCBSA. R-2998(3)-99 ¶20. In other words, the definition included any person covered by any BCBS commercial health benefit product. *See* S.F.84–86. And the complaint's allegations attacked the entire Blue structure and its geographic restraints across all plans and affecting both "services" and "products." *See e.g.*, R-2998(3)-103–04, 116–19, 125–27. *Cerven* alleged these restraints—BCBS's license agreements—were "per se illegal." R-2998(3)-95 ¶3. The injunctive relief sought was intended to undo all these restrictions, R-2998(3)-146 ¶154, which affected fully insured and self-funded plans alike, R-2448(3)-9, 21–25. Moreover, the complaint estimated Blue national membership at 100 million, R-2998(3)-98 ¶15, and as Mason's exhibits confirm, R-2825-Ex.1, Blue membership approaches 100 million only if self-funded members are counted. The paragraph distinguishing "ASO products," like those distinguishing the large group fully insured market, R-2998(3)-133 ¶¶ 130–31, related to the need to define the market for the damages class. In short, including Self-Funded Subclass members in the injunction class was necessary to obtain complete relief. *See also* FED. R. CIV. P. 19(a)–(b).

19

*Second*, BCBS did have notice. Subscribers provided it. And the District Court oversaw it all. From mid-2015 through December 2018, the parties vigorously litigated certification of a Rule 23(b)(2) injunctive relief class based on plaintiffs' *per se* violation claim and Subscribers' related proposal that the case be streamlined to try the claims of a nationwide injunctive class and an Alabama damages class. *See, e.g.*, R-384-10–11; R-413-8–9. As the District Court recognized, applying a "*per se* rule, treating categories of restraints as necessarily illegal," would have "eliminate[d] the need to study the reasonableness of [the alleged] restraint[s] in light of the real market forces at work." R-2063-23 (quoting *Leegin Creative Leather Prods. v. PSKS*, 551 U.S. 877, 886 (2007)). In short, under the *per se* standard, "plaintiffs are relieved of the obligation to define a market and prove market power." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 316 (3d Cir. 2010). The District Court ultimately held that a *per se* standard of review applied to the central provisions of BCBS's license agreements in April 2018 and, in June, granted BCBS's subsequent request to certify that order for immediate appeal. R-2063-48, 59; R-2085(1); R-2203. In December, this Court denied BCBS's petition for permission to appeal. *In re Blue Cross Blue Shield Antitrust Litig.*, No. 18-90020 (11th Cir. Dec. 12, 2018). Less than a year later, the parties had agreed to settlement terms. R-2610(6)-11.

20

In support of their arguments against certifying a nationwide injunctive relief class based on a *per se* violation, BCBS repeatedly asserted that the nationwide injunctive class encompassed "every subscriber to any Blue plan"—more than 100 million subscribers. R-681-1 (August 2016); R-413-8 (September 2015) ("Plaintiffs allege some of the largest putative classes in the history of the United States, made up of more than 100 million subscribers[.]"); R-602-2 (April 2016) ("There are over 100 million subscribers in the alleged subscriber injunctive class."); R-966-75:1–16 (January 2017) (arguing "in seeking injunctive relief, [Subscribers] are seeking to change the way the Blue system runs for everyone, [including] 103 million individuals who have Blue Cross Blue Shield" and "the case . . . could potentially impact the entire Blue system"). Defense counsel argued that "the scope of [the] injunction," based on "what's in the pleading," indicated "the plaintiffs want to blow up the system" and that plaintiffs were "moving to certify . . . a 23(b)(2) [class] for nationwide injunctive relief for all customers, for 106 million Americans." R-1596-30:14–17, 54:6–12 (September 2017).

Consistent with this understanding of the injunctive claims at issue, after the District Court granted plaintiffs' proposal to streamline the litigation by prioritizing discovery for "their Alabama claims (including injunctive relief)," R-469-4–5 (October 2015), BCBS began seeking discovery from absent class members,

*including self-funded entities*. *See* R-602(3)-5 (April 2016) (providing draft discovery requests to "Absent Subscribers," including "Royal Cup, Inc.," a self-funded entity); R-634(1)-3 (June 2016) (describing intent to seek discovery from Regions Bank, a self-funded entity); R-946-3 (January 2017) (explaining that "prior subscriber subpoena targets were primarily *administrative services only* ('ASO') Blue Plan customers"); R-966-71:12–19 (January 2017) (explaining BCBS's "original subpoena targets were ASO accounts"). BCBS then *deposed ASO entities* on "all the issues that go to the heart of this case." *Id.* at 74:11–15; R-1353(73) (deposition of another self-funded absent class member, Dollar General). And BCBS explained elsewhere that although "ASO" subscribers "self-insure," they "use the Blues Plans' infrastructure to both handle claims administration and obtain the benefit of Blue Plan-negotiated provider discounts." R-946-3.

