# IN THE UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

---

USCA Case No. 22-13051

On Appeal from the United States District Court,
Northern District of Alabama
Case No. 2:13-cv-20000

---

*In re: Blue Cross Blue Shield Antitrust Litigation*

---

## THE HOME DEPOT APPELLANTS' OPPOSITION TO PLAINTIFF-APPELLEES' MOTION TO STRIKE NEW ARGUMENTS IN APPELLANT HOME DEPOT'S REPLY BRIEF

FRANK M. LOWREY IV
Georgia Bar No. 410310
RONAN P. DOHERTY
Georgia Bar No. 224885
E. ALLEN PAGE
Georgia Bar No. 640163
BONDURANT MIXSON &
ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309-3417
(404) 881-4100
lowrey@bmelaw.com
doherty@bmelaw.com
page@bmelaw.com

*Attorneys for Appellants Home Depot U.S.A., Inc., et al.*

USCA Case No. 22-13051
*In re: Blue Cross Blue Shield Antitrust Litigation*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

### Certificate of Interested Persons

Pursuant to 11th Cir. R. 26.1-2(b), the Home Depot Appellants ("Home Depot") certify that they believe the Certificate of Interest Persons is complete.

### Corporate Disclosure

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2, and 26.1-3, Home Depot submits this Corporate Disclosure Statement and states as follows:

1.      Appellant Home Depot U.S.A., Inc. is wholly owned by HD Operations Holding Company, Inc., which is wholly owned by The Home Depot, Inc., a publicly traded company. No publicly traded corporation owns 10% or more of the stock of The Home Depot, Inc.

2.      The Home Depot Group Benefits Plan and The Home Depot Medical and Dental Plan are related HD entities. Neither plan is publicly traded.

# TABLE OF CONTENTS

Certificate of Interested Persons ...................................................... C-1 of 1

Corporate Disclosure....................................................................... C-1 of 1

TABLE OF CONTENTS.............................................................................i

ARGUMENT .............................................................................................4

I.      The Reply Brief Addresses the Same Adequacy Objection
        Home Depot Raised in the District Court and in its Opening Brief...............4

        A.      Home Depot Did Not Limit its Opening Brief to the
                Interclass Conflict.....................................................................4

        B.      Home Depot's Reply Advances the Same Adequacy
                Objection and Responds to the Arguments in the
                Subscribers' Merits Brief .......................................................8

II.     The Court Should Deny the Subscribers' Motion to Strike ..........................11

III.    The Subscribers' Motion to Strike Seeks an Inappropriate Remedy ............15

CONCLUSION ........................................................................................19

i

The Court should deny the Subscriber-Plaintiffs' April 13, 2023 motion to strike arguments from Home Depot's reply.  In its reply, Home Depot argued what is has consistently argued since it first had the opportunity to object to this settlement: that the class representatives and their counsel do not adequately represent the interests of absent class members.  That Home Depot used its reply to respond to arguments raised in the Subscribers' brief is hardly the bait and switch the Subscribers depict.

Instead, the Subscribers' objection appears to be that Home Depot did not accept the Subscribers' attempts to shoehorn and minimize the extent of the representational conflicts that produced this Settlement.   Contrary to the Subscribers' claims, Home Depot's opening brief did not advocate for a *per se* rule that the class representative for a Rule 23(b)(2) settlement cannot participate in a (b)(3) damages settlement.  Rather, Home Depot argued that the conflicts inherent in the representational structure that negotiated and accepted this Settlement violate Rule 23(a)(4) and Due Process.  The Subscribers' motion, therefore, devolves into a complaint that Home Depot's reply persists with the argument Home Depot made rather than accepting the argument the Subscribers preferred to put in Home Depot's mouth.  The merits panel will decide which side has the better of this point, but that disagreement is not the same as Home Depot changing theories on reply.