Contrary to their arguments now, F.I.131, Fully Insured Subclass counsel also knew that the injunctive relief class encompassed self-funded claims. They "d[id] not object" to Defendants' right to seek "absent class member[]" discovery, including for "Administrative Services Only organizations." R-958-2 (January 2017). In fact, Subscribers were then seeking "information regarding . . . ASO commercial . . . products" from BCBS's competitors. R-1005-11. And in May 2017, Subscribers moved for an order compelling certain Defendants to "produce data

regarding premiums and total claims data pursuant to Appendix D," R-1241-1, which included "annual [group fee, premium, and enrollment] data" for groups that are "administrative services only." R-1241(2)-1–2. Subscribers argued BCBS had sought the "same data set" from third-party insurers, *id.* at 7; that data included "ASO or not," "Total admin fees if ASO," and "premium equivalents if ASO," R-1241(3)-3–7.

Thus, BCBS received notice sufficient to satisfy both relation back principles and the *American Pipe* tolling doctrine. BCBS received notice both of self-funded entities' claims—recognizing that they were included in the nationwide injunctive class—and of the "number and generic identities of the potential plaintiffs"—some 50 million-plus members of self-funded entities like those from whom BCBS sought discovery based on its reading of the complaint. *See Cliff*, 363 F.3d at 1132–33 (quoting *Am. Pipe*, 414 U.S. at 554–55).

The District Court erred by finding that BCBS had "no notice . . . whatsoever that they would have to defend against alleged misconduct in the ASO market." R-2931-61; *Day*, 729 F.3d at 1327–28. Indeed, it claimed at the fairness hearing: "At no point at any time did the Blues or the subscribers suggest to me that ASOs were

ever part of a target of this litigation." R-2865-157:12–14.[8] But the District Court oversaw the disputes related to both sides' pursuit of discovery on self-funded entities *as absent class members*. *See, e.g.*, R-713-1 & n.1 (describing subpoenas issued to Royal Cup and Regions Bank as subpoenas from "future [Subscriber] class members"); R-832-1–2 & n.2 (ruling on Regions Bank's motion to quash BCBS's subpoena (citing R-709-2 (stating that Regions Bank "offers medical benefits to its employees through . . . a self-insured plan")). And the District Court recognized that Subscribers' pursuit of nationwide injunctive relief, affecting all 100-plus million BCBS subscribers, was directly related to the importance of its ruling on the *per se* standard. R-2202-1–2, 7–8.

The District Court reversibly erred in approving the foreshortened claims period based on its erroneous finding that BCBS had "no notice" of self-funded claims. The Fully Insured Subclass's and BCBS's counterarguments fail.

---

[8] Notably, after approving the allocation, the District Court contradicted its own Settlement findings, holding that self-funded national accounts that opted-out from this Settlement presented sufficient facts that the Subscriber track complaint here tolled their claims under *American Pipe* to survive the motion-to-dismiss stage. ECF No. 268, Case Nos. 2:21-cv-1209, 2:22-cv-558 (N.D. Ala. Feb. 21, 2023) (Suppl. Appx. Tab 1).

*First*, as a matter of law, actual notice is sufficient to allow relation back. Although BCBS is correct that this Court's opinion in *Makro Capital of America, Inc. v. UBS AG* appeared to apply a constructive notice standard, there was no argument there that defendant had received actual notice that the United States would be added as a plaintiff. 543 F.3d 1254, 1259–60 (11th Cir. 2008).[9] BCBS.90–91. Actual notice is sufficient under Rule 15(c). *See, e.g.*, *Sanders-Burns v. City of Plano*, 594 F.3d 366, 378 (5th Cir. 2010); *see also* 6A FEDERAL PRACTICE & PROCEDURE CIVIL § 1498.1 & nn.13–18 (3d ed. Aug. 2022 update). Whether a party had actual notice is a question of fact—one that cannot be disputed here. *Cliff*, 363 F.3d at 1121 (citing *Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998) (citing *Gerritsen v. Consulado Gen. de Mexico*, 989 F.2d 340, 344 (9th Cir. 1993) (whether defendant "received actual notice" for relating back and tolling was a "factual finding"))).