Also contrary to the Subscribers' claims, Home Depot's opening brief did not limit its objections to the interclass conflict. Instead, Home Depot argued that any material conflict between the absent class members and the class representatives and their counsel renders representation inadequate. In addition to the interclass conflict over maximizing dollars at the expense of injunctive relief and an overbroad release, Home Depot's opening brief squarely says that the Rule 23(b)(2) class's *internal conflicts* exacerbated the structural adequacy problems: "To make things worse, all 23(b)(2) representatives are fully-insured subscribers, whose economic interests are different from self-insured class members, particularly national accounts."[1] To be sure, Home Depot developed that point further in direct response to the Subscribers' argument that there could be no genuine conflict because of a significant overlap between the members of the (b)(2) and (b)(3) subclasses. But there is nothing untoward about that; responding to the appellee's argument is the point of a reply.

Thus, there is no merit to the Subscribers' complaints about unfair surprise. But even if there were, the Court should not grant their motion to strike. This appeal is not the typical private dispute between two civil litigants, with no consequence

---

[1] HD:57. As before, Home Depot cites to the District Court docket as D-___:##, where the underlined is the docket number and the ## represents the page number in CM/ECF. We cite to our appellant brief, Dkt.120, as HD:#, the Subscribers' Brief, Dkt. 147, as "SUB:#", the Blues' Brief, Dkt. 146, as "BLUE:#," our reply brief, Dkt. 172, as "HDR:#", and the Subscribers' motion to strike, Dkt. 182, as "SUBMTS:#" also using the CM/ECF page number

for anyone else.  By the Subscribers' own telling, this sweeping litigation challenged longstanding anticompetitive agreements and practices in the entire U.S. health insurance market.  The record shows that the Settlement's gigantic damage fund and partial injunctive relief came at the price of releasing virtually all future private efforts to enjoin future antitrust violations.  And while that trade may have made sense to the fully-insured class representatives that took 93.5 percent of the damages, it does not make sense for the self-funded subscribers and National Accounts like Home Depot that have a far greater interest in securing future competition.  Because that tradeoff has profound public impact beyond Home Depot and the class representatives, the Court should fully consider the adequacy of the representational structure that negotiated this Settlement.

The Court should therefore reject the Subscribers' attempt to limit scrutiny of the adequacy of representation via this motion to strike.  And if the Court decides not to deny Subscribers' motion outright, it should carry the motion with the case so that the merits panel can determine whether there is any genuine material gap in the briefing.  In that unlikely event, the proper remedy would be for the Court to grant the Subscribers leave to file a supplemental brief to address the merits of any purportedly new argument.

# ARGUMENT

## I. The Reply Brief Addresses the Same Adequacy Objection Home Depot Raised in the District Court and in its Opening Brief.

### A. Home Depot Did Not Limit its Opening Brief to the Interclass Conflict.

The Subscribers' motion begins with a crabbed reading of Home Depot's opening brief.  While the motion argues that Home Depot limited its adequacy objection to the conflicts between the (b)(2) and (b)(3) subclasses, the opening brief makes no reference to "interclass" conflict.  Rather, the opening brief makes the more general argument that the "Settlement failed to provide adequate representation for 23(b)(2) class members."[2]  After noting that the same plaintiffs and counsel represented the (b)(2) and (b)(3) classes despite the obvious temptation to trade dollars for injunctive relief, Home Depot's brief went on to argue that the conflicts within the (b)(2) class and the absence of any National Account representative to negotiate the (b)(2) settlement exacerbated the adequacy problems:

> To make things worse, all 23(b)(2) representatives are fully-insured subscribers, whose economic interests are different from self-insured class members, particularly national accounts. The only self-funded subscriber representative appeared on the eve of settlement and was appointed to represent only the 23(b)(3) subclass. There was no subscriber or counsel representing the 23(b)(2) class who was not also financially interested in the 23(b)(3) class.[3]

---

[2] HD:57.

[3] HD:57–58.