---

[9] The Fully Insured Subclass and BCBS also misread *Makro* and *Cliff* to impose a fourth requirement for establishing relation back here. BCBS.85 n.17; F.I.131. If the Court finds that self-funded entities were in the injunctive relief class, their claims are tolled under *American Pipe*, and they would not need to satisfy Rule 15(c) principles. *See* S.F.84–86. Regardless, Rule 15(c)(3)'s "mistake" requirement does not extend to an amendment adding a plaintiff in the class context. *See, e.g.*, *King v. Cessna Aircraft*, 2010 WL 5253526, at *10 (S.D. Fla. Sept. 13, 2010). And even if it did, the U.S. Supreme Court has made clear that courts should not apply Rule 15 to create "a windfall for a prospective defendant who understood . . . that he escaped suit during the limitations period only because" of a mistake. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010).

*Second*, the Fully Insured Subclass's and BCBS' arguments that *Cerven* did not include self-funded entities are wrong. Both parties rely on the District Court's clearly erroneous finding that the Self-Funded Subclass did not buy insurance. F.I.132; BCBS.88. They also ignore the fact that self-funded entities purchased insurance products, like stop-loss, vision, dental, and pharmacy that were encompassed by the broad word "insured" in the injunctive class definition. S.F.84–85. And contrary to BCBS's suggestion otherwise, BCBS.95–96, the Self-Funded Subclass cited evidence that most subclass members purchased these products from BCBS. R-2845(10)-3; R-2998(1)-58, 112; R-2998(2)-73.

Moreover, the overwhelming evidence that both BCBS and the Fully Insured Subclass understood the injunctive relief class to include self-funded claims from the beginning to the end refutes their arguments that the scope of injunctive relief was limited to individual and small group fully insured policies and that self-funded plans' claims did not arise from "the same alleged conduct" in the *Cerven* complaint. F.I.133; BCBS.96–97. They also fail to explain how their arguments would not also exclude large group fully insured entities, which received the full damages period.

*Third*, the Fully Insured Subclass cites no authority for the proposition that "[b]eing on notice of a claim under" 15 U.S.C. § 26 "does not put a defendant on

26

notice of" a claim under 15 U.S.C. § 15(a). F.I.136–37. In fact, the authority is all the other way. S.F.83–84. Courts applying *American Pipe* tolling simply look at whether "the same evidence, memories, and witnesses" are involved, not whether the remedy sought is identical. *Coon v. Ga. Pac.*, 829 F.2d 1563, 1571 (11th Cir. 1987) (quoting *Crown, Cork & Seal*, 462 U.S. at 355 (Powell, J., concurring)). And *Cerven* would easily satisfy that standard. *See* S.F.86–87; R-2812(1)-71. The Fully Insured Subclass's own authority states that the antitrust laws' damages and injunctive relief provisions are "best understood as providing complementary remedies for a single set of injuries." *Cargill v. Monfort of Colo.*, 479 U.S. 104, 113 (1986). And the Fully Insured Subclass acknowledges here that the District Court correctly found that the damages and injunctive relief classes "were injured in the same ways by the same anticompetitive conduct and policies." F.I.60.

## III.    The District Court erred by approving the settlement based on an arbitrary 50% discount factor.

There was no evidentiary basis for Mason's late-to-the-party 50% discount; it duplicated the effect of the foreshortened damages period and treated self-funded entities differently than large fully insured plans, despite their identical circumstances. S.F.88–90. None of the Fully Insured Subclass's authorities, *see* F.I.138–39 & n.44, approved the application of a discount factor to one subclass only, much less reducing one subclass's damages twice to account for the same

factual circumstance. By contrast to the detailed examination of the strength of individual claims and damages allegations in *Herrera v. Charlotte School of Law*, 818 F. App'x 165, 176 (4th Cir. 2020), for example, the District Court here approved a 50%, across-the-board reduction to an entire subclass. And it did so without comparing the strength of their claims to each other or to the varied claims of the other subclass and without accounting for the similar relief allegations of self-funded plans and large fully insured plans or for the identical release given by both.