4

For all these reasons, Home Depot argued that the Subscribers' representational structure violated Rule 23(a)(4) and Due Process.[4]

That is exactly what Home Depot argued in the district court as well. Indeed, Home Depot emphasized that a class of self-funded subscribers would not have accepted the Settlement that the fully-insured representatives imposed upon them here. Home Depot argued that "the Settlement trades away the best interests of national self-funded employers in order to facilitate a deal that primarily benefits the remainder of the class and, through broad prospective releases, the defendants."[5] And Home Depot argued that a class of self-funded subscribers would never have accepted the broad prospective release of future injunctive relief for a settlement that provides only $120 million (6.5 percent of the damages settlement) and permits only some of the National Accounts the opportunity to receive a second Blue bid.[6]

In the opening brief's argument section, Home Depot developed all these points to support its adequacy objection. And while the Subscribers' motion now emphasizes the lines that address the interclass conflict, it ignores the additional language regarding the membership of the (b)(2) class and the Subscribers' failure to appoint a separately represented self-funded subscriber or National Account to

---

[4] HD:58.

[5] D-2812-20:45–46.

[6] *Id.*; D-2875:46–47.

negotiate the (b)(2) settlement and release. Indeed, Part II(C) of the opening brief begins by noting that no self-funded subscriber—and therefore no National Account—represented the (b)(2) class.[7] Home Depot complained that "[t]he district court had approved 65 fully-insured subscribers to represent both" the (b)(2) and (b)(3) classes.[8] And the opening brief pointed out that the single self-funded subscriber representative and its counsel were only appointed to represent the (b)(3) self-funded subclass in negotiations over apportioning a relative share of the damages.[9] Thus, the opening brief certainly raises the Subscribers' failure to appoint an independent, separately-represented self-funded subscriber to negotiate for an appropriate injunctive settlement and release.

But that is not all the Subscribers' motion misses. The Subscribers' reduction of Home Depot's opening argument to interclass conflict also ignores the legal objection's substance and reasoning. The opening brief relies on *Amchem Products Inc. v. Windsor* and *Ortiz v. Fibreboard Corp.* In both cases, the Supreme Court found fatal adequacy problems in settlements negotiated on behalf of a single class. The same is true for *Valley Drug*, on which Home Depot also relied. In that case, this Court explained that the conflict between class members who benefitted and

---

[7] HD:95–96.

[8] HD:95.

[9] *Id.*

6

those who were harmed by the challenged conduct could not be adequately represented in a single class represented by the harmed buyers.[10]  Obviously, none of these decisions turned on interclass conflicts because they each involved only a single class.

The opening brief also relies on the 2016 *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation* decision, which rejected a settlement that had a mandatory (b)(2) class and a (b)(3) damages class like this one.  Home Depot certainly emphasized the Second Circuit's point that the structural interclass conflict required separate representation for the (b)(2) and the (b)(3) classes.  But the opening brief also emphasized that *Payment Card* followed and applied the more general adequacy principles developed in the single-class decisions in *Amchem* and *Ortiz*.[11]  And Home Depot similarly argued that this Court should follow *Payment Card* because "it reflects the same underlying approach to adequacy of representation this Court expressed in *Valley Drug* and similar cases."[12]  Because Home Depot expressly invoked these general principles, which apply regardless of whether the case involves one class or multiple subclasses, the Subscribers cannot properly limit Home Depot's opening argument to an objection to the interclass conflict.

---

[10] *Id*. at 90–93.

[11] *Id.* at 91–94.

[12] *Id.* at 94–95.

7

**B. Home Depot's Reply Advances the Same Adequacy Objection and Responds to the Arguments in the Subscribers' Merits Brief.**

Home Depot's reply brief elaborates upon these initial arguments in response to the Subscribers' counterarguments.  For instance, the Subscribers' merits brief acknowledged that Home Depot made a general objection to the conflicts between the class representatives and the absent class members: "Home Depot says that the Class's representation was inadequate because 'substantial conflicts of interest exist between the representatives and the class.'"[13]  But the Subscribers tried to reframe Home Depot's argument as some categorical objection to having any member of a (b)(3) damages settlement participate in a (b)(2) settlement for injunctive relief.  And having set up that strawman, the Subscribers attempted to dismiss Home Depot's objection by arguing that there could be no substantive conflict between these classes because the membership of the (b)(2) and (b)(3) classes was "essentially identical."[14]

In direct response to these arguments, Home Depot's reply argued the real problem is the conflict between the interests and priorities of the (b)(2) class members and the fully-insured class representatives who drove the settlement negotiations and received 93.5 percent of the damage settlement.   Quoting arguments properly raised and preserved in the district court, Home Depot pointed

---

[13] SUB:90 (quoting HD:91).