In fact, the Fully Insured Subclass mischaracterizes the District Court's use of the discount factor to make it look like *Herrera*. F.I.139. The Court did not just approve Mason's proxies based on his use of the discount. It affirmatively found that a 50% "discount factor is appropriate in assessing the [Self-Funded Subclass's] portion of the settlement." R-2931-38. And it did so based on findings that self-funded entities "did not become involved in the lawsuit until late 2019" and thus "did not face the same litigation perils and expenses as the rest of the Class"— findings that applied equally to large fully insured claimants. *Id.*; *see also* R-2931-59–60.

The Fully Insured Subclass also fails to justify this unequal treatment. F.I.139–40. It ignores Objectors' argument that identical justifications for applying

28

the 50% discount would apply to large fully insured claimants, thus failing to address the unfairness of the District Court's approval.

## IV. No allocation was necessary.

The last-minute addition of the Self-Funded Subclass and the selection of subclass counsel by fully insured lawyers created a "fundamental intra-class conflict." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 188–89 (3d Cir. 2012). This conflict would have been resolved by distribution of the settlement to all class members based on a gross-gross or net-net comparison. *Id.*; *Corrugated Container*, 659 F.2d at 1329. Indeed, Subscribers sought and obtained discovery on premium equivalents for self-funded entities. R-1241(1)-2, 7; R-1241(2)-2; R-1241(3)-3–7. BCBS's internal records show it tracked revenue for fully insured and self-funded entities for best-efforts-rule purposes by premium revenue and premium equivalent revenue. R-2448(3)-21–25. Even Mason's net revenue proxy suggests excluding claims costs for both would have resulted in an allocation reflecting the respective sizes of the subclasses' membership (closer to 50%-50%). *See supra* n.6.

The Fully Insured Subclass's argument that it would have been unfair to distribute the settlement to all members on the same basis relies on the alleged differences in the profitability and competitiveness of the self-funded and fully

29

insured markets and self-funded claimants' alleged late arrival to the litigation. F.I.144–45. The Self-Funded Subclass has shown the record contradicts both assumptions.

## CONCLUSION

Self-Funded Subclass Objectors ask the Court to vacate the Final Judgment Order approving the settlement allocation. Applying the appropriate level of scrutiny, the allocation cannot stand. Correctly applying Rule 23(e)(2)(D) and *Holmes* requires a new allocation closer to 50%-50% or, better yet, no subclass-based allocation at all.

Dated: March 24, 2023                              Respectfully submitted,


                                                   /s/ Scott Burnett Smith
                                                   Scott Burnett Smith

                                                   *Counsel for Appellants Topographic, Inc. and Employee Services, Inc.*

30

OF COUNSEL:

Scott Burnett Smith
BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, AL 35801-4900
Telephone: (256) 517-5100
Facsimile: (256) 517-5200
ssmith@bradley.com

Michael R. Pennington
J. Thomas Richie
Emily M. Ruzic
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
mpennington@bradley.com
trichie@bradley.com
eruzic@bradley.com

Virginia N. Adamson
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division St, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 252-3885
Facsimile: (615) 252-6380
jadamson@bradley.com

Richard D. Nix
Henry D. Hoss
M. Richard Mullins
Mark D. Spencer
MCAFEE & TAFT A PROFESSIONAL CORPORATION
Eighth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-9621
Facsimile: (405) 235-0439

richard.nix@mcafeetaft.com
henry.hoss@mcafeetaft.com
richard.mullins@mcafeetaft.com
mspencer@mcafeetaft.com

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f), this document contains 6,481 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6).

Dated: March 24, 2023    Respectfully submitted,


        /s/ Scott Burnett Smith
        Scott Burnett Smith


        *Of Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24th, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Counsel for all parties are registered CM/ECF users and will be served with the foregoing document by the Court's CM/ECF System.

Dated: March 24, 2023                    Respectfully submitted,

/s/ Scott Burnett Smith
Scott Burnett Smith

*Of Counsel for Appellants*

34