[14] SUB:52. *See also id.* at 90–91 & n.26 (arguing that the classes are "virtually identical").

out that those intraclass and interclass conflicts traded away the best interests of the unrepresented self-funded accounts—and National Accounts in particular—in future competition for a large damage award to the fully-insured class representatives and fees for their counsel.[15] Thus Home Depot's argument on reply directly answered the Subscribers' argument that there could be no conflict because the (b)(2) and (b)(3) classes were the same.

The Subscribers' merits brief further argued that Home Depot had failed to identify any facts, theory, or even "a speculative and uncertain basis for concern that the interests of the (b)(2) class members collide with those of the Subscriber Class's representatives and counsel."[16] The Subscribers' motion now complains that Home Depot's reply directly responded to these arguments by demonstrating how and why the class members had different priorities for seeking damages and injunctive relief. After complaining that Home Depot failed to identify, explain, and substantiate the representational conflicts in its opening brief, the Subscriber's motion now complains that Home Depot's reply identifies, explains, and substantiates actual conflicts between the members of the (b)(2) class, as well as the conflicts between the (b)(2) and (b)(3) classes.

---

[15] HDR:36–37.

[16] SUB:95–96.

9

And while the motion would dismiss this material as "layer upon layer of unsupported conjecture,"[17] Home Depot's reply cites evidence the Subscribers gathered regarding how the individual Blues would fiercely compete for National Accounts absent anticompetitive restrictions.[18] That evidence is no less probative merely because the Subscribers that developed it to advance some of the same points Home Depot makes now have decided to settle the case. Nor is it speculation for Home Depot to cite the Settlement Agreement itself to demonstrate that (1) National Accounts are the subscribers most likely to attract multiple Blue Bids or (2) the self-funded subscribers had different interests than the fully-insured subscribers that received 93.5 percent of the damages settlement.

Moreover, the Subscribers' merits brief argued that this Court should reject Home Depot's arguments about *Payment Card* because that case involved intraclass conflicts in addition to the interclass conflicts over damages for past relief and future injunctive relief. The Subscribers wrote:

> Even within the [*Payment Card*] (b)(2) class, there were clear conflicts. "[V]ast numbers of [(b)(2)] class members" derived no benefit at all from the settlement's primary injunctive relief—the ability to surcharge customers who use Visa or MasterCard—either because the merchant operated in a state where such surcharges were unlawful or because surcharging was not a commercially viable option. *Id.* at 238. And the (b)(2) class's injunctive relief was short-lived; it expired in July 2021,

---

[17] SUBMTS:70.

[18] *See* HD:40 (citing the Subscribers' evidence and argument that the Blues would vigorously compete for National Accounts if the rules allowed it).

10

leaving members of the (b)(2) class that came into existence after that date with literally *no relief* at all (although they were bound by the release).[19]

Once again, Home Depot's reply directly responds by pointing out the similar conflicts in this case—both within the (b)(2) class and between the (b)(2) and (b)(3) classes—to argue that the representational structure that negotiated this Settlement was inadequate. Urging the Court to apply a case Home Depot invoked in the opening brief despite the Subscribers' attempts to distinguish it hardly qualifies as presenting an entirely new and different argument on reply.

## II.    The Court Should Deny the Subscribers' Motion to Strike.

The Subscribers' motion cites cases that offer no support for their position because those cases involved attempts to raise wholly new claims or arguments for the first time in the reply brief.[20] For instance, in *Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, after appealing the district court's denial of an improper Rule 60(b) motion, plaintiff's reply introduced a new argument to recharacterize the Rule 60 motion as a Rule 4 motion. Because the plaintiff had not raised that argument in either the district court or the opening appellate brief, this Court declined to address it.[21]    Similarly, in *Davis v. Coca-Cola Bottling Co. Consol.*, this Court rejected

---

[19] SUB:97–98.

[20] *See* SUBMTS:72–73.

[21] 528 F.3d 839, 844 (11th Cir. 2008).

plaintiff's attempt to "resurrect" its employment discrimination claim in its reply brief because "[t]here was no mention of [the] claim in the [opening] brief's Statement of Issues, Statement of Case, or Argument."[22] The Subscribers' remaining cases all suffer from the same fatal flaw.[23]

---

[22] 516 F.3d 955, 972 (11th Cir. 2008).

[23] *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (plaintiff "abandoned" his argument that his retaliatory discharge claim provided an independent basis for subject matter jurisdiction because he entirely "fail[ed] to address the issue in his opening brief"); *United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) (declining to consider a new issue because the defendant "concede[d] that his initial brief on appeal" did not address this issue); *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (rejecting attempt to raise entirely new argument related to improper restriction of cross examination of a government witness in the reply brief); *Federal Marine Terminals, Inc. v. Director, OWCP*, 651 Fed. Appx. 912, 915 (11th Cir. 2016) (declining to consider new argument raised in reply brief because petitioners "failed to develop any argument on that point in the remainder of the [initial] brief"); *Johnson v. Guerrieri Mgmt., Inc.*, 437 Fed. Appx. 853, 857 n.1 (11th Cir. 2011) (declining to consider new arguments related to trial atmosphere and improper closing because they were not raised in the initial brief); *Rogero v. Noone*, 704 F.2d 518, 520 n.1 (11th Cir. 1983) (assuming the plaintiff abandoned her § 1983 and Fourteenth Amendment claims because she did not designate it as an issue on appeal and her brief did not mention it); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (deeming issues abandoned because the statement of issues entirely failed to mention the district court's alternative rulings); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 255 n.8 (2d Cir. 2011) (despite finding that there was inadequate representation, declining to address objectors' arguments because they were not raised before the district court); *Cont'l Tech. Serv., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) (California law argument waived because appellant "cite[d] no California law and ma[de] no argument based on California law" in its brief); *United States v. Feinberg*, 89 F.3d 333, 340–41 (7th Cir. 1996) (defendant forfeited his argument because it was "never mentioned" in his initial brief "[n]or did the government raise the issue in the appellee's brief"); *Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 3 (1st Cir. 1983) (finding waiver of claims not made in its initial brief).

By contrast, Home Depot does not seek to advance any new arguments in its reply. Rather, Home Depot's reply brief simply elaborates upon its initial arguments to respond directly to the Subscribers' contentions. As shown above, the Subscribers argued that unitary representation is adequate because there is an "overwhelming overlap in membership and interests."[24] Home Depot's reply, in turn, was a legitimate response aimed at rebutting this contention by explaining the specific ways in which class membership and interests diverged in this case. Thus, the Subscribers "cannot claim surprise or lack of knowledge" that Home Depot would directly respond to arguments raised in the Subscribers' brief.[25] Nor can the Subscribers show that these rebuttal arguments are new in any meaningful way.[26]

To be sure, the Subscribers are entitled to rely on issues raised in Home Depot's opening brief as the appropriate scope of appeal. But because they concede "Home Depot was the master of its opening brief,"[27] they cannot limit the scope of Home Depot's adequacy objection by confining it to the interclass conflict. Similarly, the Subscribers cannot file a motion to prevent Home Depot from

---

[24] SUBMTS:68.

[25] *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 Fed. Appx. 777, 788 (11th Cir. 2008).

[26] *Id.* (finding that there is "no basis" for treating arguments in the reply brief as new because they were included to "respond to Appellants' assertion . . . rather than as a means to make a wholly new argument").

[27] SUBMTS:74.

13

answering the arguments the Subscribers raised in response to the opening brief. The Subscribers devoted ten pages of their 143-page merits brief to address Home Depot's adequacy objection. Home Depot's reply directly and properly answered those arguments. And it can come as no surprise that the reply provided more detailed arguments in response to the Subscribers' points because Home Depot did not have those counterarguments when it filed its opening brief.

Because the purpose of a reply brief is to answer the appellee's arguments, the Subscribers cite no authority that supports tying the appellant's hands as they urge here. And the cases they do cite confirm that this Court will not employ the waiver rules this way. For instance, in *Federal Savings & Loan Ins. Corp. v. Haralson*, this Court expressly declined to find waiver because "the purposes of th[e] [waiver] rule would not be served" as the challenger—who was on notice that the grant of summary judgment in its favor was an issue in the appeal due to its earlier motion—could not "claim that it was not aware of the issues in this appeal or that it was hampered in its ability to respond."[28] Similarly, in *United States v. Feinberg*, the Seventh Circuit explained that the scope of the reply brief is appropriate when it is "*limited to addressing the arguments raised by the appellee*."[29] Home Depot

---

[28] 813 F.2d 370, 373 n.3 (11th Cir. 1987), cited at SUBMTS:73.

[29] 89 F.3d 333, 340–41 (7th Cir. 1996) (emphasis added), cited at SUBMTS:73 n.7.

undoubtedly complied with this requirement and these rebuttal arguments should be considered.

## III.  The Subscribers' Motion to Strike Seeks an Inappropriate Remedy.

In any event, even if this Court found that Home Depot raised entirely new arguments in its reply brief, granting the Subscribers' motion to strike would be an inappropriate remedy. In *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, this Court reversed class certification because the trial court had not addressed representation conflicts.[30]  Even though the defendant had not properly raised those conflicts as a Rule 23(a) objection, this Court rejected class certification because the record as a whole showed that the substance of the defendant's position was "that a conflict existed among the class members."[31]   And because the *Valley Drug* plaintiffs—like the settlement proponents here—have the burden to prove that class certification was appropriate, this Court held that the objection "can hardly be deemed to have [been] waived."[32]

---

[30] 350 F.3d 1181, 1188 & n.16 (11th Cir. 2003).  *See also Martinez-Mendoza v. Champion Int'l Corp.,* 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) ("Under Rule 23(c)(1) the trial court has an independent obligation to decide whether an action was properly brought as a class action, even where, as here, neither party moves for a ruling on class certification.") (cleaned up)); *McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554, 559 (5th Cir. 1981) (same).

[31] *Valley Drug*, 350 F.3d at 1188 & n.16.

[32] *Id*.  *See also id.* at 1190 (reversing certification because "the plaintiffs have not met their burden under Rule 23(a)(4) of demonstrating that no fundamental conflict exists within the class").

The Subscribers make no similar claim that Home Depot failed to raise the full scope of its adequacy arguments in the district court. As shown above, Home Depot clearly presented both interclass and intraclass arguments in opposition to the Settlement. And Home Depot clearly did the same again on appeal.

But even if the Court accepts the Subscribers' complaints about a supposed failure to identify both intraclass and interclass conflicts in the opening brief, the Court should not approve this sweeping Settlement without fully considering the adequacy of the representational structure that produced it. In this and every other class action, "Rule 23(a)(4) requires that the representative party in a class action 'must adequately protect the interests of those he purports to represent.'"[33] And those Rule 23(a) requirements are even more important in the settlement context.[34] If the *Valley Drug* defendant did not waive its adequacy objection by failing to make it in the district court, the Court should not find that Home Depot waived the objections it did make below merely by failing to use the Subscribers' preferred labels in the opening brief.[35]

---

[33] *Id.* at 1189 (quoting *Phillips v. Klassen,* 502 F.2d 362, 365 (D.C. Cir. 1974)).

[34] *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

[35] *See United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (*en banc*) (distinguishing between a waiver, which "is the intentional relinquishment or abandonment of a known right" and forfeiture, which "is the failure to make the timely assertion of a right").

And even if the Subscribers could show that Home Depot forfeited any part of its adequacy objection in the opening brief, the Court should nevertheless deny the motion to strike in favor of a full merits review of the adequacy of the representation structure that produced this Settlement. As the *en banc* Court explained in *United States v. Campbell*, the practice of refusing to consider arguments not raised in the opening brief is prudential, not jurisdictional.[36] Accordingly, the Court can—and should—consider a forfeited issue "when prudence dictates."[37] To that end, the Court has recognized several grounds for considering arguments that were genuinely abandoned for failure to raise them in the opening brief.[38] To identify which cases should receive this exceptional treatment, the Court stressed public policy and the impact beyond the rights of the parties to the appeal.[39] Where an appellate court can apply existing "precedent to

---

[36] 26 F.4th 860, 873 (11th Cir. 2022) (*en banc*).

[37] *Id*. (*quoting Davis v. United States*, 512 U.S. 452, 464 (1994) (Scalia, J., concurring)).

[38] *Id*. ("Consequently, we have identified five situations in which we may exercise our discretion to consider a forfeited issue: (1) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the party lacked an opportunity to raise the issue at the district court level; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern." (citing *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004)).

[39] *Id*. at 878–80.

uncontested facts to protect the clear and pressing interests of society at large," the Court should consider even forfeited arguments.[40]

The same is true for Home Depot's appeal. Home Depot's adequacy objection to a Settlement structure that trades billions in damage payments to fully-insured subscribers for a mandatory release that prohibits virtually all private plaintiffs from seeking to enjoin future antitrust violations merits the Court's full review. First, the intraclass conflict arguments that the Subscribers seek to strike from the briefing involve pure questions of law applied to the available record and they present important legal issues too important to ignore. Second, the adequacy issues for this Settlement plainly present "significant questions of general impact [and] of great public concern."[41] As the Settlement proponents have argued, this case and the Settlement it produced are historic. The scope of the Settlement is sweeping, as is the effect it will have on how hundreds of millions of people and their employers purchase health insurance. And while the proponents and the district court's approval order tout the benefits of their Settlement, there can be no question that the (b)(2) injunction and the limitations imposed by the accompanying release will similarly have a significant effect on the general public.

---

[40] *Id.* at 879.

[41] *Id.* at 873.

Given the public significance of this settlement and its consequences for the nation's health insurance market, this Court should fully consider Home Depot's objections. Accordingly, if there is any concern that Home Depot forfeited any issue in its opening brief, the Court should nevertheless consider the full breadth of the adequacy challenge in this exceptional—and exceptionally important—case. To that end, the Court will benefit from fulsome briefing to aid its review of whether the district court adequately addressed this issue below. If the Subscribers had a genuine point (and they do not), the more appropriate remedy would be to permit the Subscribers' leave to file a supplemental brief addressing any new arguments contained in Home Depot's reply on this issue.[42]

## CONCLUSION

For the foregoing reasons, the Court should deny the motion or carry it with the case so that the merits panel may determine whether there is any genuine gap in the substantive briefing and determine the appropriate remedy.

---

[42] *See First Specialty Ins. Corp.*, 300 Fed. Appx. at 788 (noting that a court may permit the filing of a surreply "when a valid reason for such additional briefing exists" and the court "can authorize the filing of a surreply only to rebut matters raised in an opposing pleading").

Respectfully submitted, this 24th day of April, 2023.

/s/ *Ronan P. Doherty*
Frank M. Lowrey
Georgia Bar No. 410310
lowrey@bmelaw.com
Ronan P. Doherty
Georgia Bar No. 224885
doherty@bmelaw.com
E. Allen Page
Georgia Bar No. 640163
page@bmelaw.com
BONDURANT MIXSON &
ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309-3417
(404) 881-4100

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32 (a)(7)(B) because this brief contains a total of 4,601 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (f) and 11th Cir. R. 32-4.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type style requirements of Fed. R. App. P. 32 (a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word with size 14 Times New Roman font.

This certification is made on April 24, 2023.

/s/ *Ronan P. Doherty*
Ronan P. Doherty

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. Counsel for all parties as well as *pro se* parties are registered CM/ECF users and will be served with the foregoing document by the Court's CM/ECF System.

/s/ *Ronan P. Doherty*
Ronan P. Doherty

Certificate of Service Page