No. 22-13051

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

In Re: Blue Cross Blue Shield Antitrust Litigation (MDL 2406)

_____

On Appeal from the United States District Court for the
Northern District of Alabama, Southern Division,
No. 2:13-CV-20000-RDP

_____

## APPELLANT DAVID G. BEHENNA'S
## PETITION FOR REHEARING EN BANC

---

David G. Behenna
155 Fleet Street
Portsmouth, NH  03801
Telephone: ███████████
Email: ████████████████

*Pro Se* Objector-Appellant

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1, Appellant hereby certifies that the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations, and other legal entities that have an interest in the outcome of this particular case on appeal:

1. 450 Ventures, LLC, *Affiliate of Defendants-Appellees*

2. A. Duie Pyle, Inc., *Plaintiff-Appellee*

3. Accenda Health Company, *Affiliate of Defendants-Appellees*

4. Access Health, Inc., *Affiliate of Defendants-Appellees*

5. Accident Fund Holding, Inc., *Affiliate of Defendants-Appellees*

6. ACE, including ACE American Insurance Company and Illinois Union Insurance Company, *Insurer of Defendants-Appellees*

7. Adams & Reese, LLP, *Counsel for Defendants-Appellees*

8. Adamson, Virginia, *Counsel for Interested Party-Appellant*

9. Adcox, Rachel, *Counsel for Defendants-Appellees*

10. Advance Insurance Company of Kansas, *Affiliate of Defendants-Appellees*

11. Advanced Health Information Network, LLC, *Affiliate of Defendants-Appellees*

12. Aero Jet Intermediate Holdings, Inc., which is wholly owned by Aero Medical International, Inc., *Parent to Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

13.   Ahrens, Ellen M., *Counsel for Plaintiffs-Appellees*

14.   American International Group Inc. (AIG) (including Lexington Insurance Company, National Union Insurance Company, and Illinois National Insurance Co.), *Insurer of Defendants-Appellees*

15.   Alabama Industries Financial Corporation, *Affiliate of Defendants-Appellees*

16.   AlaHealth, Inc., *Affiliate of Defendants-Appellees*

17.   Alexander, Laura, *Counsel for Plaintiffs-Appellees*

18.   Allie, Renee E., *Plaintiff-Appellee*

19.   Allied World Assurance Company, f/k/a Darwin National and Darwin Select, *Insurer of Defendants-Appellees*

20.   Ambrecht Jackson LLP, *Counsel for Defendants-Appellees*

21.   America's 1st Choice of South Carolina, Inc., *Subsidiary of Defendants-Appellees*

22.   American Electric Motor Services Inc., *Plaintiff-Appellee*

23.   AMERIGROUP Community Care of New Mexico, Inc., *Subsidiary of Defendants-Appellees*

24.   AMERIGROUP Corporation, *Subsidiary of Defendants-Appellees*

25.   Amerigroup District of Columbia, Inc., *Subsidiary of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

26.  Amerigroup Insurance Company, *Subsidiary of Defendants-Appellees*

27.  AMERIGROUP Iowa, Inc., *Subsidiary of Defendants-Appellees*

28.  Amerigroup Kansas, Inc., *Subsidiary of Defendants-Appellees*

29.  AMERIGROUP Maryland, Inc., *Subsidiary of Defendants-Appellees*

30.  AMERIGROUP Ohio, Inc., *Subsidiary of Defendants-Appellees*

31.  AMERIGROUP New Jersey, Inc., *Subsidiary of Defendants-Appellees*

32.  AMERIGROUP Tennessee, Inc., *Subsidiary of Defendants-Appellees*

33.  AMERIGROUP Texas, Inc., *Subsidiary of Defendants-Appellees*

34.  AMERIGROUP Washington, Inc., *Subsidiary of Defendants-Appellees*

35.  AmeriHealth, Inc., *Parent to Defendants-Appellees*

36.  AMGP Georgia Managed Care Company, Inc., *Subsidiary of Defendants-Appellees*

37.  Anthem Blue Cross (Blue Cross of California), *Defendant-Appellee*

38.  Anthem Blue Cross and Blue Shield of Connecticut, *Defendant-Appellee*

39.  Anthem Blue Cross and Blue Shield of Indiana, *Defendant-Appellee*

40.  Anthem Blue Cross and Blue Shield of Missouri, *Defendant-Appellee*

41.  Anthem Blue Cross and Blue Shield of New Hampshire, *Defendant-Appellee*

42.  Anthem Blue Cross and Blue Shield of Virginia, Inc., *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

43.   Anthem Blue Cross Life and Health Insurance Company, *Defendant-Appellee*

44.   Anthem Financial, Inc., *Affiliate of Defendants-Appellees*

45.   Anthem Health Insurance Company of Nevada, *Subsidiary of Defendants-Appellees*

46.   Anthem Health Plans of Kentucky, Inc., *Defendant-Appellee*

47.   Anthem Health Plans of Maine, *Defendant-Appellee*

48.   Anthem Health Plans of Maine, Inc., *Defendant-Appellee*

49.   Anthem Health Plans of New Hampshire, Inc. (Anthem Blue Cross and Blue Shield of New Hampshire), *Defendant-Appellee*

50.   Anthem Health Plans of Virginia, Inc. (Anthem Blue Cross and Blue Shield of Virginia Inc.), *Defendant-Appellee*

51.   Anthem Health Plans, Inc. (Anthem Blue Cross and Blue Shield of Connecticut), *Defendant-Appellee*

52.   Anthem Holding Corporation, *Defendant-Appellee*

53.   Anthem Insurance Companies, Inc. (Anthem Blue Cross and Blue Shield of Indiana), *Defendant-Appellee*

54.   Anthem, Inc. (ELV), *Defendant-Appellee*

55.   Anthem, Inc. (Anthem Health Plans of Virginia, Inc.), *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

56.     Anthem, Inc. (Parent to Anthem Insurance Companies, Inc.), *Defendant-Appellee*

57.     Anthem, Inc. (Parent to Community Insurance Company), *Defendant-Appellee*

58.     Anthem, Inc., f/k/a Wellpoint, Inc. d/b/a Anthem Blue Cross Life and Health Insurance Company, Blue Cross of California, Blue Cross of Southern California, Blue Cross of Northern California, Rocky Mountain Hospital and Medical Service Inc. d/b/a Anthem Blue Cross Blue Shield of Colorado and Anthem Blue Cross Blue Shield of Nevada, Anthem Blue Cross Blue Shield of Connecticut, Anthem Blue Cross Blue Shield of Georgia, Anthem Blue Cross Blue Shield of Indiana, Anthem Blue Cross Blue Shield of Kentucky, Anthem Blue Cross Blue Shield of Maine, Anthem Blue Cross Blue Shield of Missouri, RightCHOICE Managed Care, Inc., HMO Missouri Inc., Anthem Health Plans of New Hampshire as Anthem Blue Cross Blue Shield of New Hampshire, Empire HealthChoice Assurance, Inc. as Empire Blue Cross Blue Shield, Community Insurance Company as Anthem Blue Cross Blue Shield of Ohio, Anthem Blue Cross and Blue Shield of Virginia, Anthem Blue Cross Blue Shield of Wisconsin, *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

59.  Anthem Kentucky Managed Care Plan, Inc., *Subsidiary of Defendants-Appellees*

60.  Anthem Life & Disability Insurance Company, *Affiliate of Defendants-Appellees*

61.  Anthem Life Insurance Company, *Defendant-Appellee*

62.  Anthem Partnership Holding Company, LLC, *Subsidiary of Defendants-Appellees*

63.  Anthem Southeast, Inc., *Subsidiary of Defendants-Appellees*

64.  Anthem Workers' Compensation, LLC, *Subsidiary of Defendants-Appellees*

65.  APC Passe, LLC, *Affiliate of Defendants-Appellees*

66.  Arch Insurance Company (ACGL), *Insurer of Defendants-Appellees*

67.  Argo Re (ARGO), *Insurer of Defendants-Appellees*

68.  Arizmendi, Sylmarie, *Counsel for Defendants-Appellees*

69.  Arkansas Blue Cross and Blue Shield, *Defendant-Appellee*

70.  Armbrecht Jackson LLP, *Counsel for Defendants-Appellees*

71.  ASC Benefit Services, LLC, *Affiliate of Defendants-Appellees*

72.  Aschenbrenner, Juanita, *Plaintiff-Appellee*

73.  Aschenbrenner, Tom, *Plaintiff-Appellee*

74.  Associated Group, Inc., *Subsidiary of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

75.    Asuris Northwest Health, *Subsidiary of Defendants-Appellees*

76.    ATH Holding Company, LLC, *Subsidiary of Defendants-Appellees*

77.    Ausman Law Firm, *Counsel for Plaintiffs-Appellees*

78.    Ausman, Jason, *Counsel for Plaintiffs-Appellees*

79.    Avalon Insurance Company, *Affiliate of Defendants-Appellees*

80.    Avantgarde Aviation, Inc., *Plaintiff-Appellee*

81.    Aware Integrated, Inc., *Parent to Defendants-Appellees*

82.    Axinn, Veltrop & Harkrider, LLP, *Counsel for Defendants-Appellees*

83.    Bailey, Arthur, *Counsel for Plaintiffs-Appellees*

84.    Baird, Lisa M., *Counsel for Defendants-Appellees*

85.    Balch & Bingham LLP, *Counsel for Defendants-Appellees*

86.    Ball & Scott Law Offices, *Counsel for Plaintiffs-Appellees*

87.    Ball, W. Gordon, *Counsel for Plaintiffs-Appellees*

88.    Balmori, Daniel, *Counsel for Defendants-Appellees*

89.    Barnes, Benjamin L., *Counsel for Plaintiffs-Appellees*

90.    Barnett, Tyler J., *Counsel for Plaintiffs-Appellees*

91.    Barr, Sternberg, Moss, Lawrence, Silver & Munson, P.C., *Plaintiff-Appellee*

92.    Barstow, Erik, *Plaintiff-Appellee*

93.    Bartlett, Inc. d/b/a Energy Savers, *Plaintiff-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

94.    Bartony & Hare, *Counsel for Plaintiffs-Appellees*

95.    Battin, Timothy D., *Counsel for Plaintiffs-Appellees*

96.    Baudin, Stanley P., *Counsel for Plaintiffs-Appellees*

97.    BCBSM, Inc. d/b/a Blue Cross Blue Shield of Minnesota, *Defendant-Appellee*

98.    BCS Insurance Company, *Insurer of Defendants-Appellees*

99.    Beard, Braden, *Counsel for Plaintiffs-Appellees*

100.   Bearman, Edward M., *Counsel for Plaintiffs-Appellees*

101.   Beck & Amsden PLLC, *Counsel for Plaintiffs-Appellees*

102.   Beck, Monte D., *Counsel for Plaintiffs-Appellees*

103.   Behenna, David G., *Interested Party-Appellant*

104.   Belin, Eric R.G., *Counsel for Plaintiffs-Appellees*

105.   Belt Law Firm, PC, *Counsel for Plaintiffs-Appellees*

106.   Belt, Keith T., *Counsel for Plaintiffs-Appellees*

107.   Belzer, Betsy Jane, *Plaintiff-Appellee*

108.   BeneVive, Inc., *Affiliate of Defendants-Appellees*

109.   Berger & Montague, P.C., *Counsel for Plaintiffs-Appellees*

110.   Bernick, Justin, *Counsel for Defendants-Appellees*

111.   Bhuta, Monika, *Plaintiff-Appellee*

112.   Bishop, Martin J., *Counsel for Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

113. Bisio, Peter, *Counsel for Defendants-Appellees*

114. Blackrock, Inc., *10% Owner of a Plaintiff-Appellee*

115. Blanchfield, Garrett, *Counsel for Plaintiffs-Appellees*

116. Bloomberg, Edward S., *Counsel for Defendants-Appellees*

117. Blue Care Network of Michigan, *Affiliate of Defendants-Appellees*

118. Blue Cross and Blue Shield of Alabama, *Defendant-Appellee*

119. Blue Cross and Blue Shield of Arizona, *Defendant-Appellee*

120. Blue Cross and Blue Shield of Florida, *Defendant-Appellee*

121. Blue Cross and Blue Shield of Florida, Inc., *Defendant-Appellee*

122. Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue, *Defendant-Appellee*

123. Blue Cross and Blue Shield of Georgia, *Defendant-Appellee*

124. Blue Cross and Blue Shield of Georgia, Inc., *Defendant-Appellee*

125. Blue Cross and Blue Shield of Illinois, *Affiliate of Defendants-Appellees*

126. Blue Cross and Blue Shield of Kansas, *Defendant-Appellee*

127. Blue Cross and Blue Shield of Kansas City, *Defendant-Appellee*

128. Blue Cross and Blue Shield of Kansas Foundation, *Affiliate of Defendants-Appellees*

129. 129. Blue Cross and Blue Shield of Kansas, Inc., *Defendant-Appellee*

130. 130. Blue Cross and Blue Shield of Louisiana, *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

131.   131. Blue Cross and Blue Shield of Massachusetts, *Defendant-Appellee*

132.   132. Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.,

     *Affiliate of Defendants-Appellees*

133.   Blue Cross and Blue Shield of Massachusetts, Inc., *Defendant-Appellee*

134.   Blue Cross and Blue Shield of Michigan, *Defendant-Appellee*

135.   Blue Cross and Blue Shield of Minnesota, *Defendant-Appellee*

136.   Blue Cross and Blue Shield of Mississippi, *Defendant-Appellee*

137.   Blue Cross and Blue Shield of Montana, *Affiliate of Defendants-Appellees*

138.   Blue Cross and Blue Shield of Nebraska, *Defendant-Appellee*

139.   Blue Cross and Blue Shield of New Mexico, *Affiliate of Defendants-Appellees*

140.   Blue Cross and Blue Shield of North Carolina, *Defendant-Appellee*

141.   Blue Cross and Blue Shield of North Carolina, Inc., *Defendant-Appellee*

142.   Blue Cross and Blue Shield of North Dakota, *Defendant-Appellee*

143.   Blue Cross and Blue Shield of Oklahoma, *Affiliate of Defendants-Appellees*

144.   Blue Cross and Blue Shield of Rhode Island, *Defendant-Appellee*

145.   Blue Cross and Blue Shield of South Carolina, *Defendant-Appellee*

146.   Blue Cross and Blue Shield of Tennessee, *Defendant-Appellee*

147.   Blue Cross and Blue Shield of Tennessee, Inc., *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

148.  Blue Cross and Blue Shield of Texas, *Affiliate of Defendants-Appellees*

149.  Blue Cross and Blue Shield of Vermont, *Defendant-Appellee*

150.  Blue Cross and Blue Shield of Wyoming, *Defendant-Appellee*

151.  Blue Cross Blue Shield Association, *Defendant-Appellee*

152.  Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., *Defendant-Appellee*

153.  Blue Cross Blue Shield of Alabama, *Defendant-Appellee*

154.  Blue Cross Blue Shield of Arizona, *Defendant-Appellee*

155.  Blue Cross Blue Shield of Florida, *Defendant-Appellee*

156.  Blue Cross Blue Shield of Massachusetts, *Defendant-Appellee*

157.  Blue Cross Blue Shield of Michigan, *Defendant-Appellee*

158.  Blue Cross Blue Shield of Michigan Mutual Insurance Company, *Defendant-Appellee*

159.  Blue Cross Blue Shield of Minnesota, *Defendant-Appellee*

160.  Blue Cross Blue Shield of Mississippi, a Mutual Insurance Company, *Defendant-Appellee*

161.  Blue Cross Blue Shield of Montana, *Defendant-Appellee*

162.  Blue Cross Blue Shield of Nebraska, *Defendant-Appellee*

163.  Blue Cross Blue Shield of North Carolina, *Defendant-Appellee*

164.  Blue Cross Blue Shield of North Dakota, *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

165.  Blue Cross Blue Shield of Northeastern Pennsylvania, *Defendant-Appellee*

166.  Blue Cross Blue Shield of Rhode Island, *Defendant-Appellee*

167.  Blue Cross Blue Shield of South Carolina, *Defendant-Appellee*

168.  Blue Cross Blue Shield of Tennessee, *Defendant-Appellee*

169.  Blue Cross Blue Shield of Vermont, *Defendant-Appellee*

170.  Blue Cross Blue Shield of Wisconsin (Anthem Blue Cross Blue Shield of Wisconsin), *Defendant-Appellee*

171.  Blue Cross Blue Shield of Wyoming, *Defendant-Appellee*

172.  Blue Cross Complete of Michigan, LLC, *Affiliate of Defendants-Appellees*

173.  Blue Cross of California Partnership Plan, Inc., *Defendant-Appellee*

174.  Blue Cross of Idaho Care Plus, Inc., *Affiliate of Defendants-Appellees*

175.  Blue Cross of Idaho Health Service, Inc., *Defendant-Appellee*

176.  Blue Cross of Northeastern Pennsylvania - Wilkes-Barre, *Defendant-Appellee*

177.  BlueChoice HealthPlan of South Carolina, Inc., *Affiliate of Defendants-Appellees*

178.  BlueCross and BlueShield of North Carolina Senior Health, *Affiliate of Defendants-Appellees*

179.  BlueCross BlueShield Kansas Solutions, *Affiliate of Defendants-Appellees*

180.  Blue Shield of California, *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

181. Blue Shield of California Life & Health Insurance Company, *Subsidiary of Defendants-Appellees*

182. BMH, LLC, *Affiliate of Defendants-Appellees*

183. Bodman PLC, *Counsel for Defendants-Appellees*

184. Boies, Alexander McInnis, *Counsel for Plaintiffs-Appellees*

185. Boies, David, *Counsel for Plaintiffs-Appellees*

186. Boies, Schiller & Flexner LLP, *Counsel for Plaintiffs-Appellees*

187. Bojedla, Swathi, *Counsel for Plaintiffs-Appellees*

188. Bondurant Mixson & Elmore, LLP, *Counsel for Interested Party-Appellant*

189. Boozer Law Firm, LLC, *Counsel for Plaintiffs-Appellees*

190. Borgeest, Wayne, *Counsel for Insurer*

191. Bowling, Jeffrey L., *Counsel for Plaintiffs-Appellees*

192. Boyd, Matthew Allan *Plaintiff-Appellee*

193. Bradberry, Christy, *Plaintiff-Appellee*

194. Bradberry, Kevin, *Plaintiff-Appellee*

195. Bradley Arant Boult Cummings, LLP, *Counsel for Interested Party-Appellant*

196. BridgeSpan Health Company, *Subsidiary of Defendants-Appellees*

197. Briggs, John, *Counsel for Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

198. Brijbasi, Vijay G., *Counsel for Defendants-Appellees*

199. Bronster Hoshibata, *Counsel for Plaintiffs-Appellees*

200. Bronster, Margery S., *Counsel for Plaintiffs-Appellees*

201. Brooks, John, *Counsel for Insurer*

202. Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, *Counsel for Defendants-Appellees*

203. Bronster, Fujichaka, Robbins, ALC, *Counsel for Plaintiffs-Appellees*

204. Bruner, Robert P., *Counsel for Plaintiffs-Appellees*

205. Brunini, Grantham, Grower & Hewes, PLLC, *Counsel for Defendants-Appellees*

206. Buchanan, Virginia, *Counsel for Plaintiffs-Appellees*

207. Burkhalter, Carl S., *Counsel for Defendants-Appellees*

208. Burns Charest LLP, *Counsel for Plaintiffs-Appellees*

209. Burns, Eric, *Counsel for Plaintiffs-Appellees*

210. Burns, Warren T., *Counsel for Plaintiffs-Appellees*

211. Burr & Forman LLP, *Counsel for Insurer*

212. Bustamante, Travis A., *Counsel for Defendants-Appellees*

213. Cafferty Clobes Meriwether & Sprengel LLP, *Counsel for Plaintiffs-Appellees*

214. Cafferty, Patrick, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

215. Cahaba Government Benefit Administrators, LLC, *Affiliate of Defendants-Appellees*

216. Cahaba Medical Care, *Defendant-Appellee*

217. Cahaba Safeguard Administrators, LLC, *Affiliate of Defendants-Appellees*

218. Caliendo, Charles T., *Counsel for Plaintiffs-Appellees*

219. California Physicians' Service, *Defendant-Appellee*

220. California Physicians' Service, d/b/a Blue Shield of California, *Defendant-Appellee*

221. Callister, Joshua, *Counsel for Plaintiffs-Appellees*

222. Cambia Health Solutions, Inc., f/d/b/a Regence Blue Shield of Idaho, Regence Blue Cross Blue Shield of Oregon, Regence Blue Cross Blue Shield of Utah, Regence Blue Shield of Washington, *Defendant-Appellee*

223. Campbell Partners, *Counsel for Defendants-Appellees*

224. Campbell, A. Todd, *Counsel for Defendants-Appellees*

225. Campbell, Andrew P., *Counsel for Defendants-Appellees*

226. Capital Administrative Services, Inc., *Affiliate of Defendants-Appellees*

227. Capital Advantage Assurance Company, *Affiliate of Defendants-Appellees*

228. Capital Advantage Insurance Company, *Affiliate of Defendants-Appellees*

229. Capital BlueCross, *Defendant-Appellee*

230. Capital Health Plan, Inc., *Affiliate of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

231. CareFirst Blue Cross and Blue Shield of Maryland, *Defendant-Appellee*

232. CareFirst BlueChoice, Inc., *Defendant-Appellee*

233. CareFirst BlueCross BlueShield, d/b/a Group Hospitalization and Medical Services and CareFirst Blue Cross Blue Shield of Maryland, *Defendant-Appellee*

234. CareFirst Holdings, Inc., *Parent to Defendants-Appellees*

235. CareFirst of Maryland, Inc., *Defendant-Appellee*

236. CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield, *Defendant-Appellee*

237. CareFirst, Inc., *Defendant-Appellee*

238. CareMore Health Plan, *Subsidiary of Defendants-Appellees*

239. CareMore Health Plan of Arizona, Inc., *Subsidiary of Defendants-Appellees*

240. CareMore Health Plan of Nevada, *Subsidiary of Defendants-Appellees*

241. CareMore Health Plan of Texas, Inc., *Subsidiary of Defendants-Appellees*

242. CareMore Health System, *Subsidiary of Defendants-Appellees*

243. Caring for Montanans, Inc., f/k/a Blue Cross and Blue Shield of Montana, Inc., *Defendant-Appellee*

244. Caring for Montanans, Inc., *Defendant-Appellee*

245. Caring Foundation, *Affiliate of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

246. Carlson Lynch, Ltd., *Counsel for Plaintiffs-Appellees*

247. Carlson Lynch Sweet Kilpela & Carpenter, LLP, *Counsel for Plaintiffs-Appellees*

248. Carr, James P., *Counsel for Plaintiffs-Appellees*

249. Casa Blanca, LLC, *Plaintiff-Appellee*

250. Casey, Justine, *Counsel for Insurer*

251. Catamount Insurance Services, Inc., *Affiliate of Defendants-Appellees*

252. Cavanaugh, Patrick K., *Counsel for Plaintiffs-Appellees*

253. CB Roofing LLC, *Plaintiff-Appellee*

254. CCHA, LLC, *Subsidiary of Defendants-Appellees*

255. Cerulean Companies, Inc., *Subsidiary of Defendants-Appellees*

256. Cerven, Keith O., *Plaintiff-Appellee*

257. Cerven, Teresa, M., *Plaintiff-Appellee*

258. CGS Administrators, LLC, *Affiliate of Defendants-Appellees*

259. Chadrow & Associates, *Counsel for Plaintiffs-Appellees*

260. Chapman, Lewis & Swan, PLLC, *Counsel for Plaintiffs-Appellees*

261. Chapman, Ralph E., *Counsel for Plaintiffs-Appellees*

262. Charles M. Thompson PC, *Counsel for Plaintiffs-Appellees*

263. Charnes, Adam H., *Counsel for Defendants-Appellees*

264. Chavez, Kathleen, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

265.  Chesler, Evan, *Counsel for Defendants-Appellees*

266.  Childress, Jennifer D., *Plaintiff-Appellee*

267.  Chubb (CB) (including Federal Insurance and Executive Risk), *Insurer of Defendants-Appellees*

268.  Cihlar, Nate, *Counsel for Plaintiffs-Appellees*

269.  Claim Management Services, Inc., *Subsidiary of Defendants-Appellees*

270.  Clark, Anna Mercado, *Counsel for Defendants-Appellees*

271.  Clement, Paul D., *Counsel for Defendants-Appellees*

272.  Clobes, Bryan, *Counsel for Plaintiffs-Appellees*

273.  Cobalt Benefits Group, LLC, *Affiliate of Defendants-Appellees*

274.  COBX Inc., *Affiliate of Defendants-Appellees*

275.  Cochran, Jennifer, *Interested Party-Appellant (Pro Se)*

276.  Coffey Burlington, *Counsel for Defendants-Appellees*

277.  Coffin, Christopher, *Counsel for Plaintiffs-Appellees*

278.  Cohen Milstein Sellers & Toll PLLC, *Counsel for Plaintiffs-Appellees*

279.  Cohen, Lucile H., *Counsel for Defendants-Appellees*

280.  Comet Capital LLC, *Plaintiff-Appellee*

281.  Commencement Bay Risk Management Insurance Company, *Subsidiary of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

282. Community Care Health Plan of Louisiana, Inc. d/b/a Healthy Blue, *Subsidiary of Defendants-Appellees*

283. Community Care Health Plan of Nevada, Inc., *Subsidiary of Defendants-Appellees*

284. Community Insurance Company, *Defendant-Appellee*

285. Community Insurance Company as Anthem Blue Cross Blue Shield of Ohio, *Defendant-Appellee*

286. Companion Benefit Alternatives, Inc., *Affiliate of Defendants-Appellees*

287. Companion Data Services, LLC, *Affiliate of Defendants-Appellees*

288. Companion Life Insurance Company, *Affiliate of Defendants-Appellees*

289. Companion Life Insurance Company of California, *Affiliate of Defendants-Appellees*

290. Comparato, Paige, *Counsel for Defendants-Appellees*

291. Compcare Health Services Insurance Corporation, *Affiliate of Defendants-Appellees*

292. Comprehensive Benefits Administrators, Inc., *Affiliate of Defendants-Appellees*

293. Concepcion Martinez & Bellido, *Counsel for Defendants-Appellees*

294. Concepcion, Esq., Carlos F., *Counsel for Defendants-Appellees*)

295. Connally, III, N. Thomas, *Counsel for Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

296. Conner, Timothy J., *Counsel for Defendants-Appellees*

297. Connor, Glen M., *Counsel for Plaintiffs-Appellees*

298. Conrad Watson Air Conditioning, Inc., *Plaintiff-Appellee*

299. Consolidated Benefits, Inc., *Affiliate of Defendants-Appellees*

300. Consumer Financial Education Foundation of America, Inc., *Plaintiff-Appellee*

301. Conway, D.C., Jerry L., *Plaintiff-Appellee*

302. Coolidge, Melinda, *Counsel for Plaintiffs-Appellees*

303. Cooper & Kirk, PLLC, *Counsel for Plaintiffs-Appellees*

304. Cooper, Charles J., *Counsel for Plaintiffs-Appellees*

305. Cooper, Davis, *Counsel for Plaintiffs-Appellees*

306. Corporate Benefits Services, Inc., *Affiliate of Defendants-Appellees*

307. Cory Watson Crowder & DeGaris, P.C., *Counsel for Plaintiffs-Appellees*

308. Cory Watson, P.C., *Counsel for Plaintiffs-Appellees*

309. Costello, Honor R., *Counsel for Defendants-Appellees*

310. Cottrell, P.C., Christa C., *Counsel for Defendants-Appellees*

311. Coulson, David A., *Counsel for Defendants-Appellees*

312. Cowan, R. Christopher, *Counsel for Plaintiffs-Appellees*

313. Cowan Law Firm, *Counsel for Plaintiffs-Appellees*

314. Cozen O'Connor, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

315.  Craker, Aaron, *Interested Party-Appellant (Pro Se)*

316.  Cramer, Eric L., *Counsel for Plaintiffs-Appellees*

317.  Cravath Swaine & Moore, *Counsel for Defendants-Appellees*

318.  Crispin, R. Randal, *Counsel for Insurer*

319.  Crossroads Acquisition Corp., *Subsidiary of Defendants-Appellees*

320.  Crowe & Dunlevy, *Counsel for Defendants-Appellees*

321.  Crowell & Moring LLP, *Counsel for Defendants-Appellees*

322.  Cude, Donna Smith, *Counsel for Plaintiffs-Appellees*

323.  Cunningham, Mark A., *Counsel for Defendants-Appellees*

324.  Curtis, Frank, *Plaintiff-Appellee*

325.  Cylkowski, Sarah L., *Counsel for Defendants-Appellees*

326.  Dampier Law Group, P.C., *Counsel for Plaintiffs-Appellees*

327.  Dampier, M. Stephen, *Counsel for Plaintiffs-Appellees*

328.  Davidson, Jennifer Ray, *Plaintiff-Appellee*

329.  Davis, Greg, *Counsel for Plaintiffs-Appellees*

330.  Deal, Cooper, & Holton, LLP, *Counsel for Plaintiffs-Appellees*

331.  DeCare Dental, LLC, *Subsidiary of Defendants-Appellees*

332.  DeCare Dental Health International, LLC, *Subsidiary of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

333. DeCare Dental Insurance Ireland, Ltd., *Subsidiary of Defendants-Appellees*

334. DeCare Dental Networks, LLC, *Subsidiary of Defendants-Appellees*

335. DeGaris, Annesley H., *Counsel for Plaintiffs-Appellees*

336. Del Sole Cavanaugh Stroyd, LLC, *Counsel for Plaintiffs-Appellees*

337. Del Sole, Steven J., *Counsel for Plaintiffs-Appellees*

338. Dellaccio, Douglas, *Counsel for Plaintiffs-Appellees*

339. DeMasi, Karin, *Counsel for Defendants-Appellees*

340. Dental Management Administrators, Inc., *Affiliate of Defendants-Appellees*

341. Designated Agent Company, Inc., *Subsidiary of Defendants-Appellees*

342. Dickinson Wright, PLLC, *Counsel for Defendants-Appellees*

343. Dickinson, Mackaman, Tyler & Hagen, P.C., *Counsel for Defendants-Appellees*

344. Diddle, Samuel A., *Counsel for Defendants-Appellees*

345. Doherty, Ronan, *Counsel for Interested Party-Appellant*

346. Dominick Feld Hyde PC, *Counsel for Plaintiffs-Appellants*

347. Dominion Dental Services of New Jersey, Inc., *Affiliate of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

348. Dominion Dental Services USA, Inc., Dominion National, *Affiliate of Defendants-Appellees*

349. Dominion Dental Services, Inc., d/b/a Dominion National, *Affiliate of Defendants-Appellees*

350. Dominion Dental USA, Inc., *Affiliate of Defendants-Appellees*

351. Dominion National Insurance Company of New Jersey, *Affiliate of Defendants-Appellees*

352. Donaldson Guin LLC, *Counsel for Plaintiffs-Appellees*

353. Donnell, Sarah J., *Counsel for Defendants-Appellees*

354. Dorr, Jr., Luther M., *Counsel for Defendants-Appellees*

355. Draper, Hayward L., *Counsel for Defendants-Appellees*

356. Dryden, Benjamin R., *Counsel for Defendants-Appellees*

357. Dyer, Karen, *Counsel for Plaintiffs-Appellees*

358. EAP Alliance Incorporated, *Affiliate of Defendants-Appellees*

359. Eberle Berlin, Kading, Turnbow & McKlveen, Chartered, *Counsel for Defendants-Appellees*

360. EEPA, LLC, *Affiliate of Defendants-Appellees*

361. Eisler, Robert, *Counsel for Plaintiffs-Appellees*

362. Empire HealthChoice Assurance, Inc., *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

363. Empire HealthChoice Assurance, Inc., f/k/a Empire Blue Cross Blue Shield, *Defendant-Appellee*

364. Empire HealthChoice HMO, Inc., *Subsidiary of Defendants-Appellees*

365. Employee Services, Inc., *Interested Party-Appellant*

366. Encore System Professionals, LLC, *Affiliate of Defendants-Appellees*

367. Endurance Specialty Insurance Ltd., *Insurer of Defendants-Appellees*

368. Enterprise Law Group, LLP, *Counsel for Plaintiffs-Appellees*

369. Entrust Administrative Services, Inc., *Affiliate of Defendants-Appellees*

370. Entrust Agencies, LLC, *Affiliate of Defendants-Appellees*

371. Entrust Group, Inc., *Affiliate of Defendants-Appellees*

372. Entrust, LLC, *Affiliate of Defendants-Appellees*

373. Excellus Blue Cross Blue Shield, *Defendant-Appellee*

374. Excellus BlueCross BlueShield of New York, *Defendant-Appellee*

375. Excellus Health Plan, Inc. d/b/a Excellus Blue Cross Blue Shield, *Defendant-Appellee*

376. Excellus Healthcare, Inc., d/b/a Excellus BlueCross BlueShield, *Defendant-Appellee*

377. Faegre Baker Daniels LLP, *Counsel for Defendants-Appellees*

378. Feinstein, Richard A., *Counsel for Plaintiffs-Appellees*

379. Ficaro, James, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

380. First Administrators, Inc., *Defendant-Appellee*

381. Fleming, Michael J., *Counsel for Plaintiffs-Appellees*

382. Florida Combined Life, *Affiliate of Defendants-Appellees*

383. Florida Health Care Plan, Inc., *Affiliate of Defendants-Appellees*

384. Freedom Health, Inc., *Subsidiary of Defendants-Appellees*

385. Foley & Lardner LLP, *Counsel for Defendants-Appellees*

386. Foote, Mielke, Chavez & O'Neil LLC, *Counsel for Plaintiffs-Appellees*

387. Foote, Robert M., *Counsel for Plaintiffs-Appellees*

388. Forbes Law Group, LLC, *Counsel for Plaintiffs-Appellees*

389. Forbes, Frankie J, *Counsel for Plaintiffs-Appellees*

390. Forsythe, Debora, *Plaintiff-Appellee*

391. Forsythe, Tony, *Plaintiff-Appellee*

392. Fort McClellan Credit Union, *Plaintiff-Appellee*

393. Fowler, Jeffrey John, *Counsel for Defendants-Appellees*

394. Franz, Morgan B., *Counsel for Defendants-Appellees*

395. Free State Growers, Inc., *Plaintiffs-Appellees*

396. Freedman Boyd Hollander, *Counsel for Plaintiffs-Appellees*

397. Fronk, Casey R., *Counsel for Defendants-Appellees*

398. Fujichaku, Rex Y., *Counsel for Plaintiffs-Appellees*

399. G&S Trailer Repair Inc., *Plaintiff-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

400.  Galactic Funk Touring, Inc., *Plaintiff-Appellee*

401.  Gankendorff, Edgar D., *Counsel for Plaintiffs-Appellees*

402.  Garner, Jeffrey S., *Plaintiff-Appellee*

403.  Gaston CPA Firm, P.C., *Plaintiff-Appellee*

404.  GC/AAA Fences, Inc., *Plaintiff-Appellee*

405.  Gebremariam, Helam, *Counsel for Defendants-Appellees*

406.  Geneia Holdings LLC, *Affiliate of Defendants-Appellees*

407.  Geneia Insights and Innovations LLC, *Affiliate of Defendants-Appellees*

408.  Geneia LLC, *Affiliate of Defendants-Appellees*

409.  Geneia Management Solutions LLC, *Affiliate of Defendants-Appellees*

410.  Gentle III, Edgar C., *Special Master*

411.  Giarmarco, Mullins & Horton, P.C., *Counsel for Plaintiffs-Appellees*

412.  Giglio, Jr., Joseph C., *Counsel for Defendants-Appellees*

413.  Gilbert, Sarah, *Counsel for Defendants-Appellees*

414.  Gillis, H. Lewis, *Counsel for Plaintiffs-Appellees*

415.  Given, Robert S. W., *Counsel for Defendants-Appellees*

416.  Global TPA, LLC, *Subsidiary of Defendants-Appellees*

417.  Golden Security Insurance Co., *Affiliate of Defendants-Appellees*

418.  Golden West Health Plan, Inc., *Subsidiary of Defendants-Appellees*

419.  Goodin, Janeen, *Plaintiff-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

420.  Goodman, Jason, *Plaintiff-Appellee*

421.  Goodman, Tom A., *Plaintiff-Appellee*

422.  Goodsir, David, *Counsel for Defendants-Appellees*

423.  Gordon Ball Law Office, *Counsel for Plaintiffs-Appellees*

424.  Gordon Jr., Ben W., *Counsel for Plaintiffs-Appellees*

425.  Government Management Services, LLC, *Affiliate of Defendants-Appellees*

426.  Grabar Law Office, *Counsel for Plaintiffs-Appellees*

427.  Grant & Eisenhofer, *Counsel for Plaintiffs-Appellees*

428.  Greg Davis Law, LLC, *Counsel for Plaintiffs-Appellees*

429.  Greater Georgia Life Insurance Company, *Subsidiary of Defendants-Appellees*

430.  Green, Cheri D., *Counsel for Defendants-Appellees*

431.  Greenberg Traurig, PA, *Counsel for Defendants-Appellees*

432.  Group Hospitalization and Medical Services, Inc., *Defendant-Appellee*

433.  Group Hospitalization and Medical Services, Inc. d/b/a CareFirst BlueCross BlueShield, *Defendant-Appellee*

434.  Group Insurance Services, Inc., *Affiliate of Defendants-Appellees*

435.  GuideWell Mutual Holding Corporation, *Parent to Defendants-Appellees*

436.  Guin, David J., *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

437.  Guin, Stokes & Evans, LLC, *Counsel for Plaintiffs-Appellees*

438.  Gustafson Gluek PLLC, *Counsel for Plaintiffs-Appellees*

439.  Gustafson, Daniel E., *Counsel for Plaintiffs-Appellees*

440.  Haden, Ed R., *Counsel for Defendants-Appellees*

441.  Hansen, Chad D., *Counsel for Defendants-Appellees*

442.  Hare, Scott M., *Counsel for Plaintiffs-Appellees*

443.  Harrell, J. Wells, *Counsel for Plaintiffs-Appellees*

444.  Harvalis, Jim, *Affiliated with Counsel for Defendants-Appellees*

445.  Harwood, Jr., Hon. R. Bernard, *Special Master*

446.  Hauser, Brian C., *Counsel for Defendants-Appellees*

447.  Hausfeld LLP, *Counsel for Plaintiffs-Appellees*

448.  Hausfeld, Michael, *Counsel for Plaintiffs-Appellees*

449.  Hawaii Medical Service Association d/b/a Blue Cross and Blue Shield of Hawaii, *Defendant-Appellee*

450.  Hawran, Gregory R., *Counsel for Defendants-Appellees*

451.  Hayes, Lisa N., *Counsel for Plaintiffs-Appellees*

452.  Hazzard Law, LLC, Counsel for Plaintiffs-Appellees

453.  Hazzard, Brent, *Counsel for Plaintiffs-Appellees*

454.  Health and Wellness Partners, Inc., *Affiliate of Defendants-Appellees*

455.  Healthbox Nashville LLC, *Affiliate of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

456.  Health Care Service Corporation, *Defendant-Appellee*

457.  Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois, Blue Cross Blue Shield of New Mexico, Blue Cross Blue Shield of Oklahoma, Blue Cross and Blue Shield of Montana, Blue Cross Blue Shield of Texas, *Defendant-Appellee*

458.  Healthcare Business Solutions, LLC, *Affiliate of Defendants-Appellees*

459.  HealthKeepers, Inc., *Subsidiary of Defendants-Appellees*

460.  HealthLink HMO, Inc., *Subsidiary of Defendants-Appellees*

461.  HealthLink, Inc., *Subsidiary of Defendants-Appellees*

462.  Healthcare Management Administrators, Inc., *Subsidiary of Defendants-Appellees*

463.  Health Management Corporation, *Subsidiary of Defendants-Appellees*

464.  HealthNow New York Inc., *Defendant-Appellee*

465.  HealthNow New York Inc., d/b/a Blue Cross Blue Shield of Western New York and Blue Shield of Northeastern New York, *Defendant-Appellee*

466.  HealthNow Systems, Inc., *Defendant-Appellee*

467.  Health Options, Inc., *Affiliate of Defendants-Appellees*

468.  HealthPlus HP, LLC, *Subsidiary of Defendants-Appellees*

469.  HealthSun Health Plans, Inc., *Subsidiary of Defendants-Appellees*

470.  Healthy Alliance Life Insurance Company, *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

471. Hedlund, Daniel C., *Counsel for Plaintiffs-Appellees*

472. Hellums, Chris T., *Counsel for Plaintiffs-Appellees*

473. Hendren & Malone PLLC, *Counsel for Plaintiffs-Appellees*

474. Herman, Matthew J., *Counsel for Plaintiffs-Appellees*

475. Hess, Hess & Daniel, P.C., *Plaintiff-Appellee*

476. Hibbett Retail, Inc., *Plaintiff-Appellee*

477. Hibbett Sporting Goods, Inc., *Plaintiff-Appellee*

478. Hibbett Inc. (Nasdaq: HIBB), *Parent of Plaintiff-Appellee*

479. Highmark Blue Cross and Blue Shield of Delaware, *Affiliate of Defendants-Appellees*

480. Highmark Blue Cross Blue Shield of Delaware, Inc., *Defendant-Appellee*

481. Highmark Blue Cross Blue Shield of West Virginia, *Defendant-Appellee*

482. Highmark Health, *Parent to Defendants-Appellees*

483. Highmark Health Services, d/b/a Highmark Blue Cross Blue Shield of Delaware, Highmark Blue Cross Blue Shield, and Highmark Blue Cross Blue Shield of West Virginia, *Defendant-Appellee*

484. Highmark Inc., *Defendant-Appellee*

485. Highmark West Virgina Inc., *Affiliate of Defendants-Appellees*

486. Highway to Health, Inc., *Affiliate of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

487. Hill, Hill, Carter, Franco, Cole, & Black, PC, *Counsel for Defendants-Appellees*

488. Hill, Angie, *Plaintiff-Appellee*

489. Hill, Ross, *Plaintiff-Appellee*

490. HMO Colorado, *Subsidiary of Defendants-Appellees*

491. HMO Louisiana, Inc., *Affiliate of Defendants-Appellees*

492. HMO Missouri Inc., *Defendant-Appellee*

493. HMO Missouri, Inc. (Anthem Blue Cross and Blue Shield of Missouri), *Defendant-Appellee*

494. HMO Partners, Inc., *Affiliate of Defendants-Appellees*

495. HMSA BSH, Inc., *Affiliate of Defendants-Appellees*

496. HMSA Foundation, Inc., *Affiliate of Defendants-Appellees*

497. Hodge, David J., *Counsel for Plaintiffs-Appellees*

498. Hofmeister, Dan, *Counsel for Defendants-Appellees*

499. Hogan Lovells US LLP, *Counsel for Defendants-Appellees*

500. Hogan, E. Desmond, *Counsel for Defendants-Appellees*

501. Hogewood, Mark M., *Counsel for Defendants-Appellees*

502. Holland & Knight, *Counsel for Defendants-Appellees*

503. Holmes, Janet Brooks, *Counsel for Plaintiffs-Appellees*

504. Holmstead, Zachary D., *Counsel for Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

505.  Holton, John R., *Counsel for Plaintiffs-Appellees*

506.  Holton, Timothy R., *Counsel for Plaintiffs-Appellees*

507.  Home Depot U.S.A., Inc., *Interested Party-Appellant*

508.  Homer Law Firm, PC, *Counsel for Plaintiffs-Appellees*

509.  Hoover, Craig A., *Counsel for Defendants-Appellees*

510.  Horizon Blue Cross and Blue Shield of New Jersey, *Defendant-Appellee*

511.  Horizon Blue Cross Blue Shield of New Jersey, *Defendant-Appellee*

512.  Horizon Casualty Services, Inc., *Affiliate of Defendants-Appellees*

513.  Horizon Healthcare Dental, Inc., *Affiliate of Defendants-Appellees*

514.  Horizon Healthcare of New Jersey, Inc. (which also operates under the name Horizon NJ Health), *Affiliate of Defendants-Appellees*

515.  Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross and BlueShield of New Jersey, *Defendant-Appellee*

516.  Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey, *Defendant-Appellee*

517.  Horizon Insurance Company, *Affiliate of Defendants-Appellees*

518.  Horner, Chelsea L., a.k.a. Chelsea Horner Templeton, *Plaintiff-Appellee.*

519.  Horton, William H., *Counsel for Plaintiffs-Appellees*

520.  Hospital Service Association of Northeastern Pennsylvania d/b/a Blue Cross of Northeastern Pennsylvania, *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

521.  Hospital Service Association of Northeastern Pennsylvania d/b/a Blue Cross of Northeastern Pennsylvania, *Defendant-Appellee*

522.  Hume, Hamish P.M., *Counsel for Plaintiffs-Appellees*

523.  IMA, Inc., *Affiliate of Defendants-Appellees*

524.  Ichter, Davis, *Counsel for Plaintiffs-Appellees*

525.  Independence Blue Cross, LLC, *Parent to Defendants-Appellees*

526.  Independence Health Group Inc., *Parent to Defendants-Appellees*

527.  Independence Hospital Indemnity Plan, Inc., f/k/a Independence Blue Cross, *Defendant-Appellee*

528.  IngenioRx, Inc., *Subsidiary of Defendants-Appellees*

529.  Instil Health Insurance Company, *Affiliate of Defendants-Appellees*

530.  Insua, Nicholas, *Counsel for Defendants-Appellees*

531.  Integrated Services, Inc., *Affiliate of Defendants-Appellees*

532.  International Plan Solutions, LLC, *Affiliate of Defendants-Appellees*

533.  Iron Gate Technology, Inc., *Plaintiff-Appellee*

534.  Ironshore Inc., *Insurer of Defendants-Appellees*

535.  Iron-Starr Excess Agency Ltd., *Insurer of Defendants-Appellees*

536.  Isaacson, William A., *Counsel for Plaintiffs-Appellees*

537.  Jackson, Anthony F., *Counsel for Plaintiff-Appellee*

538.  James Hoyer, P.A., *Plaintiff-Appellee*

539. Jameson, Joel, *Plaintiffs-Appellees*

540. Jenks and Associates, *Counsel for Plaintiffs-Appellees*

541. Jenks III, James K., *Counsel for Plaintiffs-Appellees*

542. Jenner & Block LLP, *Counsel for Defendants-Appellees*

543. Jewelers Trade Shop, *Plaintiff-Appellee*

544. John D. Saxon, P.C., *Counsel for Plaintiffs-Appellees*

545. Johnson, John M., *Counsel for Defendants-Appellees*

546. Johnston, Clint, *Plaintiff-Appellee*

547. Jones & Swartz PLLC, *Counsel for Plaintiffs-Appellees*

548. Jones Ward PLC, *Counsel for Plaintiffs-Appellees*

549. Jones, Bruce C., *Counsel for Plaintiffs-Appellees*

550. Jones, Lawrence, *Counsel for Plaintiffs-Appellees*

551. Jones, Megan, *Counsel for Plaintiffs-Appellees*

552. Jose, Elizabeth, *Counsel for Defendants-Appellees*

553. Kalisky, Alyssa C., *Counsel for Defendants-Appellees*

554. Kapke & Willerth LLC, *Counsel for Plaintiffs-Appellees*

555. Kaplan, Andrew D., *Counsel for Defendants-Appellees*

556. Kappel, Brian P., *Counsel for Defendants-Appellees*

557. Kaufman, R. David, *Counsel for Defendants-Appellees*

558. Kaufman Borgeest & Ryan LLP, *Counsel for Insurer*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

559. Kellner, William E., *Counsel for Defendants-Appellees*

560. Kelso, Trent, *Plaintiff-Appellee*

561. Kennedy, Lauren R., *Counsel for Defendants-Appellees*

562. Kenney, Jeannine M., *Counsel for Plaintiffs-Appellees*

563. Keystone Health Plan Central, Inc., *Affiliate of Defendants-Appellees*

564. Keystone Medical Imaging, LLC, *Affiliate of Defendants-Appellees*

565. Kilene, Jason S., *Counsel for Plaintiffs-Appellees*

566. Kilpatrick Townsend & Stockton LLP, *Counsel for Defendants-Appellees*

567. Kilpela, Jr., Edwin, J., *Counsel for Plaintiffs-Appellees*

568. Kimble, Cavender C., *Counsel for Defendants-Appellees*

569. Kirk, Michael, *Counsel for Plaintiffs-Appellees*

570. Kirkland & Ellis LLP, *Counsel for Defendants-Appellees*

571. Knapp, Scott R., *Counsel for Defendants-Appellees*

572. Knott, Jason M., *Counsel for Plaintiffs-Appellees*

573. Koch, H. James, *Counsel for Defendants-Appellees*

574. Kochanowski, Andrew J., *Counsel for Plaintiffs-Appellees*

575. Korn, David H., *Counsel for Defendants-Appellees*

576. Kravitz, Carl S., *Counsel for Plaintiffs-Appellees*

577. Krieger, Mark, *Plaintiff-Appellee*

578. Kudulis, Johnathan, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

579.  Kudulis, Resisinger, & Price, *Counsel for Plaintiffs-Appellees*

580.  Labauve, Elizabeth Barnett, *Counsel for Defendants-Appellees*

581.  Lambert, Kenneth, *Counsel for Defendants-Appellees*

582.  Langston & Lott, P.A., *Counsel for Plaintiffs-Appellees*

583.  Law Office of Stephen M. Hansen, *Counsel for Plaintiffs-Appellees*

584.  Laytin, P.C., Daniel E., *Counsel for Defendants-Appellees*

585.  Lemmon Law Firm, *Counsel for Plaintiffs-Appellees*

586.  Lemmon, Andrew, *Counsel for Plaintiffs-Appellees*

587.  Levin Papantonio Thomas Mitchell Rafferty & Proctor, P.A., *Counsel for Plaintiffs-Appellees*

588.  Lieberman, Michael W., *Counsel for Defendants-Appellees*

589.  LifeMap Assurance Company, *Subsidiary of Defendants-Appellees*

590.  Life Secure Insurance Company Holdings, *Affiliate of Defendants-Appellees*

591.  Lifetime Healthcare, Inc., *Defendant-Appellee*

592.  Lightfoot Franklin & White LL, *Counsel for Defendants-Appellees*

593.  Liskow & Lewis, *Counsel for Plaintiffs-Appellees*

594.  Lite Depalma Greenberg & Afanador, LLC, *Counsel for Plaintiffs-Appellees*

595.  Little, Jonathan Charles - *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

596.  Lloyd's of London, *Insurer of Defendants-Appellees*

597.  Lockard & Williams Insurance Services, Inc., *Affiliate of Defendants-Appellees*

598.  Lockridge Grindal Nauen P.L.L.P, *Counsel for Plaintiffs-Appellees*

599.  London ACE, *Insurer of Defendants-Appellees*

600.  Lott, Casey Langston, *Counsel for Plaintiffs-Appellees*

601.  Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana, *Defendant-Appellee*

602.  Lovell & Nalley, *Counsel for Plaintiffs-Appellees*

603.  Lowrey, IV, Frank M., *Counsel for Interested Party-Appellant*

604.  Lydian, LLC, *Affiliate of Defendants-Appellees*

605.  Lytle, Joann, *Counsel for Defendants-Appellees*

606.  Macrae, Amy, *Plaintiff-Appellee*

607.  Maier, Jeny M., *Counsel for Defendants-Appellees*

608.  Malatesta, III, John Thomas A., *Counsel for Defendants-Appellees*

609.  Malone, J. Michael, *Counsel for Plaintiffs-Appellees*

610.  Mandel and Mandel, LLP, *Counsel for Plaintiffs-Appellees*

611.  Mann, Jonathan S., *Counsel for Plaintiffs-Appellees*

612.  Marino Law, PLLC, *Counsel for Plaintiffs-Appellees*

613.  Mark W. Wasvery, PC, *Counsel for Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

614. Marshall III, Charles F., *Counsel for Defendants-Appellees*

615. Martin, John D., *Counsel for Defendants-Appellees*

616. Martin, Scott Allen, *Counsel for Plaintiffs-Appellees*

617. Martinez, Jr., Esq., Elio F., *Counsel for Defendants-Appellees*

618. Massachusetts Benefit Administrators, LLC, *Affiliate of Defendants-Appellees*

619. Mathias, John, *Counsel for Defendants-Appellees*

620. Matthew Thornton Health Plan, Inc., *Subsidiary of Defendants-Appellees*

621. Maynard Cooper & Gale PC, *Counsel for Defendants-Appellees*

622. McCafee & Taft, P.C., *Counsel for Interested Party-Appellant*

623. McCallum, Methvin & Terrell, PC, *Counsel for Plaintiffs-Appellees*

624. McCallum, Phillip W., *Counsel for Plaintiffs-Appellees*

625. McCarter & English, LLP, *Counsel for Defendants-Appellees*

626. McDevitt, Larry, *Counsel for Plaintiffs-Appellees*

627. McDonald, Yawanna N., *Counsel for Defendants-Appellees*

628. McDonough, James C., *Counsel for Plaintiffs-Appellees*

629. McDowell, M. Patrick, *Counsel for Defendants-Appellees*

630. McGartland & Borchardt LLP, *Counsel for Plaintiffs-Appellees*

631. McGartland, Michael, *Counsel for Plaintiffs-Appellees*

632. McGartland Law Firm, PLLC, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

633.  McGill, Brian, *Plaintiff-Appellee*

634.  McGill, Rochelle, *Plaintiff-Appellee*

635.  McKane, Mark E., *Counsel for Defendants-Appellees*

636.  McKay Cauthen Settana and Stubley, *Counsel for Plaintiffs-Appellees*

637.  McLean, Ronald H., *Counsel for Defendants-Appellees*

638.  McLeod, Aaron G., *Counsel for Defendants-Appellees*

639.  MCS Holdings, Inc., *Affiliate of Defendants-Appellees*

640.  Means Gillis Law, LLC, *Counsel for Plaintiffs-Appellees*

641.  Medical Helpline, LLC, *Affiliate of Defendants-Appellees*

642.  Medrisk Actuarial Services, LLC, *Affiliate of Defendants-Appellees*

643.  Meierhenry Sargent LLP, *Counsel for Plaintiffs-Appellees*

644.  Menge, Mary G., *Counsel for Defendants-Appellees*

645.  Meridian Resources Company, LLC, *Subsidiary of Defendants-Appellees*

646.  Meriwether, Ellen, *Counsel for Plaintiffs-Appellees*

647.  Methvin, Terrell, Yancy, Stephens & Miller, P.C., *Counsel for Plaintiffs-Appellees*

648.  Methvin, Jr., Robert G., *Counsel for Plaintiffs-Appellees*

649.  Meyers, D. Kent, *Counsel for Defendants-Appellees*

650.  Midwest Benefit Consultants, Inc., *Defendant-Appellee*

651.  Mills, Linda, *Plaintiff-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

652.  Montis, Inc., *Plaintiff-Appellee*

653.  Morris, King & Hodge, *Counsel for Plaintiffs-Appellees*

654.  Morris, Scott A., *Plaintiff-Appellee*

655.  Mosaic Group Services, LLC, *Affiliate of Defendants-Appellees*

656.  Moylan, Daniel Patrick, *Counsel for Plaintiffs-Appellees*

657.  Murphy & Murphy LLC, *Counsel for Plaintiffs-Appellees*

658.  Murphy, Erin E., *Counsel for Defendants-Appellees*

659.  Murphy, Michael L., *Counsel for Plaintiffs-Appellees*

660.  My Care Alabama, Inc., *Affiliate of Defendants-Appellees*

661.  Nalley, John Doyle, *Counsel for Plaintiffs-Appellees*

662.  Naranjo, Michael A., *Counsel for Defendants-Appellees*

663.  Nast, Dianne M., *Counsel for Plaintiffs-Appellees*

664.  NastLaw LLC, *Counsel for Plaintiffs-Appellees*

665.  NDBH Holding Company, LLC, *Affiliate of Defendants-Appellees*

666.  Nelson Mullins Riley & Scarborough LLP, *Counsel for Defendants-Appellees*

667.  Nelson, Christopher, *Counsel for Plaintiffs-Appellees*

668.  Netting, Irma L., *Counsel for Plaintiffs-Appellees*

669.  New Directions Behavioral Health, LLC, *Affiliate of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

670.  Niagara Life and Health Insurance Company, *Affiliate of Defendants-Appellees*

671.  Nix, Jess R., *Counsel for Defendants-Appellees*

672.  Nix, Richard D., *Counsel for Interested Party-Appellant*

673.  NobleHealth, Inc., *Affiliate of Defendants-Appellees*

674.  Nordin, Daniel J., *Counsel for Plaintiffs-Appellees*

675.  Noridian Mutual Insurance Company, d/b/a Blue Cross Blue Shield of North Dakota, *Defendant-Appellee*

676.  Norman, Brian K., *Counsel for Defendants-Appellees*

677.  Nyemaster Goode PC, *Counsel for Defendants-Appellees*

678.  O'Brien, Charles A., *Counsel for Defendants-Appellees*

679.  O'Connell, Sean T., *Counsel for Plaintiffs-Appellees*

680.  Ogletree Deakins Nash Smoak & Stewart PC, *Counsel for Defendants-Appellees*

681.  O'Melveny & Myers LLP, *Counsel for Defendants-Appellees*

682.  OneBeacon Insurance Group (including Atlantic Specialty Insurance Company and Homeland Insurance Company), *Insurer of Defendants-Appellees*

683.  Onlife Health, Inc., *Affiliate of Defendants-Appellees*

684.  Optimum Healthcare, Inc., *Subsidiary of Defendants-Appellees*

685.  PGBA, LLC, *Affiliate of Defendants-Appellees*

686.  Page, Edwin Allen, *Counsel for Interested Party-Appellant*

687.  Palmer, Tim A., *Counsel for Defendants-Appellees*

688.  Palmetto GBA, LLC, *Affiliate of Defendants-Appellees*

689.  Paul Weiss Rifkind Wharton – *Counsel for Plaintiffs-Appellees*

690.  Payne, Joshua K., *Counsel for Defendants-Appellees*

691.  Payton, Gwendolyn C., *Counsel for Defendants-Appellees*

692.  PCS, LLC, *Affiliate of Defendants-Appellees*

693.  Pearce, Bevill, Leesburg, Moore, P.C., *Plaintiff-Appellee*

694.  Pendley, Baudin & Coffin LLP, *Counsel for Plaintiffs-Appellees*

695.  Pendley, Patrick W., *Counsel for Plaintiffs-Appellees*

696.  Penney, Brant, *Counsel for Plaintiffs-Appellees*

697.  Pennington, Michael R., *Counsel for Interested Party-Appellant*

698.  Perlman, Alan J., *Counsel for Defendants-Appellees*

699.  Pete Moore Chevrolet, Inc., *Plaintiff-Appellee*

700.  Peterson, Rebecca, *Counsel for Plaintiffs-Appellees*

701.  Pettus Plumbing & Piping, Inc, *Plaintiff-Appellee*

702.  Pham, Allison N., *Counsel for Defendants-Appellees*

703.  Phillips Lytle LLP, *Counsel for Defendants-Appellees*

704.  Physicians' Service, d/b/a Blue Shield of California, *Defendant-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

705. Piercy, Deborah, *Plaintiff-Appellee*

706. Pioneer Farm Equipment, Inc., *Plaintiff-Appellee*

707. Pittman Dutton Hellums, Bradley and Mann, P.C., *Counsel for Plaintiffs-Appellees*

708. Planned Administrators, Inc., *Affiliate of Defendants-Appellees*

709. Pollack-Avery, Elizabeth, *Counsel for Plaintiffs-Appellees*

710. Preferred Care Services, Inc., *Affiliate of Defendants-Appellees*

711. Premara Blue Cross of Washington, *Defendant-Appellee*

712. Premara, d/b/a Premara Blue Cross Blue Shield of Alaska, *Defendant-Appellee*

713. Premera Blue Cross, d/b/a Premera Blue Cross Blue Shield of Alaska, *Defendant-Appellee*

714. Priester, James L., *Counsel for Defendants-Appellees*

715. Prime Therapeutics, LLC, *Affiliate of Defendants-Appellees*

716. Proctor, Hon. R. David (N.D. Ala.)

717. Provosty & Gankendorff, LLC, *Counsel for Plaintiffs-Appellees*

718. Putnam, Hon. T. Michael (N.D. Ala.)

719. Quinlan, Patrick J., *Counsel for Plaintiffs-Appellees*

720. Quinn, Connor, Weaver, Davies & Ruoco LLP, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

721. Ragsdale, Barry A., *Plaintiffs' Liaison Counsel*

722. Redgrave, Jonathan M., *Counsel for Defendants-Appellees*

723. Redgrave, LLP, *Counsel for Defendants-Appellees*

724. Redgrave, Victoria A., *Counsel for Defendants-Appellees*

725. Reed Smith LLP, *Counsel for Defendants-Appellees*

726. Reeves, Harold S., *Counsel for Plaintiffs-Appellees*

727. Regence BlueCross BlueShield of Oregon, *Defendant-Appellee*

728. 728. Regence BlueCross BlueShield of Utah, *Defendant-Appellee*

729. 729. Regence BlueShield, *Defendant-Appellee*

730. 730. Regence BlueShield of Idaho, Inc., *Defendant-Appellee*

731. Regence Insurance Holding Corporation, *Subsidiary of Defendants-Appellees*

732. Reichard & Escalera, LLC, *Counsel for Defendants-Appellees*

733. Reinhardt, Wendorf & Blanchfield, *Counsel for Plaintiffs-Appellees*

734. Reis, John, *Counsel for Defendants-Appellees*

735. Reuben, Mindee, *Counsel for Plaintiffs-Appellees*

736. Resolution Health, Inc., *Subsidiary of Defendants-Appellees*

737. Rheaume, Jr., Thomas J., *Counsel for Defendants-Appellees*

738. Rhodes IV, C. Harker, *Counsel for Defendants-Appellees*

739. Richie, John Thomas, *Counsel for Interested Party-Appellant*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

740. Rico, Gustavo A. Pabón, *Counsel for Defendants-Appellees*

741. Riebel, Karen Hanson, *Counsel for Plaintiffs-Appellees*

742. RightChoice Managed Care, Inc., *Defendant-Appellee*

743. Riley & Jackson, PC, *Counsel for Defendants-Appellees*

744. Riley, Jr., Robert R., *Counsel for Defendants-Appellees*

745. Riverbend Govt. Benefits Administrator, Inc., *Affiliate of Defendants-Appellees*

746. RiverTrust Solutions, Inc., *Affiliate of Defendants-Appellees*

747. RLI/RSUI, *Insurer of Defendants-Appellees*

748. Roach, Benjamin Patrick, *Counsel for Defendants-Appellees*

749. Robertson, John Robert, *Counsel for Defendants-Appellees*

750. Robinovitch, Hart L., *Counsel for Plaintiffs-Appellees*

751. Robinson, Kenneth J., *Counsel for Plaintiffs-Appellees*

752. Rockforte, Nicholas R., *Counsel for Plaintiffs-Appellees*

753. Rocky Mountain Hospital & Medical Service Inc., d/b/a Anthem Blue Cross Blue Shield of Colorado, *Defendant-Appellee*

754. Rocky Mountain Hospital & Medical Service Inc., d/b/a Anthem Blue Cross Blue Shield of Nevada, *Defendant-Appellee*

755. Rodanast, P.C., *Counsel for Plaintiffs-Appellees*

756. Rodríguez, Rafael Escalera, *Counsel for Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

757.   Rolison Trucking Co., LLC, *Plaintiff-Appellee*

758.   Roman, Tracy A., *Counsel for Defendants-Appellees*

759.   Ross, April N., *Counsel for Defendants-Appellees*

760.   Rouco, Richard, *Counsel for Plaintiffs-Appellees*

761.   Rowe, Stephen A., *Counsel for Defendants-Appellees*

762.   Rutenberg, Alan D., *Counsel for Defendants-Appellees*

763.   Ruzic, Emily Myers, *Counsel for Interested Party-Appellant*

764.   Rx Concepts, Ltd. Co., *Affiliate of Defendants-Appellees*

765.   Saccoccio & Lopez, *Plaintiff-Appellee*

766.   Sadler Electric, *Plaintiff-Appellee*

767.   Saeed & Little, LLP, *Counsel for Plaintiffs-Appellees*

768.   Salomon, Anne, *Counsel for Defendants-Appellees*

769.   Sansbury, Michael T., *Counsel for Defendants-Appellees*

770.   Sargent, Clint, *Counsel for Plaintiffs-Appellees*

771.   Saxon, John, *Counsel for Plaintiffs-Appellees*

772.   Scheller, Kathryn, *Plaintiff-Appellee*

773.   Schmidt, Jr., John G., *Counsel for Defendants-Appellees*

774.   Schneider, Sydney L., *Counsel for Defendants-Appellees*

775.   Schwiep, Paul J., *Counsel for Defendants-Appellees*

776.   Scott & Cain, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

777.  Scott Jr., Thomas S., *Counsel for Plaintiffs-Appellees*

778.  Scott, Lee McArthur, *Counsel for Plaintiffs-Appellees*

779.  SecurityCare of Tennessee, Inc., *Affiliate of Defendants-Appellees*

780.  Self Insured Plans, LLC, *Affiliate of Defendants-Appellees*

781.  Serkland Law Firm, *Counsel for Defendants-Appellees*

782.  Shaheen & Gordon, P.A., *Counsel for Plaintiffs-Appellees*

783.  Shamoun & Norman, LLP, *Counsel for Defendants-Appellees*

784.  Shared Health, Inc., *Affiliate of Defendants-Appellees*

785.  Sharo Law, LLP, *Counsel for Plaintiffs-Appellees*

786.  Sharp Law, LLP

787.  Sharp, Marla S., *Plaintiff-Appellee*

788.  Shaw, Adam R., *Counsel for Plaintiffs-Appellees*

789.  Shearman & Sterling LLP, *Counsel for Defendants-Appellees*

790.  Sheppard, Mullin, Richter & Hampton LLP, *Counsel for Insurer*

791.  Sheridan, Judy, *Plaintiff-Appellee*

792.  Simply Healthcare Plans, Inc., *Subsidiary of Defendants-Appellees*

793.  Sirocco, Inc., *Plaintiff-Appellee*

794.  Slate, Pamela B., *Counsel for Defendants-Appellees*

795.  Small, Daniel, *Counsel for Plaintiffs-Appellees*

796.  Smith, Scott Burnett, *Counsel for Interested Party-Appellant*

797. Smith, Cyril V., *Counsel for Plaintiffs-Appellees*

798. Socios Mayores en Salud Holdings, Inc., d/b/a Triple-S Advantage, *Affiliate of Defendants-Appellees*

799. Sommers Schwartz PC, *Counsel for Plaintiffs-Appellees*

800. Sooy, Kathleen Taylor, *Counsel for Defendants-Appellees*

801. Sompo International, *Insurer of Defendants-Appellees*

802. Southeast Services, Inc., *Subsidiary of Defendants-Appellees*

803. Southern Diversified Business Services, Inc., *Affiliate of Defendants-Appellees*

804. Southern Health Plan, Inc., *Affiliate of Defendants-Appellees*

805. Spenser, Mark D., *Counsel for Interested Party-Appellant*

806. Spotswood Sansom & Sansbury LLC, *Counsel for Defendants-Appellees*

807. Spotswood, Robert K., *Counsel for Defendants-Appellees*

808. Stark, Michael E., *Plaintiff-Appellee*

809. Stecker, Brett, *Counsel for Plaintiffs-Appellees*

810. Stenerson, Todd, *Counsel for Defendants-Appellees*

811. Stetson, Catherine E., *Counsel for Defendants-Appellees*

812. Stokes, Tammy, *Counsel for Plaintiffs-Appellees*

813. Stone & Magnanini LLP, *Counsel for Plaintiffs-Appellees*

814. Stone Law Firm, LLC, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

815. Stone, Andrew M., *Counsel for Plaintiffs-Appellees*

816. Stone, David, *Counsel for Plaintiffs-Appellees*

817. Stoops, Kevin J., *Counsel for Plaintiffs-Appellees*

818. Strauss & Boies LLP, *Counsel for Plaintiffs-Appellees*

819. Strutt, Jennifer, *Counsel for Defendants-Appellees*

820. Sudekum, Michael J., *Counsel for Plaintiffs-Appellees*

821. Swank, Ami, *Counsel for Plaintiffs-Appellees*

822. Swartz, Eric B., *Counsel for Plaintiffs-Appellees*

823. Sweeris, Charles L., *Counsel for Defendants-Appellees*

824. The Sweet Law Firm, PC *Counsel for Plaintiffs-Appellees*

825. Sweet, Benjamin, *Counsel for Plaintiffs-Appellees*

826. Taylor, Jr., Daniel R., *Counsel for Defendants-Appellees*

827. Templeton, Quentin, *Counsel for Plaintiffs-Appellees*

828. Tennessee Health Foundation, Inc., *Affiliate of Defendants-Appellees*

829. Terrell, James M., *Counsel for Plaintiffs-Appellees*

830. Tessellate Holdings, LLC, *Affiliate of Defendants-Appellees*

831. Tessier, Kevin, *Counsel for Defendants-Appellees*

832. The Caring Foundation, *Affiliate of Defendants-Appellees*

833. The Cowan Law Firm, *Counsel for Plaintiffs-Appellees*

834. The Dampier Law Firm PC, *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

835.   The Van Winkle Law Firm, *Counsel for Plaintiffs-Appellees*

836.   The Weiser Law Firm, P.C., *Counsel for Plaintiffs-Appellees*

837.   Thomas Cooper & Co., Inc., *Affiliate of Defendants-Appellees*

838.   Thomas, Nancy, *Plaintiff-Appellee*

839.   Thompson, Charles M., *Counsel for Plaintiffs-Appellees*

840.   Thompson, Jason, *Counsel for Plaintiffs-Appellees*

841.   Thompson, John G., *Plaintiff-Appellee*

842.   Tomazzoli, Lisa, *Plaintiff-Appellee*

843.   Topographic, Inc., *Interested Party-Appellant*

844.   Total Dental Administrators Health Plan, Inc., *Affiliate of Defendants-Appellees*

845.   Total Dental Administrators of Utah, Inc., *Affiliate of Defendants-Appellees*

846.   Total Dental Administrators, Inc., *Affiliate of Defendants-Appellees*

847.   TrailBlazer Health Enterprises, LLC, *Affiliate of Defendants-Appellees*

848.   The Travelers Companies, Inc. (TRV), *Insurer of Defendants-Appellees*

849.   Tri-West, *Affiliate of Defendants-Appellees*

850.   Tricenturion, Inc., *Affiliate of Defendants-Appellees*

851.   Trinnovate Ventures, Inc., *Affiliate of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

852. Triple-S Blue, Inc., d/b/a BlueCross BlueShield Costa Rica, *Affiliate of Defendants-Appellees*

853. Triple-S Management Corporation, *Parent to Defendants-Appellees*

854. Triple-S Propiedad, Inc., *Affiliate of Defendants-Appellees*

855. Triple-S Salud, *Defendant-Appellee*

856. Triple-S Salud, Inc., *Defendant-Appellee*

857. Triple-S Vida, Inc., *Affiliate of Defendants-Appellees*

858. Turner, Ashley, *Counsel for Defendants-Appellees*

859. Tyner, Star Mishkel, *Counsel for Plaintiffs-Appellees*

860. UNICARE Health Plan of West Virginia, Inc., *Subsidiary of Defendants-Appellees*

861. UniCare Life & Health Insurance Company, *Subsidiary of Defendants-Appellees*

862. UNICARE National Services, Inc., *Subsidiary of Defendants-Appellees*

863. UniCare Specialty Services, Inc., *Subsidiary of Defendants-Appellees*

864. Umatilla Properties, LLC (Parent Corp of Recovery Village at Umatilla, LLC), *Plaintiff-Appellee*

865. USAble Mutual Insurance Company, d/b/a Arkansas Blue Cross and Blue Shield, *Defendant-Appellee*

866. UTIC Insurance Company, *Affiliate of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

867.  Utsey, Jeff, *Counsel for Plaintiffs-Appellees*

868.  Utsey Law Firm, *Counsel for Plaintiff-Appellee*

869.  Van Winkle Law Firm, *Counsel for Plaintiffs-Appellees*

870.  Van Zant, Jennifer K., *Counsel for Defendants-Appellees*

871.  Vardas, Angel (Foster), *Plaintiff-Appellee*

872.  Varney, Christine, *Counsel for Defendants-Appellees*

873.  Vaughan Pools, Inc., *Plaintiff-Appellee*

874.  Vermont Health Plan LLC, *Affiliate of Defendants-Appellees*

875.  VHP Insurance Solutions, LLC, *Affiliate of Defendants-Appellees*

876.  Vibra Health Plan Holdings, LLC, *Affiliate of Defendants-Appellees*

877.  Vibra Health Plan, Inc., *Affiliate of Defendants-Appellees*

878.  Visiant Holdings Inc., *Affiliate of Defendants-Appellees*

879.  Voegele, Jonathan R., *Counsel for Plaintiffs-Appellees*

880.  Volunteer State Health Plan, Inc., *Affiliate of Defendants-Appellees*

881.  Wallace, Jordan, Ratliff & Brandt, LLC, *Counsel for Defendants-Appellees*

882.  Walsh, Stephen A., *Counsel for Defendants-Appellees*

883.  Wasvary, Mark K., *Counsel for Plaintiffs-Appellees*

884.  Watkins, Charles R, *Counsel for Plaintiffs-Appellees*

885.  Watts, Brett, *Plaintiff-Appellee*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

886. Weiser, Robert, *Counsel for Plaintiffs-Appellees*

887. Weiser Law Firm, P.C., *Counsel for Plaintiffs-Appellees*

888. Wellmark Blue Cross and Blue Shield of Iowa, *Defendant-Appellee*

889. Wellmark Blue Cross and Blue Shield of South Dakota, *Defendant-Appellee*

890. Wellmark Health Plan of Iowa, Inc., *Defendant-Appellee*

891. Wellmark Holdings, Inc., *Defendant-Appellee*

892. Wellmark Inc. d/b/a Wellmark Blue Cross and Blue Shield of Iowa and Wellmark Health Plan of Iowa, Inc., *Defendant-Appellee*

893. Wellmark of South Dakota, Inc. d/b/a Wellmark Blue Cross and Blue Shield of South Dakota, *Defendant-Appellee*

894. Wellmark Synergy Health, Inc., *Affiliate of Defendants-Appellees*

895. Wellmark Value Health Plan, Inc., *Affiliate of Defendants-Appellees*

896. Wellmark, Inc. d/b/a Blue Cross and Blue Shield of Iowa, *Defendant-Appellee*

897. Wellmark, Inc. d/b/a Blue Cross and Blue Shield of Iowa and Wellmark Blue Cross Blue Shield of South Dakota, *Defendant-Appellee*

898. WellPoint California Services, Inc., *Subsidiary of Defendants-Appellees*

899. WellPoint Dental Services, Inc., Subsidiary of Defendants-Appellees

900. WellPoint Holding Corp., *Subsidiary of Defendants-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

901. WellPoint, Inc., *Defendant-Appellee*

902. WellPoint Information Technology Services, Inc., *Subsidiary of Defendants-Appellees*

903. West, Kimberly R., *Counsel for Defendants-Appellees*

904. Whitfield Bryson & Mason, LLP, *Counsel for Plaintiffs-Appellees*

905. Wilkerson, David M., *Counsel for Plaintiffs-Appellees*

906. Williams, Jennifer, *Counsel for Plaintiffs-Appellees*

907. Williams, Jr., James T., *Counsel for Defendants-Appellees*

908. Wisconsin Collaborative Insurance Company, *Subsidiary of Defendants-Appellees*

909. Witt, P.C., Helen E., *Counsel for Defendants-Appellees*

910. Wolfla, Paul A., *Counsel for Defendants-Appellees*

911. Woodward Straits Insurance Company, *Affiliate of Defendants-Appellees*

912. Wright, Greg, *Counsel for Plaintiffs-Appellees*

913. Wylie, John R., *Counsel for Plaintiffs-Appellees*

914. XL Group Ltd., *Insurer of Defendants-Appellees*

915. XL Catlin, *Insurer of Defendants-Appellees*

916. Yancey, Perry Michael, *Counsel for Plaintiffs-Appellees*

917. Yinger, Emily M., *Counsel for Defendants-Appellees*

918. Young, Lance C., *Counsel for Plaintiffs-Appellees*

No. 22-13051, *In re: Blue Cross Blue Shield Antitrust Litigation*

919. Yuhl Carr, LLP *Counsel for Plaintiffs-Appellees*

920. Zeiger, P.C., Jeffrey J., *Counsel for Defendants-Appellees*

921. Zimmerman Reed, PLLP, *Counsel for Plaintiffs-Appellees*

922. Zimmerman, Genevieve M., *Counsel for Plaintiffs-Appellees*

923. Zolner, Erica B., *Counsel for Defendants-Appellees*

924. Zott, P.C., David J., *Counsel for Defendants-Appellees*

925. Zuckerman Spaeder LLP, *Counsel for Plaintiffs-Appellees*

926. Zuger, Peter W., *Counsel for Defendants-Appellees*

927. Zurich Insurance Group Ltd., *Insurer of Defendants-Appellees*

## Corporate Disclosure.

Pursuant to Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1-1, 26.1-2, and 26.1-3, Appellant Behenna is a person, not a non-governmental corporation.

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

## Certificate for Rehearing En Banc

Appellant David G. Behenna is not required to provide a statement of counsel for this Petition.  He is proceeding *pro se*.  He is not represented by counsel.  Eleventh Circuit Rule 35-5(c).

s/ David G. Behenna

David G. Behenna

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
 CORPORATE DISCLOSURE STATEMENT ................................ C-1

CERTIFICATE FOR REHEARING EN BANC .................................... i

TABLE OF AUTHORITIES ................................................. iii

ISSUES MERITING PANEL AND EN BANC RECONSIDERATION ............... 1

INTRODUCTION ............................................... 1

COURSE OF PROCEEDINGS AND DISPOSITION ........................... 2

STATEMENT OF FACTS ..................................................... 3

ARGUMENT ............................................................. 4

   I.    The Panel's Decision Conflicts with Supreme Court
       and Eleventh Circuit Precedent, Warranting En Banc
       Review ...................................................... 4

      A. Supreme Court precedent allows appellants to
         "waive positions and issues on appeal" ……………………….…….. 4

      B. Section 16's statutory fee-shifting mandate survived
         settlement based on statute and precedent …………………….…... 7

      C. Panel's opinion regarding calculation of common fund fee
         conflicts with Supreme Court and this Court's precedent ………… 12

      D. Empirical evidence contradicts *Faught* and requires
         material downward revision from bench mark …………………… 14

   II.    The Attorneys' Fee Issue Is Exceptionally Important ........................... 18

CONCLUSION ..................................................... 19

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

# TABLE OF CITATIONS

<u>Cases</u>

*Access Now, Inc. v. Southwest Airlines Co.,*
  385 F.3d 1324 (11th Cir. 2004) …………………………….…………..………. 6

*ACLU of Ga. v. Barnes*,
  168 F.3d 423 (11th Cir. 1999) ………………………………………………… 17

*Alyeska Pipeline Service Co. v. Wilderness Society*,
  421 U.S. 260 (1975) ……………....……………………………….…………… 5,11

*Am. Disability Ass'n v. Chmielarz*,
  289 F.3d 1315 (11th Cir. 2002) ………………………………...…………..…. 11

*Barnhart v. Walton*,
  535 U.S. 212, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002) ………………....….. 9

*Blum v. Stenson*,
  465 U.S. 886 (1984) ……………………………………………………….….. 10

*Boeing v Van Gemert*,
  444 U.S. 472 (1980) ……………………………………………..……. 2, 12-14

*Botts v. ASARCO LLC*,
  135 S.Ct. 2158, 192 L. Ed. 2d 208 (2015) ..…………………….……….. 1,7

*Brytus v. Spang Company*,
  203 F.3d 238 (3d Cir. 2000) ……………………………………….……….. 8

*Buckhannon Bd. and Care Home, Inc. v. West Virginia*
  *Dept. of Health and Human Res*., 532 U.S. 598 (2001).. …………………..  10,13

*Camden I Condo. Ass'n, Inc. v. Dunkle,*
  946 F.2d 768 (11th Cir. 1991) ................................................. 12,14-16

*Commissioner v. Jean*,
  496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) ………………………..  2

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

*Farrar v Hobby*,
  506 US 103 (1992) …………………............………………..………......… 10,16

*Faught v. American Home Shield Corp*,
  668 F.3d 1233 (11th Cir. 2011) …………………………………....… 14,15

*Foster v. United States*,
  303 U.S. 118 (1938) …………………………………………..………… 9

*Hanrahan v. Hampton*,
  446 U.S. 754 (1980) ……………………………………………..……... 13

*Huang v. Equifax Inc.*
  (*In re Equifax Inc. Customer Data Sec. Breach Litig.*)
  999 F.3d 1247 (11th Cir. 2021) ……………………………………..… 7

*Jackson v. Commissioner of Social Security*,
  601 F.3d 1268 (11th Cir. 2010) ……………………………………….. 9

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) .................................................... 15,16,18

*Johnson v. NPAS Sols.*,
  975 F.3d 1244 (11th Cir. 2020) ……………………………..………… 13

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) ……………..…………. 12

*Maher v. Gagne*,
  448 U.S. 122 (1980) ……………………….............……………….......... 10

*Murphy v. Smith*,
  138 S.Ct. 784, (2018) ………………………………………………..... 11

*Ne. Eng'rs Fed. Credit Union v. Home Depot, Inc.*
  *(In re Home Depot Inc.),* 931 F.3d 1065 (11th Cir. 2019) ……………….. 1,5-7,17

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) .......................................................................... 12

iv

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

*Riverside v. Rivera*,
  477 U.S. 561 (1986) …………………………………………………….. 16

*Sec'y, U.S. Dep't of Labor v. Preston,*
  873 F.3d 877 (11th Cir. 2017) …………………………………….….... 5

*Yee v. City of Escondido*,
  503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) ……………....… 1,5

Statutes

15 U.S.C. §§ 1 and 3 …..……………………………..…………………..… 3

15 U.S.C. § 15 …………………………………………....….. 3,4,5,17

15 U.S.C. § 26 …………………………………………………... *passim*

29 U.S.C. § 1132 …..……………………………………….…….. 8

42 U.S.C. § 1988 …………………………………………….…….. 13

Legislation

Hart-Scott-Rodino Antitrust Improvements Act of 1976 …………..……... 2,6,11,18

Congressional Reports

H.R. Rep. No. 94-499, 94th Cong., 1st Sess., (1976) ………….…………. 6,9,11

Sen. R. 94-803, 94th Cong., 2d Sess., Parts I & II (1976) ……..……... 9,10,11,18

Other Authorities

Herbert B. Newberg, *Attorney Fee Awards* (1986) ……..……….…………… 15

*Court Awarded Attorney Fees,* Report of the Third Circuit Task Force,
  108 F.R.D. 237 (1985) …………………………………………….…… 15

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

## ISSUES MERITING PANEL AND EN BANC RECONSIDERATION

Whether the panel's opinion violates Supreme Court and Circuit precedent (1) allowing appellants to waive issues and make new arguments on appeal and (2) requiring the lodestar analysis to be used to determine a reasonable attorneys' fee when plaintiffs substantially prevail on 15 U.S.C. § 26 claims. Also, (3) whether the panel's finding conflicts with Circuit precedent as to the determination of a reasonable common fund percentage fee.

## INTRODUCTION

Appellant Behenna did not forfeit the right to raise any of the four issues presented in his principal appeal brief.

The panel's opinion conflicts with *Ne. Eng'rs Fed. Credit Union v. Home Depot, Inc. (In re: Home Depot),* 931 F.3d 1065, 1086 (11th Cir. 2019) ("If an issue is 'properly presented, a party can make any argument in support of that [issue]; parties are not limited to the precise arguments they made below." quoting *Yee v. City of Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)).

The panel's claim that Section 16 fee-shifting requirements are discharged by common fund doctrine conflicts with *Botts v. ASARCO LLC*, 135 S.Ct. 2158, 2164 (2015) ("… there could be little dispute that this provision – which mentions

1

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

'fees,' a 'prevailing party,' and a 'civil action' – is a 'fee-shifting statut[e]' that trumps the American Rule, *id*. [*Commissioner v. Jean*, 496 U.S. 154], at 161, 110 S.Ct. 2316, [110 L.Ed.2d 134 (1990)].")  It also conflicts with Congressional intent (Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act")), Supreme Court precedent (statutory interpretation), and this Court's precedent (fee-shifting statutes).

The panel failed to address Appellant Behenna's issue regarding Blue Cross' $75 million fee-shifting payment to plaintiffs' counsel before the (b)(2) and (b)(3) classes received the settlement benefits.  That payment provides factual evidence contrary to the argument this case is a pure common fund case.  The payment violated common fund doctrine tenets set forth in *Boeing v Van Gemert*, 444 U.S. 472, 478-479 (1980).

## COURSE OF PROCEEDINGS AND DISPOSITION

This litigation involves the consolidation of a number of actions filed by health insurer subscribers against the Blue Cross and Blue Shield Association and its member plans (collectively, "Blue Cross").  The plaintiffs brought their claims under alleged violations of federal antitrust statutes.  Plaintiffs alleged Blue Cross entered into unlawful agreements that restrained competition in the markets for

selling health insurance and the administration of commercial health benefit products. Op. 4.

On October 16, 2020, the parties entered into a settlement agreement. D-2931/p.5. On November 30, 2020, the district court preliminarily approved the class settlement. *Id.* Appellant Behenna objected to the proposed attorneys' fee, among other reasons, on the basis plaintiffs brought their claims pursuant to fee-shifting statutes requiring application of the lodestar methodology to determine reasonableness. D-2812-20/Ex.13. The district court approved the settlement. It entered separate orders for settlement (D-2931) and for attorneys' fees (D-2932), overruling Appellant Behenna's objections. The panel affirmed.

## STATEMENT OF FACTS

Plaintiffs brought antitrust claims under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, and for alleged violations of §§1, 2 and 3 of the Sherman Act, 15 U.S.C. §§ 1-3 to obtain injunctive relief and recover treble damages and costs of suit, including reasonable attorneys' fees. D-2616/¶13.

The Section 16 injunctive relief claims were settled in exchange for injunctive relief consisting of changes in Blue Cross' business practices that are projected to promote greater competition among and between the Blue Cross

3

entities.  D-2610-2/¶¶10-21.  The Section 4 claims were settled for $2.67 billion cash.  D-2610-2/¶22.

Among the claims released, Blue Cross was released from paying plaintiffs' attorneys' fees.  D-2610-2/¶1(uuu);¶28g.  The dollar value of the Section 16 lodestar attorneys' fees released by plaintiffs was not disclosed in the settlement agreement or in other court filings.

The settlement agreement required Blue Cross to pay plaintiffs' counsel $75 million as a "partial award of attorneys' fees and expenses" within 31 days of preliminary approval of settlement.  D-2610-2/¶28d.  The settlement agreement and moving papers were silent as to the legal precedent for fee-shifting $75 million before effectiveness of the settlement and before the classes received any benefits.

## ARGUMENT

### I.    The Panel's Decision Conflicts with Supreme Court and Circuit Precedent, Warranting En Banc Review

#### A. Supreme Court precedent allows appellants to "waive positions and issues on appeal"

Appellant Behenna respectfully disagrees with the panel's opinion that he "forfeited the bifurcated analysis issue."  Op. 39-40.  The issue in question is not "bifurcated analysis," but whether Appellant Behenna raised in his objections that the lodestar analysis was required for plaintiff's Section 16 injunctive relief claims.

4

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

He met that burden. He objected that the lodestar methodology should apply to both Section 16 ("Injunctive relief warrants a lodestar") and Section 4 claims. D-2812-20/Ex.13,pp.4-5. He recognized, "Plaintiffs assert claims under the Clayton Act, 15 U.S.C. §§ 15 and 26, …" and "The Clayton Act is a fee-shifting statute." *Id.* at p.2.

He appealed the district court's failure to undertake a lodestar fee analysis for the Section 16 claims. He did *not* appeal the district court's overruling of his objection that the lodestar analysis should have applied to the Section 4 common fund. The mandatory fee-shifting provisions of Section 4 were not triggered. *Alyeska Pipeline Svc. Co. v. Wilderness Soc'y,* 421 U.S. 240, 260-261 (1975).

The "bifurcated analysis" Appellant Behenna raises in his appeal briefs was not raised the first time on appeal. It is the natural outcome of Appellant Behenna's objecting to fee calculations for two fee-shifting statutes, appealing one issue and not appealing the district court's common fund treatment for the other.

Appellant Behenna is allowed to waive the Section 4 lodestar issue. *Yee v. City of Escondido*, 503 U.S. at 534; see also *Sec'y, U.S. Dep't of Labor v. Preston*, 873 F.3d 877, 883 n.5 ("Parties can most assuredly waive positions and issues on appeal, [] …. Offering a new argument or case citation in support of a position advanced in the district court is permissible—and often advisable." (citation omitted)). *In re Home Depot Inc.*, 931 F.3d at 1086

5

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

In *In re Home Depot Inc.*, this Court allowed Home Depot to make a "new argument … based on a different line of precedents …" that was "inconsistent with the old argument, …" *Id.* Appellant Behenna objected (fee-shifting lodestar method applies to Section 16 & 4 claims), narrowed the issue to Section 16 claims, then applied new argument and additional precedents in his appeal briefs that might be considered inconsistent with his initial position on the issue. Appellant Behenna did not bring to this Court "an entirely new theory on appeal – one never presented to or considered by the trial court." *Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir. 2004). Appellant Behenna believes "it involves a question of pure law, …" *Id.* at 1332.

If this Court finds that Appellant Behenna did not properly preserve for appeal the Section 16 fee-shifting issue, he requests the Court grant an exemption. The Section 16 fee-shifting issue presents questions of "significant public concern." *Id.* at 1332. In enacting the HSR Act, which amended Section 16 by adding its fee-shifting provision, Congress found the amendment to add mandatory fee-shifting fulfilled a "strong public policy." H.R. Rep. No. 94-499, 94th Cong., 1st Sess., p. 19 (1976)

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

**B. Section 16's statutory fee-shifting mandate survived settlement based on statutory interpretation and precedent**

The panel's opinion that Section 16's fee-shifting principles were discharged stands in contrast to the plain meaning of Section 16, Congressional intent, Supreme Court precedent, and this Court's precedent.  The common fund doctrine does not override the calculation of reasonable attorneys' fees based on Section 16's mandatory fee-shifting principles.  Fee-shifting statutes are superior to the American Rule.  *Botts v. ASARCO LLC*, 135 S.Ct. at 2164.

Two of the panel's citations do not support its opinion.  The panel stated the Section 16 statutory fee was discharged by the creation of a fund , "… our precedents make clear that percentage-of-fund methodology should be used to determine the reasonableness of attorneys' fees.  (cites omitted)."  Op. 41.  The panel cited *Huang v. Equifax Inc.* (*In re Equifax Inc. Customer Data Sec. Breach Litig.*) 999 F.3d 1247 (11th Cir. 2021) and *In re Home Depot*.  Op. 40.

The panel's citation, "is of no consequence," from *In re Equifax*, does not apply to this case.  The *In re Equifax* district court dismissed prior to settlement the class's claims arising from federal fee-shifting statutes.

> "n.24 That this case at one point included a claim under a fee-shifting statute (the Fair Credit Reporting Act) *is of no consequence*.  For one thing, the District Court dismissed that claim before the parties settled this litigation."  (emphasis added).  *In re Equifax*, 999 F.3d at 1279 n. 24.

7

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

The citation does not apply because, in Blue Cross, the Section 16 claims survived settlement: plaintiffs substantially prevailed on them.

The panel's *Brytus* citation, "… the basis for the statutory fee has been discharged …" is not applicable for statutory reasons. *Brytus v. Spang Company*, 203 F.3d 238, 246 (3d Cir. 2000). Plaintiffs' claims in *Brytus* were based on an ERISA statute that grants to district courts *discretion* to apply attorneys' fees pursuant to fee-shifting principles. 29 U.S.C. § 1132(g)(1). Section 16 *mandates* a district court ("shall award") to calculate reasonable attorneys' fees. 15 U.S.C. §26.

Section 16 required the district court to calculate plaintiffs' counsels' lodestar for its Section 16 efforts, separate and apart from determining a reasonable percentage-of-fund fee. The statute's fee-shifting provision states,

> "In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff." 15 U.S.C. § 26.

Blue Cross agreed to injunctive relief provisions and paid $2.67 billion to gain a release from claims and liabilities, including plaintiffs' attorneys' fees. That release released Blue Cross from any obligation to pay plaintiffs' counsels' fees and expenses. D-2610-2/¶1(uuu);¶28g. The Section 16 statute contains no

8

language allowing the district court *discretionary* authority whether to calculate a reasonable attorneys' fee for Section 16 claims.

The statute's language is plain for a reason. Congress added Section 16's mandatory fee-shifting requirement so substantially prevailing plaintiffs would not have to personally pay attorneys' fees and other expenses. H.R. Rep. No. 94-499, p. 20. The amendment included all costs of suit because it was "intended to make substantially prevailing plaintiffs whole, …" Sen. R. 94-803, 94th Cong., 2d Sess., Part I, p. 38 (1976).

The panel's opinion runs counter to Congress' intent. *Foster v. United States*, 303 U.S. 118, 120 (1938) ("[Courts] are required to construe laws in harmony with the legislative intent and seek to carry our legislative purpose.") This Court requires district courts to abide by the plain language of statutes. "[I]f the statute speaks clearly to the precise question at issue, we must give effect to the unambiguously expressed intent of Congress." *Jackson v. Commissioner of Social Security*, 601 F.3d 1268, 1271 (11th Cir. 2010) (quoting *Barnhart v. Walton*, 535 U.S. 212, 217-18, 122 S.Ct. 1265, 1269, 152 L.Ed.2d 330 (2002)).

Plaintiffs are far from being made "whole." To the contrary. "Discharging" the district court's mandate to calculate Section 16 costs of suit allows plaintiffs'

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

counsel to realize a windfall fee.[1]   Plaintiffs' counsel's fee application seeks 23.47% of the (b)(3) class's fund.  D-2931/IV.I.2; D-2932/¶5   That fund includes the (b)(2) class's Section 16 lodestar fee and expenses.  That is a windfall fee-on-fee for plaintiffs' counsel.  *Blum v. Stenson*, 465 U.S. 886, 893-894 (1984), ("These cases have resulted in fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys.  S. Rep. No. 94-1011, p. 6 (1976)")

Plaintiffs substantially prevailed on their Section 16 claims.  Statutory fee-shifting mandates survive non-monetary settlements in which plaintiffs achieve a "judicially sanctioned change in the legal relationship of the parties."  *Buckhannon Board Care Home v. West Va. D.H.H.R*, 532 U.S. 598, 603-604 (2001).   The district court found the injunctive relief benefits to be "truly exceptional."[2]  The changes in business practices will "materially alter the legal relationship" between Blue Cross and the (b)(2) class members and will "directly benefit[] the plaintiff[s]."  *Farrar v Hobby*, 506 US 103, 111-112 (1992).  That plaintiffs "prevailed through a settlement rather than through litigation does not preclude"

---

[1]  Appellant Behenna did not raise the "windfall" issue in his objections.  He raises it, here, to show it conflicts with Congressional intent.

[2]  "As significant as the monetary amount of $2.67 billion is, the truly exceptional aspect of this settlement is the structural relief agreed upon."  D-2931/¶III.B.5.(a).p.40

them from claiming attorney's fees as a prevailing party. *Maher v. Gagne,* 448 U.S. 122, 123 (1980).

Settlement agreements that contain jurisdictional retention provisions are the functional equivalent of a consent decree and, thus, serve as the basis for an attorneys' fee award. *Am. Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1321 (11th Cir. 2002). The district court retained jurisdiction to enforce the settlement agreement. D-2931/¶24,p.89.

Section 16's "shall award" clause mandates district courts to calculate a reasonable fee based on Section 16 litigation lodestar and expenses. The Supreme Court treated "*shall recover*" as a court's mandatory duty to award a reasonable attorney's fee. *Alyeska,* 421 U.S. at 261. Congress took notice of *Alyeska* and the Supreme Court's finding that, "Federal courts have no power to award attorneys' fees in the absence of specific statutory authority." H.R. Rep. No. 94-499, p. 19. Congress proceeded to pass the HSR Act. Congress added to Section 16 its fee-shifting provision, including the mandatory "shall award" clause. Sen. R. 94-803, Part I, p. 37. Senators treated "shall" as mandatory, "Provision of mandatory legal fees in private injunction actions can only foment more antitrust litigation." Sen. R. 94-803, Part II, p. 172.

"Shall" continues to connote non-discretionary action. *Murphy v. Smith*, 138 S.Ct. 784, 787 (2018). ("First, the word 'shall' usually creates a mandate, not a

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

liberty, so the verb phrase "shall be applied" tells us that the district court has some nondiscretionary duty to perform. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) (cite omitted)").

The lodestar fee is presumed to be reasonable. The panel's opinion regarding reasonable Section 16 fees conflicts with Supreme Court and this Court's precedents, "there is a 'strong presumption' that the lodestar figure is reasonable," in statutory fee-shifting cases. *Perdue v. Kenny A.,* 559 U.S. 542, 553-554 (2010). *See also Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards.")

### C. Panel's opinion regarding calculation of common fund fee conflicts with Supreme Court and this Court's precedent

The panel's finding, "the district court also correctly applied the percentage-of-fund doctrine" (Op. 41) conflicts squarely with the Supreme Court's findings in *Van Gemert,* 444 U.S. at 472. And it conflicts with this Court's requirements for determining reasonable fees in common fund cases. *Camden I*, 946 F.2d at 768.

12

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

Blue Cross's $75 million fee-shifting payment to plaintiffs' counsel within 31 days of preliminary approval of settlement[3] deflates the argument this was purely a common fund case. It ran afoul of *Van Gemert*, 444 U.S. at 478 ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." (cites omitted)). Blue Cross's payment occurred before it funded the settlement. The (b)(3) class could not make the payment from the fund because Blue Cross had not deposited $2.67 billion in the fund! *Id.*

Blue Cross paid plaintiffs' counsel before the (b)(2) class had substantially prevailed on their Section 16 injunctive relief claims. The district court had not granted final approval and the settlement is not yet final. That conflicts with *Buckhannon Board Care Home v. West Va. D.H.H.R*, 532 U.S. 598, 603 (2001) ("… 'Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his [§ 1988] claims.' ") (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (per curiam)).

The district court abused its discretion when it failed to follow the plain language of Rule 23(h) in approving the $75 million payment.[4] *Johnson vs NPAS*

---

[3] D-2610-2/¶28d.

[4] Appellant Behenna did not raise in his objections the Rule 23(h) abuse of discretion as a separate issue. He raises it, here, as additional support to show the percentage-of-fund doctrine was not applied correctly.

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

*Sols.,* 975 F.3d 1244, 1252 (11th Cir. 2020). ("The plain-language reading of Rule 23(h) ensures … a fee petition that has been tested by the adversarial process.") Notice of the $75 million payment was not served on the classes thereby depriving class members an opportunity to object to the fee-shifting payment prior to the classes receiving any settlement benefits.

The panel overlooked the district court's improper inclusion of the non-monetary injunctive relief benefit as an important factor in approving the 23.47% common fund fee. D-2931/IV.I.2.(a),p.71 and D-2931/IV.I.2.(i),p.72. The settlement's injunctive relief benefits provided no contribution to a "lump sum judgment." *Van Gemert*, 444 U.S. at 479 ("The criteria for application of the doctrine are satisfied when … each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf.")

### D. Empirical evidence contradicts *Faught* and requires material downward revision from bench mark

The panel cited *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) for the proposition that fee awards between 20% and 25% of the

fund are deemed "presumptively reasonable." Op.41. *Camden I* did not rubber

stamp common fund fees for an automatic 25% percent-of-fund award[5],

> "There is no hard and fast rule mandating a certain percentage of a
> common fund which may reasonably be awarded as a fee because the
> amount of any fee must be determined upon the facts of each case.
> (cite omitted)" *Camden I*, 946 F.2d at 774.

The bench mark is subject to adjustment based on "individual circumstances of

each case." *Id.* at 775. "The factors which will impact upon the appropriate

percentage to be awarded as a fee in any particular case will undoubtedly vary." *Id.*

*Camden I* directed district courts to apply the 12 *Johnson* factors[6] to determine

reasonable percentage-of-fund fees. *Id.*

    For two critical factors, the district court failed to "explain how each

*Johnson* factor affected its selection of the percentage of the fund awarded as

fees." *Id.* With respect to "Awards in similar cases*,"* the district court ignored

empirical evidence submitted by plaintiff's fee expert that **7.70%** is the median

percentage fee in common fund cases of at least $1 billion. D-2733-4/¶18, Table 1.

*Johnson*, 488 F.2d at 719. ("The reasonableness of a fee may also be considered in

the light of awards made in similar litigation *within* and *without* the court's

circuit.") (emphasis added*). Id.*

---

[5] *Faught*'s legal conclusions regarding this Circuit's bench mark percentage fee
awards for common fund cases rely upon *Camden I*. *Faught*, 668 F.3d at 1242-43.
[6] *Johnson v. Georgia Highway Express*, Inc., 488 F.2d 714, 717-719 (5th Cir.
1974).

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

The empirical evidence eviscerates the argument *Faught*'s "presumptively reasonable" 25% (or something close) would be reasonable for this $2.67 billion settlement.    Based on published research[7], this Court essentially adopted the factor, "Awards in similar cases," as the cornerstone for this circuit's *starting* benchmark fee of 25% for common fund cases.

Second, the panel overlooked the district court's failure to explain in its analysis of the *Johnson* factor, "The amount involved and the results obtained," how the (b)(3) damage class's very low, single digit recoveries (7.4 cents on the claim dollar) supported a 23.47% percentage fee. *Johnson*, 488 F.2d at 718. *Camden I* required an analysis for each of the *Johnson* factors. *Camden I*, 946 F.2d at 755.

Recoveries relative to claims is central to determining a reasonable attorneys' fee. "Where recovery of private damages is the purpose of … [ ] litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114-115 (1992) (quoting *Riverside v. Rivera*, 477 U.S. 561, 585 (1986).

---

[7] Herbert B. Newberg, *Attorney Fee Awards* (1986); and *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, Oct. 8, 1985, 108 F.R.D. 237 (1985). *Camden I,* 946 F.2d at 774.

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

Last, the panel overlooked the district court's abuse of discretion with respect to its lodestar multiplier mathematical error. The district court applied an incorrectly calculated lodestar multiplier in determining the requested attorneys' fee was reasonable. "An abuse of discretion occurs if the judge … bases an award upon findings of fact that are clearly erroneous." *In re Home Depot*, 931 F.3d at 1078 (quoting *ACLU of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quotation omitted).)

The lodestar multiplier cross-check "ensures that the fee produced by the chosen method is in the ballpark of an appropriate fee." *In re Home Depot,* 931 F.3d at 1091. The district court opined the lodestar multiplier statistic demonstrated the requested attorneys' fees were reasonable compared to other "similarly complex mega-fund" settlements. D-2931/IV.I.2.(k),p.73, and D-2932/¶5.(j.). That finding was "clearly erroneous."[8]

---

[8] The lodestar multiplier is calculated by dividing the requested common fund fee ($626,583,372) (D-2932/Intro.) (numerator) by the lodestar generated by Section 4 litigation (amount not disclosed) (denominator). Instead, the district court included in the denominator the lodestar fee for both Section 4 & 16 claim litigation ($194,226,322). D-2932/¶5.(d.) That caused the advertised lodestar multiplier of 3.23 times (D-2931/IV.I.2.k.,p.73) to be substantially understated and "clearly erroneous": Plaintiffs' counsel disclosed that up to three-quarters of the total lodestar could be related to pursuit of the Section16 injunctive relief claims. D-2733-1/p.43. Removing the Section 16 lodestar reduces the denominator by up to three-quarters (75%). That further dilutes the district court's finding 23.47% was a reasonable percentage fee.

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

Professor Fitzpatrick's objective empirical data shows that the median lodestar multiplier is 2.6 times in settlements of at least $1.0 billion.  D-2733-4/¶18, Table 1.

## II.    The Attorneys' Fee Issue is Exceptionally Important

Congress left no doubt in passing the HSR Act that the Section 16 fee-shifting amendment was imperative to public policy and the "private attorney general" enforcement of antitrust laws,

> "Section 304 is the Congressional response to the invitation of the [Supreme] Court to enact specific legislation authorizing the award of attorneys' fees when there is a strong public policy to be vindicated." Sen. R. 94-803, Part I, p. 38.

Congress amended Section 16 to ensure substantially prevailing plaintiffs were made whole.  *Id.*

The panel's opinion frustrates that intent.  By discharging the Section 16 lodestar and adding its value to the fund, not only would plaintiffs not be made "whole" for their Section 16-related attorneys' fees, plaintiffs' counsel would realize a windfall fee.  This Court must address the "conflict [that] exists between plaintiffs' counsel attempting to maximize their fees while the class's interest is to maximize their recoveries, (cite omitted)" *Johnson v. NPAS Sols.*, 975 F.3d 1244, 1252-53 (11th Cir. 2020).

18

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

Only 8.2% of class members filed claims.[9]  There are an estimated 100 million class members. D-2931/III.B.6.(p.42). When 92 million people pass up an opportunity to recover their share of $2.67 billion, something is wrong.

## CONCLUSION

This Court should grant an en banc rehearing.

Respectfully submitted this 15th day of December, 2023.

/s/ David G. Behenna

David G. Behenna
155 Fleet Street
Portsmouth, NH  03801
Telephone: ▮▮▮▮▮▮▮▮
Email: ▮▮▮▮▮▮▮▮▮▮

*Pro Se* Objector-Appellant

---

[9] Plaintiffs-Appellees' Motion to Consolidate and to Expedite Appeals, 10/5/22, p.5.

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the word limit set forth in Federal Rules Appellate Procedure 27(d)(2). This document contains 3,895 words, excluding the parts exempted by Federal Rules Appellate Procedure 32(f) and 11th Circuit Rule 32-4. This document complies with the typeface requirements of Federal Rules Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rules Appellate Procedure 32(a)(6). It has been prepared in a proportionally spaced typeface using 14 point Times New Roman font.

Dated: December 15, 2023        Respectfully submitted,

<u>/s/ David G. Behenna</u>
David G. Behenna

No. 22-13051, *In re Blue Cross Blue Shield Antitrust Litigation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  Those counsel for Appellants and Appellees who are registered ECF users will be served by the ECF system.

Dated: December 15, 2023                     /s/ David G. Behenna

                                             David G. Behenna

[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13051

_____

IN RE: BLUE CROSS BLUE SHIELD ANTITRUST LITIGATION
MDL 2406

_____

 2:13-cv-20000-RDP
GALACTIC FUNK TOURING, INC.,
AMERICAN ELECTRIC MOTOR SERVICES, INC.,
CB ROOFING, LLC,
PEARCE, BEVILL, LEESBURG, MOORE, P.C.,
PETTUS PLUMBING & PIPING, INC., et al.,

Plaintiffs-Appellees,

TOPOGRAPHIC, INC.,
EMPLOYEE SERVICES INC.,
HOME DEPOT U.S.A., INC.,
JENNIFER COCHRAN,

2                    Opinion of the Court                    22-13051

AARON CRAKER,
DAVID G. BEHENNA,

                                        Interested Parties-Appellants,

*versus*

ANTHEM, INC.,
EXCELLUS HEALTH PLAN, INC.,
d.b.a. Excellus BlueCrossBlueShield,
PREMERA BLUE CROSS,
BLUE CROSSBLUE SHIELD OF ARIZONA,
HEALTH CARE SERVICE CORPORATION, et al.,

                                        Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:13-cv-20000-RDP

_____

Before WILLIAM PRYOR, Chief Judge, ABUDU, Circuit Judge, and
BARBER,[*] District Judge.

_____

[*] Honorable Thomas P. Barber, United States District Judge for the Middle
District of Florida, sitting by designation.

22-13051               Opinion of the Court                    3

WILLIAM PRYOR, Chief Judge:

This appeal requires us to determine whether the district court abused its discretion in approving a settlement agreement for a multi-district antitrust class action against the Blue Cross Blue Shield Association and its member plans. One objector, Home Depot U.S.A., Inc., contends that the settlement violates public policy by releasing prospective antitrust claims and violates due process and class-action rules by allowing the same counsel and class representatives to represent both an injunctive class and a damages class. Another objector, Topographic, Inc., argues that the district court misapplied the law and clearly erred in its factual findings in allocating the settlement fund between different groups of claimants. A third objector, David Behenna, contends that the district court erred in determining that the class counsels' fees were reasonable. And the final objectors, Jennifer Cochran and Aaron Craker, argue that the district court erred in allowing the settlement to treat the unclaimed settlement funds of employers differently than the unclaimed funds of employees and in approving a plan of distribution that fails to address the employers' disbursement obligations under the Employee Retirement Income Security Act of 1974 (ERISA). Because the district court did not abuse its discretion, we affirm.

## I. BACKGROUND

The Blue Cross Blue Shield Association is a national health insurance company that owns and licenses its federal trademarks to local member plans and affiliated entities. The Association, its

4                        Opinion of the Court                        22-13051

member plans, and the affiliated entities together make up what is known colloquially as Blue Cross.

Over a decade ago, subscribers who bought health insurance filed a class action against Blue Cross, alleging that it violated the Sherman Antitrust Act, 15 U.S.C. §§ 1–3, by restricting the member plans' ability to compete. The initial complaint sought to certify a class action and was the first of many filed across the country. *See* Complaint, *Cerven v. Blue Cross & Blue Shield of North Carolina*, No. 5:12-cv-17 (W.D.N.C. Feb. 7, 2012). Healthcare providers also filed antitrust claims against Blue Cross.

The actions against Blue Cross were consolidated in multi-district litigation in the Northern District of Alabama and split into two tracks: one for subscribers and another for providers. This appeal concerns the subscriber-track litigation. In their consolidated complaint, the subscribers alleged that Blue Cross allocated geographic territories, limited member plans' competition by mandating a minimum percentage of business under the Blue Cross brand for each member doing business inside and outside their territories, restricted the right of member plans to be sold to companies outside the Association, and agreed to other ancillary restraints on competition. The subscribers sought money damages, treble damages, restitution, and injunctive relief.

In 2018, the district court granted partial summary judgment for the subscribers, ruling that, under section 1 of the Sherman Act, a per se standard applied to Blue Cross's alleged "aggregation of competitive restraints." *In re Blue Cross Blue Shield Antitrust Litig.,*

308 F. Supp. 3d 1241, 1267 (N.D. Ala. 2018). This ruling treated the challenged aggregated restraints as "necessarily illegal." *Id.* at 1259 (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007)). The district court did not rule on the standard that would govern individual restraints if considered separately. *Id.* at 1258.

Amid the ongoing litigation, the subscriber-track plaintiffs and Blue Cross began settlement discussions. Starting in 2017, a court-appointed special master assisted with the negotiations and held dozens of meetings and conference calls. The parties reached a settlement agreement after years of negotiations.

The settlement agreement divided the subscriber-track plaintiffs into two groups: a damages class under Federal Rule of Civil Procedure 23(b)(3) and an injunctive relief class under Rule 23(b)(2). The damages class includes "All Individual Members (excluding dependents and beneficiaries), Insured Groups (including employees, but excluding non-employee Members), and Self-Funded Accounts (including employees, but excluding non-employee Members) that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product." The injunctive class includes "all Individual Members, Insured Groups, Self-Funded Accounts, and Members that purchased, were covered by, or were enrolled in a Blue-Branded Commercial Health Benefit Product sold, underwritten, insured, administered, or issued by any Settling Individual Blue Plan during the Settlement Class Period." The two classes almost completely overlap in membership.

The main difference is that the injunctive class includes beneficiaries and dependents of employees, and the damages class does not.

The damages class and the injunctive class include both "fully insured accounts" and "self-funded accounts." Fully insured accounts buy health insurance from Blue Cross, which as the insurer pays enrollees' medical costs, bears the risk that enrollees' claims will exceed premiums, controls the benefits structure, makes coverage decisions, and provides administrative services. The settlement class period for the fully insured claimants is February 7, 2008, through October 16, 2020.

Self-funded accounts do not buy health insurance. They instead purchase administrative services and unbundled products like vision, dental, and stop-loss insurance from Blue Cross. Self-funded accounts self-insure for healthcare costs, so the employer, not Blue Cross, pays for its employees' healthcare costs at Blue Cross rates. The self-funded account employees might contribute to their premiums or to the cost of the products purchased by their employer. The parties and the district court refer to the self-funded claimants as "self-funded," "self-insured," and "ASOs" interchangeably. In July 2019, self-funded counsel and a self-funded claimants' class representative were appointed to represent separately the self-funded claimants during the settlement negotiations. The settlement class period for the self-funded claimants is September 1, 2015, through October 16, 2020.

The parties first negotiated injunctive relief that requires Blue Cross to make structural reforms to increase competition

between its members. The structural changes include eliminating the "National Best Efforts Requirement," which restricted the member plans' ability to market under other brands; allowing member plans to submit competing bids that were previously prohibited; restricting the application of the "Local Best Efforts Requirement," which required each member plan to generate a certain percentage of its revenue within its geographic service area using the Blue Cross brand; restricting the conditions that Blue Cross may place on acquisitions of member plans; eliminating several restrictions that Blue Cross had placed on contracts between self-funded accounts and healthcare providers; and restricting Blue Cross's ability to include "Most Favored Nation-Differential" clauses in contracts with providers. Other features of Blue Cross's structure, like the Exclusive Service Area policy, are allowed to remain in place post-settlement. The settlement agreement also establishes a monitoring committee to oversee compliance with the structural changes dictated by the agreement. The monitoring committee is charged with mediating certain disputes and reviewing certain rule changes that Blue Cross may make during the five-year monitoring period following approval of the settlement.

The parties next negotiated relief for the damages class that creates a common fund of $2.67 billion to pay damages, provide for notice and administration, and pay attorneys' fees and costs. The subscribers engaged Kenneth Feinberg, a respected mediator in the field of settlement allocations, to help determine an appropriate allocation of the settlement fund between the fully insured claimants and the self-funded claimants. The settlement provides a plan of

distribution that allocates 93.5 percent of the net settlement fund to the fully insured claimants and 6.5 percent to the self-funded claimants. This allocation is based on several factors, including the relative volume of payments by the fully insured claimants and the self-funded claimants, the strength of their respective claims, the shorter self-funded damages period, and the premiums paid for fully insured coverage in contrast with the administrative fees charged for self-funded accounts.

The plan of distribution provides a method for calculating damages for each kind of claimant. For fully insured claimants, the actual premiums paid by individual members and insured groups will be used to determine the pro-rata share of the fully insured claimants' net settlement fund for each member and group. Individuals collect all their pro-rata share. The damages for fully insured groups, which include employers and employees, require further calculations. For fully insured groups in which the employer makes a claim and no employees do so, the employer will receive that group's entire pro-rata distribution. If any employee makes a claim, the group's pro-rata share must be allocated between the employer and any claiming employees. The settlement agreement does not relieve employers of any ERISA obligations, including any fiduciary obligation to distribute claims proceeds to their employees.

Because both fully insured employers and employees can bear a portion of the burden of the premiums paid, the plan of distribution includes a default option for apportioning premiums

between fully insured employers and employees. Employees may decline to consent to the default option if they paid a higher contribution percentage than the default option and can provide proof supporting that higher percentage to the settlement administrator for approval. If an employee files a claim but his employer does not, the employee will receive credit for only his portion of the premium. Any money not claimed by employees is reallocated back to the employer. Any money not claimed by an employer is reallocated back to the fully insured claimants' net settlement fund.

For self-funded claimants, disbursements are allocated between employers and employees based on the estimated share of the administrative fees paid by each. The plan of distribution also creates a default option for self-funded accounts from which employees may opt out by presenting proof that they paid more money than the default option provides. The settlement agreement does not relieve self-funded employers from any ERISA obligations they have when distributing settlement funds to employees.

In addition to paying damages, the settlement fund pays attorneys' fees and costs. The parties agreed that the subscribers' counsel could seek a combined fee and expense award up to 25 percent of the $2.67 billion settlement fund. Counsel filed a petition seeking that full amount, with the attorneys' fees accounting for 23.47 percent and incurred expenses accounting for the remainder. This request was supported by a declaration of counsel, a

declaration by the special master, and two expert reports that attested that the requested award was reasonable.

In exchange for the relief described above, the subscribers, on the effective date, release all claims "based upon, arising from, or relating in any way to" (i) the "factual predicates of the Subscriber Actions" as described in the relevant subscriber-track complaints from the beginning of time through the effective date; (ii) "any issue raised in any of the Subscriber Actions by pleading or motion;" or (iii) "mechanisms, rules, or regulations" adopted by Blue Cross that are "within the scope" of the settlement's structural relief provisions and "approved through the Monitoring Committee Process during the Monitoring Period."

Post-settlement, subscribers may still sue Blue Cross, depending on the claim and whether the subscriber opted out of the agreement. Subscribers retain their right to pursue claims relating to coverage, benefits, and administration of claims that are not "based in whole or in part on the factual predicates of the Subscriber Actions or any other component" of the released claims. Those opting out of the settlement may bring claims for individual injunctive or declaratory relief, except that injunctive class opt-outs may not seek indivisible injunctive relief. A self-funded claimant who opts out retains the right to seek some individual injunctive or declaratory relief as defined by the settlement agreement.

After the subscribers moved for final approval of the settlement agreement, the district court conducted a two-day fairness hearing and heard arguments in support of the agreement and

from objectors. Home Depot, a self-funded claimant and an opt-out from the damages class, objected to the scope of the release on the ground that it permits illegal conduct and violates public policy. Topographic, a self-funded claimant, objected to the allocation percentages between the fully insured claimants and the self-funded claimants as well as the self-funded claimants' shorter class period of five years.

The district court held another hearing to consider the Topographic objection to the allocation and allowed expert testimony and cross-examination. Before that hearing, Topographic sought to discover communications between the fully insured claimants' counsel and the self-funded claimants' economic expert witness, Dr. Joseph R. Mason. The district court denied the discovery request based on the common-interest privilege.

Individual class members also raised objections. Behenna, an individual class member, objected to the attorneys' fees request and argued that the settlement required the district court to use the lodestar methodology to determine the reasonableness of the attorneys' fees because the subscribers' claims arose under a fee-shifting statute and because the case was not a common fund case. Cochran and Craker, employees of fully insured employers, objected to the plan of distribution allocating unclaimed employee funds to their employer.

Finally, the Department of Labor, a nonparty, filed a statement of interest in response to the proposed settlement agreement. The Department did not object to the settlement, but it expressed

concerns that the settlement agreement might affect employers' and plan fiduciaries' obligations under ERISA. Specifically, the Department was concerned that the settlement did not account for ERISA at all.

The district court overruled all objections, rejected the concern raised by the Department of Labor, and approved the settlement agreement. In a separate order, it approved the subscriber counsel's attorneys' fees and expenses request. The district court also determined that there was "no just reason for delay in the entry of [the] Final Order and Judgment" and severed the subscriber action from unrelated, still-pending claims in the provider track litigation. The district court certified its order for appeal under Federal Rule of Civil Procedure 54(b). *See Jenkins v. Prime Ins.*, 32 F.4th 1343, 1345 (11th Cir. 2022) (permitting appealable judgment as to fewer than all claims).

## II. STANDARD OF REVIEW

We review the approval of a class action settlement agreement for abuse of discretion. *Day v. Persels & Assocs.*, 729 F.3d 1309, 1316 (11th Cir. 2013). Because "determining the fairness of the settlement is left to the sound discretion of the trial court, we will not overturn its decision absent a *clear* showing of abuse of that discretion." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (alteration adopted) (citations and internal quotation marks omitted). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that

are clearly erroneous." *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1309 (11th Cir. 2001).

## III. DISCUSSION

We divide our discussion into four parts. First, we address the issues raised by Home Depot. Second, we address the issues raised by Topographic. Third, we address Behenna's appeal. And last, we address the issues raised by Cochran and Craker.

### A. *Home Depot*

Home Depot makes three arguments on appeal. It first argues that release of prospective claims violates public policy, perpetuates clearly illegal conduct, and exceeds the identical-factual-predicate doctrine. It next argues that allowing the injunctive class and the damages class to be represented by the same counsel and class representatives violates Federal Rule of Civil Procedure 23(a) and the Due Process Clause of the Fifth Amendment. And it finally contends that intraclass conflicts within the injunctive class violate Rule 23(a). None of these arguments persuade us that the district court abused its discretion.

### 1. The District Court Did Not Err by Approving the Release of the Injunctive Class Members' Claims.

We reject Home Depot's arguments that the district court abused its discretion when it approved the release provision of the settlement agreement. First, no public policy prohibits prospective releases in antitrust cases. Second, the release does not perpetuate clearly illegal conduct. Third, the release provision permissibly

14                 Opinion of the Court                22-13051

releases only claims based on an identical factual predicate to the
underlying litigation.

### a. The Release Does Not Violate Public Policy.

Home Depot argues that the release provision violates pub-
lic policy because the antitrust laws depend on private enforce-
ment, and prospective releases undermine that regime. But re-
leases of future claims are an important part of many settlement
agreements. *See, e.g.*, *Adams v. S. Farm Bureau Life Ins.*, 493 F.3d
1276, 1286 (11th. Cir. 2007); *In re Literary Works in Elec. Databases
Copyright Litig.*, 654 F.3d 242, 247–48 (2d Cir. 2011); *Oswald v.
McGarr*, 620 F.2d 1190, 1198 (7th Cir. 1980). And releases are com-
monly approved and enforced in class actions. *See Fager v. Centu-
ryLink Commc'ns., LLC*, 854 F.3d 1167, 1176 (10th Cir. 2016)
("[I]nherent in the nature of a class-action settlement is the release
of the claims of every class member (except those who opt out).").
The antitrust context is no different.

We have approved prospective releases of antitrust claims.
For example, in *In re Managed Care*, 756 F.3d 1222, 1235–37 (11th
Cir. 2014), we affirmed the approval of a settlement agreement that
included a release of future antitrust claims arising from the same
conduct. We have also reversed a refusal to enforce a "broad" re-
lease that extended to "any and all causes of action . . . of whatever
kind, source, or character that are related to matters addressed in
the class action, including antitrust and other statutory and com-
mon law claims." *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d
814, 822 (11th Cir. 2010) (internal quotation marks omitted). And

our predecessor court upheld the approval of an antitrust settlement that included a release of future claims. *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 234 (5th Cir. Unit B 1982). It mentioned the importance of "total peace" for defendants in any settlement and stated that the release of future claims was important for the antitrust settlement at issue specifically. *Id.* at 238.

Our sister circuits have approved and enforced prospective releases in antitrust cases too. The Second Circuit has approved broad releases in antitrust settlement agreements and explained that "[b]road class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country." *Wal-mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). The Seventh Circuit has also approved releases in antitrust settlements when the release involved claims based on conduct central to the underlying litigation, even if they were ongoing after the effective date of the settlement agreement. *See, e.g.*, *MCM Partners, Inc. v. Andrews-Bartlett & Assocs.*, 161 F.3d 443, 448–49 (7th Cir. 1998). Public policy does not categorically prohibit releases of future antitrust claims.

Home Depot cites authorities that rejected releases for overbreadth, but those authorities are inapposite. For example, in one decision, the Supreme Court rejected a release in an international commercial arbitration agreement that completely barred the application of the Sherman Act. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 616 (1985). The Court said that if

the choice-of-law clause in the arbitration agreement worked in tandem with the choice-of-forum clause to require all antitrust claims to be decided under Swiss law instead of the Sherman Act, it would constitute "a prospective waiver of a party's right to pursue statutory remedies for antitrust violations" that would be "against public policy." *Id.* at 637 n.19. The Court was concerned about the complete absence of a statutory remedy for any antitrust violation: it was possible that, under the arbitration agreement, the Sherman Act would never apply, no matter what the antitrust claims were or when they accrued. The Court did not hold that *every* prospective release of antitrust claims would violate public policy; it stated only that categorically barring parties from seeking relief under the Sherman Act regardless of the underlying claim would violate public policy. Similarly, in *Redel's Inc. v. General Elec. Co.*, our predecessor court held that a general release in a franchise agreement could not bar antitrust claims arising after the effective date of the agreement because of public policy concerns. 498 F.2d 95, 99–100 (5th Cir. 1974). The release in *Redel's* was broad—it released "all claims, demands, contracts, and liabilities." *Id.* at 98 (internal quotation marks omitted). And the court held that if it were to bar claims arising from later antitrust violations without any factual or temporal limitation, the release would violate public policy. *Id.* at 99.

The release in this appeal is limited and affects the rights of only some private individuals to sue Blue Cross, and it does not affect public enforcement of the antitrust laws. Private enforcement is only one mechanism by which federal antitrust laws may

be vindicated. The government may also enforce the antitrust laws against companies like Blue Cross. 15 U.S.C. §§ 15a, 15c, 15f. And the settlement agreement does not bar the Department of Justice or state attorneys general from pursuing civil claims or criminal charges against Blue Cross. Home Depot's concern that the release will undermine the enforcement of the antitrust laws is overstated.

### b. The Release Does Not Perpetuate Clearly Illegal Conduct.

Home Depot argues that the settlement should not have been approved because it perpetuates "clearly illegal conduct" by allowing the continuation of the Exclusive Service Area policy. In the antitrust context, a settlement agreement may perpetuate conduct when its illegality is uncertain. *Bennett v. Behring Corp.*, 737 F.2d 982, 987 (11th Cir. 1984). The classification of the conduct is crucial.

Under section 1 of the Sherman Act, two standards govern the review of challenged conduct: the per se rule and the rule of reason. *Fed. Trade Comm'n v. Ind. Fed'n of Dentists*, 476 U.S. 447, 457–58 (1986). Conduct governed by the per se rule "unequivocally" violates the Sherman Act. *Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.*, 720 F.2d 1553, 1562 (11th Cir. 1983). Per se violations clearly restrain competition. *Id.* at 1561. The "rule of reason," in contrast, governs conduct that does not per se violate the Act. *Ind. Fed'n of Dentists*, 476 U.S. at 457–58. "Under the rule of reason, the test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it

is such as may suppress or even destroy competition." *Levine v. Cent. Fla. Med. Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996) (quoting *Chi. Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918) (internal quotation marks omitted)). Conduct subject to the rule of reason does not necessarily violate the Sherman Act: a plaintiff must prove its anticompetitive effect. *Id.* So long as the conduct perpetuated under a settlement agreement does not per se violate antitrust law, the settlement may be approved, even if the perpetuated conduct might not withstand scrutiny under the rule of reason. *Bennett*, 737 F.2d at 987.

The district court did not abuse its discretion. Home Depot offers no evidence that the Exclusive Service Area policy is a per se violation of the Sherman Act. It instead argues that the district court already ruled that the Exclusive Service Area policy is subject to the per se rule. But the district court never made that ruling. It ruled only that the *aggregation* of all the challenged restraints constituted a per se violation of antitrust law; it did not rule that any individual restraint constituted a per se violation. Because Blue Cross materially changed its system by adding procompetitive features and eliminating some anticompetitive features, the district court concluded that the post-settlement system, which included the Exclusive Service Area policy, would not be clearly illegal. Its perpetuation was "no bar to approval." *Id.*

c. <u>The Release Covers Only Claims Based on an
Identical Factual Predicate.</u>

Home Depot argues that the settlement exceeds the limits
of the identical-factual-predicate doctrine because it releases claims
arising from "any issue raised in any of the Subscriber Actions by
pleading or motion" and from "mechanisms, rules, or regulations"
by the individual plans and the Association, within the scope of the
settlement agreement as approved by the monitoring committee.
Home Depot argues that this language exceeds the identical factual
predicate because it requires only some overlap with a fact or issue
raised in the litigation.

In its review of a settlement, "a court may permit the release
of a claim based on the identical factual predicate as that underlying
the claims in the settled class action." *Matsushita Elec. Indus. Co. v.
Epstein*, 516 U.S. 367, 377 (1996) (citation and internal quotation
marks omitted). Under the identical-factual-predicate doctrine, a
settlement agreement may release claims that share a common nu-
cleus of operative fact with the claims in the underlying litigation.
*See Adams*, 493 F.3d at 1289. In practice, the doctrine mirrors res
judicata: a release may lawfully bar later actions arising from the
same cause as the settled litigation. *TVPX ARS, Inc. v. Genworth Life
and Annuity Ins.*, 959 F.3d 1318, 1325 (11th Cir. 2020). We have rec-
ognized that res judicata applies not only to the precise legal theory
presented in the previous litigation but to all legal theories and
claims arising out of a common nucleus of fact. *Trustmark Ins. v.
ESLU, Inc.*, 299 F.3d 1265, 1270 n.3 (11th Cir. 2002).

        The district court did not abuse its discretion. The release it
approved is no broader than other releases we have approved. We
have approved settlement agreements releasing claims "in any way
related" to the factual predicate of the underlying litigation.
*Thomas*, 594 F.3d at 817 (requiring the district court to enforce a
release provision that "released and forever discharged" "all causes
of action," including antitrust claims, "that are, were or could have
been asserted against any of the Released Parties by reason of, aris-
ing out of, or in any way related to any of the facts, acts, events,
transactions, occurrences, courses of conduct, business practices,
representations, omissions, circumstances or other matters refer-
enced in the Action"); *see also In re Managed Care*, 756 F.3d at 1226
(holding that the district court did not abuse its discretion in en-
forcing a release that discharged all claims "based on" the releasing
party's prior conduct). So too here.

        The settlement agreement limits the release to claims aris-
ing from the factual predicates of the subscriber action. It defines
released claims as those "based upon, arising from, or relating in
any way to: (i) the factual predicates of the Subscriber Actions . . .
(ii) any issue raised in any of the Subscriber Actions by pleading or
motion; or (iii) mechanisms, rules, or regulations by the Settling
Individual Blue Plans and [the Association] within the scope of" the
relief awarded to the injunctive class. This language cabins the
scope of the release. The release does not extend beyond claims
arising from the common nucleus of operative fact: all the released
claims either were raised or could have been raised during the liti-
gation that preceded the settlement. The release does not bar any

claims that could not have been litigated before settlement or any claims related to conduct that was not challenged in the underlying lawsuit.

> 2.  The District Court Did Not Err by Approving a
> Settlement in Which the Same Named Plaintiffs and Counsel
> Represented Both the Injunctive Class and the Damages Class.

Home Depot next argues that the settlement violates Rule 23 and the Due Process Clause because the same named plaintiffs and counsel represented the injunctive class and the damages class when the classes had competing settlement priorities. *See* FED. R. CIV. P. 23(a)(4); U.S. CONST. amend. V. Rule 23(a)(4) and the Due Process Clause require adequate representation of settlement class members by the named representatives and counsel. Home Depot argues that the representation of the injunctive class was *inherently* inadequate because of the shared representation. We disagree.

Our precedents do not categorically prohibit the same plaintiffs and counsel from representing an injunctive relief class and a damages class. Minor conflicts are not enough to render representation inadequate: the conflict must be "substantial" and "fundamental" to the specific issues in controversy. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation and internal quotation marks omitted). "A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.*

Home Depot fails to identify any substantial conflict between the settlement classes. It points out that the Rule 23(b)(2)

class would receive injunctive relief and the Rule 23(b)(3) class would receive distributions from the settlement fund. But it never explains why this difference is "fundamental." *Id.* Unlike the two subclasses in *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233–34 (2d Cir. 2016), on which Home Depot relies, the classes' memberships here are virtually identical. Considering that most of the class members were eligible for both injunctive and monetary relief, it does not follow that the class representatives and counsel had any incentive to trade away injunctive relief in favor of damages. *Compare In re Checking Acct. Overdraft Litig.*, No. 20-13367, 2022 WL 472057, at *4–5 (11th Cir. Feb. 16, 2022) (holding that common representation was adequate when different classes of plaintiffs were injured in the same way by the same conduct), *with In re Payment Card*, 827 F.3d at 235 (holding that representation was inadequate when there was little overlap between the Rule 23(b)(2) class and the Rule 23(b)(3) class). Given the near-complete overlap in class membership, Home Depot also does not offer any evidence that one class was harmed by conduct that benefitted the other. Because there was no fundamental conflict of interest between the representatives and the classes, the district court did not abuse its discretion.

3.  Home Depot Forfeited Arguments about Intraclass Conflict.

Home Depot also argues that intraclass conflicts within the injunctive class violated Rule 23. The subscriber-proponents moved to strike those arguments because they were not made in the opening brief. We will not consider issues that a party fails to

brief adequately. "A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims." *Sapuppo v. All-state Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) (citation and internal quotation marks omitted). If a party makes only passing references to an issue in its statement of the case or its summary of the argument in the opening brief, the issue is considered abandoned. *Id.* at 681–82. We will not consider arguments advanced by appellants for the first time in a reply brief. *Id.* at 683.

We agree that Home Depot abandoned these arguments by only briefly referencing potential intraclass conflicts in the summary of the argument in its opening brief. Home Depot did not devote a discrete section of its opening brief to developing the arguments. Each section Home Depot devoted to the adequacy of representation in its opening brief addresses only conflicts between the two classes, not conflicts *within* the classes. Yet Home Depot's reply brief devotes nine pages to potential intraclass conflicts. Because those arguments were not developed in its opening brief, we will not consider them. We grant the subscriber-proponents' motion to strike.

### B. Topographic

Topographic challenges the allocation of the settlement funds. It argues that the district court misapplied Rule 23(e)(2)(D) and made erroneous findings in approving the allocation, and it contends that the district court abused its discretion when it approved a shorter damages period for the self-funded claimants. It

challenges the approval of the fund percentage allocated to the self-funded claimants. And it argues that the settlement fund should have been allocated to all claimants on the same basis. None of these arguments persuade us that the district court abused its discretion.

> 1.   The District Court Applied the Correct Scrutiny to the Settlement Allocation.

Topographic contends that the district court failed to apply the correct scrutiny to the settlement allocation. It argues that the district court misapplied Rule 23(e)(2)(D) as amended because it approved a facially unequal allocation. It also contends that the district court based its approval of the allocation on inadequate evidence and erred in relying on Dr. Mason's expert report. Topographic contends that, in approving the allocation, the district court also erroneously found that self-funded claimants purchased only administrative services from Blue Cross. And Topographic argues that the district court erred when it denied discovery of emails between Dr. Mason and the fully insured claimants' counsel. We address each argument in turn.

> a.   The District Court Adhered to Rule 23(e)(2).

Topographic argues that the facially unequal allocation between the fully insured claimants and the self-funded claimants establishes that the district court misapplied Rule 23(e)(2)(D), which requires class members to be treated equitably. *See* FED. R. CIV. P. 23(e)(2)(D) ("If the proposal would bind class members, the court may approve it only after a hearing and only on finding that

it is fair, reasonable, and adequate after considering whether . . . the proposal treats class members equitably relative to each other."). But the text of the amended rule requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally.

Topographic highlights that some of our sister circuits have explained that since Rule 23(e)(2) was amended, a settlement should not be given a presumption of reasonableness whenever it is the product of an arm's-length negotiation. *See, e.g.*, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 n.12 (9th Cir. 2019). Although we have not interpreted the 2018 amendment, we have recognized that "the district court should consider the impact of Congress' 2018 amendments" to Rule 23(e) when applying it. *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1261 (11th Cir. 2023). But the district court did not presume that the allocation was reasonable because it was negotiated at arm's length.

The district court instead reviewed the allocation under each subpart of Rule 23(e)(2). It found that the class members were adequately represented in the light of counsel's experience, vigorous advocacy over the course of the litigation, and diligent efforts to obtain discovery and engage expert witnesses. *See* FED. R. CIV. P. 23(e)(2)(A). It determined that the settlement was negotiated at arm's length because there was no evidence of collusion and counsel worked diligently through multiple impasses with the special master and mediators to achieve resolution. *See id.* at 23(e)(2)(B).

The district court then analyzed the adequacy of relief, considering the costs, risks, and potential delay of trial and appeal, the effectiveness of distributing relief to the class, and the reasonableness of the requested attorneys' fees. *See id.* at 23(e)(2)(C). It considered the length and expense of continued litigation, the efficacy of the plan of distribution, the opportunity for claimants to participate, and the retention of an outside firm to process claims. And the district court found that no collateral agreements needed to be identified for Rule 23(e)(2)(C)(iv). Finally, the district court ruled that the proposal treats class members equitably relative to each other, as required by Rule 23(e)(2)(D). It considered the differences between the self-funded claimants and the fully insured claimants like differing litigation risks, incurred costs, and claim strengths before concluding that the two were treated equitably. The district court did not presume that the settlement was reasonable because it was negotiated at arm's length.

Topographic argues that the district court abused its discretion because our precedent requires settlement proponents to meet a heightened evidentiary burden under *Holmes v. Cont'l Can Co.*, 706 F.2d 1144 (11th Cir. 1983). But Topographic misunderstands that precedent. Although we have stated that "a disparate distribution favoring the named plaintiffs requires careful judicial scrutiny into whether the settlement allocation is fair to the absent members of the class," *id.* at 1148, we have not extended this rule to all unequal distributions of settlement allocations. We impose a heightened burden only when named plaintiffs receive a benefit at the expense of the absent class members. *Id.* at 1147–48.

There is no *Holmes* issue here: the self-funded claimants were represented by their own counsel and class representatives in the settlement negotiations and received some compensation from the settlement. Although the settlement agreement's allocation is facially unequal, it is not facially unfair. The district court did not abuse its discretion.

### b. The District Court Had Evidentiary Support for the Settlement Allocation.

Topographic next argues that the district court approved the settlement allocation based on inadequate evidence and erroneous factual findings. It contends that the allocation could not be approved without a separate analysis of damages for the self-funded claimants. But "when there are subclasses, each independently represented, an allocation formula may be negotiated without each subclass undertaking extensive analysis of its relative damages *if* the available evidence is, at the time of the negotiations, insufficient to indicate a need for it." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 219 (5th Cir. 1981). The self-funded claimants were represented by separate counsel during the settlement negotiations, and Topographic offers no evidence of a need for a separate analysis. Topographic also points to no caselaw suggesting that a separate analysis for the self-funded claimants was necessary.

Topographic argues that the district court abused its discretion in approving the settlement allocation without evidentiary support. In approving a settlement agreement, the district court must undertake an analysis of the facts and the law relevant to the

proposed compromise and support its conclusions "by memoran-
dum opinion or otherwise in the record." *Cotton v. Hinton*, 559 F.2d
1326, 1330 (5th Cir. 1977). The district court must provide us a basis
for reviewing the exercise of its discretion. *Holmes*, 706 F.2d at 1147.

Topographic accuses the district court of adopting the rep-
resentations of class counsel and the mediator without evidentiary
support. But the district court cited extensive evidence to support
its finding that the allocation was reasonable because of the com-
parative strengths of each class's antitrust claims and relative com-
petitiveness of the fully insured market. For example, the district
court cited several exhibits establishing that fully insured accounts
are four to ten times more profitable than self-funded accounts. It
also pointed to evidence that self-funded accounts were often loss-
leaders for Blue Cross. It relied on expert testimony that the self-
funded market was significantly more competitive, more price sen-
sitive, and less capable of sustaining overcharges than the fully in-
sured market. These facts supported the comparative strength of
the fully insured claimants' underlying antitrust claims. The district
court based its decision on more than the assurances of counsel and
the mediator.

c. The District Court Did Not Abuse its Discretion in
Relying on Dr. Mason's Expert Report.

Topographic argues that the district court abused its discre-
tion in relying on the expert report of Dr. Joseph Mason, an econ-
omist, in its approval of the settlement allocation. Topographic
contends that Dr. Mason's report lacks evidentiary support and

that the district court needed to justify its reliance on Dr. Mason's report over the other experts. We disagree.

Dr. Mason's report has an evidentiary basis. The record, including evidence from Blue Cross about the differences between the fully insured market and the self-funded market, supports Dr. Mason's conclusions. For example, the record contains documents from Blue Cross that establish differences in profitability between fully insured accounts and self-funded accounts, as well as documents that establish differences between the fully insured market and the self-funded market. And contrary to Topographic's argument, Dr. Mason's report was not based on the assumption that self-funded accounts purchase only administrative services from Blue Cross. In his report, Dr. Mason used four proxy methods to analyze the relative costs borne by the two classes of claimants. In addition to directly comparing fully insured accounts' premiums with self-funded accounts' administrative fees, the analysis compared the relative net revenue, overcharge differentials, operating gain differentials, and revenue-per-member growth differences between fully insured and self-funded accounts. The record belies any assertion that Dr. Mason's report depended solely on comparing administrative fees with fully insured premiums. The district court also explained why it credited Dr. Mason's testimony. It recounted Dr. Mason's credentials and experience and cited evidence supporting his expert opinions.

Topographic argues that the district court failed to discuss the Topographic expert's report, and that the failure to do so led to

a series of errors. But choosing to credit one expert opinion over another is within the sound discretion of the district court. *Battle v. United States*, 419 F.3d 1292, 1299 (11th Cir. 2005) ("[A] district court does not clearly err simply by crediting one opinion over another where other record evidence exists to support the conclusion." (citation omitted)). The district court cited evidence that supported its decision to credit Dr. Mason's report, which is all our precedent required it to do. *See In re Corrugated Container*, 643 F.2d at 215.

### d. The District Court Did Not Erroneously Find that Self-Funded Claimants Pay Only Administrative Fees.

Topographic argues next that the district court erroneously found that self-funded claimants pay only administrative fees. Topographic asserts that some self-funded claimants also purchase other unbundled services like dental, vision, or stop-loss insurance from Blue Cross. It contends that this factual error was central to the approval of the settlement agreement. Several state insurance departments as *amici curiae* echo this concern. They worry that the district court's opinion could be misconstrued as ruling that stop-loss insurance is not insurance, which could cast doubt on the states' authority to regulate stop-loss insurance products.

The district court made no error when it described the differences between the two groups of claimants. It did not rule that self-funded claimants pay only claims processing fees or that stop-loss insurance is not insurance. Instead, it described the distinction between the fully insured claimants and the self-funded claimants:

one buys full-service health insurance, and the other does not. Self-funded accounts are often called "administrative services only" or "ASOs"—in fact, the self-funded claimants are sometimes referred to as "the ASOs" in the briefing.

Even if the district court's statement were a factual finding, it is not clear how the "finding that [the] Self-Funded [Claimants] 'purchased administrative services only,' not 'insurance' or other ancillary services," was central to the approval of the settlement. Nothing in the record suggests that the district court's analysis would have changed even if it had defined self-funded accounts as those that purchased administrative services, stop-loss insurance, dental insurance, vision insurance, and other unbundled products. What matters is whether there is a difference between the markets in which the fully insured claimants and self-funded claimants participated. Because the fully insured claimants purchased full-service health insurance from Blue Cross, they paid premiums and other charges that the self-funded claimants did not. That some self-funded claimants purchased additional unbundled products does not change that reality. So even if the statement that the self-funded claimants "purchased administrative services only" were a finding, it was not central to the approval of the settlement and was not reversible error.

e. The District Court Correctly Denied the Self-
Funded Objectors' Discovery Request under the
Common-Interest Privilege.

The district court also did not abuse its discretion when it
denied the self-funded objectors' request to discover communica-
tions between the fully insured claimants' counsel and Dr. Mason
under the common-interest privilege, which applies when "multi-
ple clients share a common interest about a legal matter." *United
States v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003) (citations and
internal quotation marks omitted). The privilege "serves to protect
the confidentiality of communications passing from one party to
the attorney for another party where a joint defense effort or strat-
egy has been decided upon and undertaken by the parties and their
respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243
(2d Cir. 1989). "The need to protect the free flow of information
from client to attorney logically exists whenever multiple clients
share a common interest about a legal matter." *Almeida*, 341 F.3d
at 1324 (citations and internal quotations omitted). The common-
interest privilege requires only "a substantially similar legal inter-
est," *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007),
not a "complete unity of interests among the participants," *United
States v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003). And "it may
apply where the parties' interests are adverse in substantial re-
spects." *Id.*

The district court did not abuse its discretion when it denied
the self-funded objectors' discovery request based on the common-

interest privilege. The self-funded objectors sought to discover communications between their expert, Dr. Mason, and the fully insured claimants' counsel to determine "Fully Insured [Claimants'] counsel's input into the Mason Report." The self-funded claimants and the fully insured claimants had a substantially similar interest in the litigation against Blue Cross and in the settlement negotiations. That the details of the settlement put them in adverse positions does not undermine their broader mutual interest.

Even if the district court misapplied the common-interest privilege, we would not overturn its decision without any proof that the application harmed the self-funded objectors. "[W]e will not overturn discovery rulings unless . . . [the] ruling resulted in substantial harm to the appellant's case." *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014) (citation and internal quotation marks omitted). On appeal, Topographic makes no showing of harm. It instead suggests that there *could have been* collusion between Dr. Mason and the fully insured claimants' counsel and that discovery could have unearthed it. But Topographic admitted to the district court that there was no evidence of collusion and that it did not believe collusion tainted the settlement. The district court did not abuse its discretion when it denied the objectors' discovery request.

2. The District Court Did Not Abuse its Discretion when It
Approved the Self-Funded Claimants' Shorter
Damages Period.

Topographic argues that the district court abused its discre-
tion in approving the self-funded claimants' five-year damages pe-
riod while also approving the fully insured claimants' 12.5-year
damages period. The shorter damages period, Topographic con-
tends, is based on the erroneous determination that the self-funded
claimants did not join the litigation until September 1, 2015. Topo-
graphic argues that the original subscriber complaint notified Blue
Cross of the self-funded claimants' damages claims, and so the self-
funded claimants are entitled to a damages period dating to 2008—
the same starting date as the fully insured claimants. And even if
self-funded accounts were not included in the *Cerven* damages class,
Topographic argues that because the *Cerven* complaint included
claims for injunctive relief brought on behalf of the self-funded ac-
counts, the ruling that the self-funded claimants' later request for
damages did not relate back under Federal Rule of Civil Procedure
15(c) was erroneous.

Whether the self-funded claimants' damages period dates to
2008 depends on whether the self-funded claimants were included
in the *Cerven* complaint. Under Rule 15(c), the original complaint
must put the defendants on notice of the claims being asserted.
*Makro Cap. of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1260 (11th Cir.
2008); Fed. R. Civ. P. 15(c). Topographic cites record evidence that
could be read to suggest that Blue Cross had notice of the self-

funded claimants' damages claims, and the proponents of the set-
tlement agreement offer contrary evidence. But what matters is
whether any *pleading* gave Blue Cross notice of the self-funded
claimants' request for damages.

The *Cerven* complaint does not include self-funded accounts
in its definition of the damages class. It defines the damages class as
"[a]ll persons or entities who . . . have paid health insurance premi-
ums to [Blue Cross North Carolina] for individual or small group
full-service commercial health insurance." *See* Complaint, *Cerven*,
No. 5:12-cv-17. Self-funded accounts do not buy "full-service com-
mercial health insurance" from Blue Cross and do not pay health
insurance premiums. The damages class, as defined in the com-
plaint, did not include self-funded claimants, and it did not give
Blue Cross notice of the self-funded claimants' potential claims for
damages.

Topographic argues that even if self-funded accounts were
not included in the damages class of the *Cerven* complaint, self-
funded accounts were included in the injunctive class, which
should have put Blue Cross on notice that self-funded accounts
could later seek damages. But the injunctive class definition also
does not clearly include self-funded accounts. The complaint de-
fines the injunctive class as "[a]ll persons or entities . . . who are
currently insured by any health insurance plan that is currently a
party to a license agreement with [Blue Cross] that restricts the abil-
ity of that health insurance plan to do business outside of any geo-
graphically defined area." Although some self-funded accounts

purchase insurance products like stop-loss insurance from Blue Cross, they are not "insured" for healthcare. Self-funded accounts pay their own costs for employee healthcare. In other words, instead of having Blue Cross pay for healthcare costs, self-funded accounts pay for administrative services and to obtain insurer rates with healthcare providers. The self-funded employers pay their employees' healthcare costs. It is not clear from the *Cerven* complaint's definition of the injunctive class that self-funded accounts are included because they are not necessarily "insured by [a] health insurance plan."

Other parts of the *Cerven* complaint confirm that self-funded accounts were not included in the damages or injunctive classes. The complaint defines self-funded accounts as those that purchase only administrative services, highlighting the difference between self-funded and fully insured accounts. In its description of the anticompetitive structure that it attacks, the complaint never mentions stop-loss insurance or other unbundled products. That the *Cerven* complaint attacks "the Blue structure" is not enough for the self-funded claimants' damages claims to relate back. The complaint did not put Blue Cross on notice that the self-funded claimants would seek damages, and the complaint did not challenge anticompetitive conduct in the self-funded market. *See Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) (finding that the plaintiffs' new claim did not relate back because the original complaint "did not put [the defendant] on notice" that the new claim "could be relevant to the case"). The district court did not abuse its discretion in ruling that the self-funded claimants' request

for damages did not relate back to the *Cerven* complaint and in approving a settlement allocation with a shorter damages period for them.

### 3.  The District Court Did Not Abuse its Discretion in Approving the 6.5 Percent Allocation for the Self-Funded Claimants.

Topographic also argues that the 6.5 percent settlement allocation for the self-funded claimants was based on "an arbitrary, retrospective 50% discount on top of the truncated class period." Approving the 6.5 percent allocation on top of a shorter damages period, according to Topographic, "halv[ed] the Self-Funded [Claimants'] damages allocation a second time." Topographic argues that the district court made three errors in approving the allocation: (1) its approval was based on the clearly erroneous finding that self-funded plans arrived late to the litigation, (2) it approved the application of the 50 percent discount factor without legal or factual support, and (3) it failed to scrutinize the unequal treatment of the self-funded claimants compared with the fully insured claimants.

Topographic is wrong on all three points. First, as we have explained, the district court did not err when it ruled that the self-funded claimants "arrived late to the litigation" because they were not included in either class in the *Cerven* complaint. Second, the argument that there is no "legal or factual support" for the discount is a gross misstatement. The discount, which Dr. Mason applied in his expert report, reflects that the self-funded claimants, had they

been forced to litigate independently without the benefit of the work done by the fully insured claimants, would have faced many years of uncertain and expensive litigation. And the self-funded claimants had comparatively weaker antitrust claims because of the relative competitiveness of the self-funded market. These facts support the approval of the allocation. *See, e.g.*, *In re Corrugated Container*, 643 F.2d at 220; *In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2005); *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179, 183 (2d Cir. 1987). The district court did not abuse its discretion.

4.   The District Court Did Not Abuse Its Discretion when It Allocated the Settlement Fund Between the Claimants.

Finally, Topographic argues that instead of dividing the claimants into classes and allocating the settlement fund between them, the settlement should have been distributed to all subscribers on the same basis. Topographic contends that the district court created a "fundamental intra-class conflict" by creating two subclasses. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 188–89 (3d Cir. 2012).

But the inverse is true. There might have been a fundamental intraclass conflict had the district court *not* created a subclass for self-funded accounts. The self-funded claimants and the fully insured claimants incurred different costs during the litigation, and their respective antitrust claims involved different markets. Had the district court not divided them into two subclasses, the potentially adverse interests of the self-funded accounts and the fully

insured accounts could have led to a conflict of interest. *See id.* at 189–90.

In any event, dividing a class with potentially adverse interests into subclasses is within the sound discretion of the trial court. *See Califano v. Yamasaki*, 442 U.S. 682, 703 (1979); *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986). And the record supports the conclusion that the self-funded claimants and the fully insured claimants had at least potentially adverse interests. The district court did not abuse its discretion in dividing them into subclasses.

### C. Behenna

Behenna, a *pro se* class member, argues that the district court erred in not applying a bifurcated analysis when determining the reasonableness of the attorneys' fees award. Because Behenna failed to raise this issue before the district court, it is forfeited. And even if the issue were not forfeited, the district court did not abuse its discretion.

#### 1. Behenna Forfeited the Bifurcated Analysis Issue.

Behenna contends that the district court erred in failing to analyze separately attorneys' fees for billings related to injunctive relief and billings related to damages when approving the attorneys' fees in the settlement agreement. He argues that the district court should have used the lodestar methodology to assess appropriate fees for work related to the injunctive relief and then used the common fund doctrine to assess appropriate fees for work

related to the monetary relief. But Behenna forfeited that issue by failing to raise it in the district court.

If a party tries to raise an issue for the first time on appeal, we ordinarily will not consider it. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). Behenna made two objections in the district court: first, that the lodestar methodology should be used to determine the subscriber counsel's fee, and second, that the case is not a common fund action. Neither objection hinted at the bifurcated analysis that Behenna now requests. Indeed, his objection that the settlement is not a common fund case directly contradicts his argument on appeal that the district court should have applied a common fund analysis to the damages-related attorneys' fees.

## 2. Alternatively, the District Court Did Not Abuse its Discretion.

Even if the bifurcated analysis issue were not forfeited, the district court did not abuse its discretion. Behenna contends that a bifurcated analysis was necessary because fee-shifting statutory awards are subject to the lodestar methodology, and Section 16 of the Clayton Act, which governs the injunctive class's claims, is a fee-shifting statute. But whether the claim arose under a fee-shifting statute "is of no consequence." *In re Equifax*, 999 F.3d at 1279 n.24. What matters is the kind of fund that the settlement agreement creates. *See In re Home Depot Inc.*, 931 F.3d 1065, 1082 (11th Cir. 2019) ("Where there has been a settlement, the basis for the statutory fee has been discharged, and it is only the fund that remains." (citation and internal quotation marks omitted)). The settlement agreement

created a common fund. And, in this context, our precedents make clear that the percentage-of-the-fund methodology should be used to determine the reasonableness of attorneys' fees. *See In re Equifax*, 999 F.3d at 1280; *see also Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). The district court did not abuse its discretion in using the percentage-of-the-fund analysis, not the lodestar methodology or some combination of the two.

The district court also correctly applied the percentage-of-the-fund doctrine. In a common fund settlement, attorneys' fees "shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. Courts typically award fees of 20 to 30 percent of the common fund, *see In re Home Depot*, 931 F.3d at 1076, and view the mean of that range—25 percent—as a rough benchmark, *Camden I*, 946 F.2d at 775. If a fee award falls between 20 and 25 percent, it is presumptively reasonable. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011). If the fee exceeds 25 percent, the district court must assess the reasonableness of the percentage using the 12 *Johnson* factors. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The actual fee sought by the subscribers' counsel was 23.47 percent of the common fund. Even though this fee fell within the range of reasonableness, *Faught*, 668 F.3d at 1242, the district court reviewed the percentage under the *Johnson* factors. As a cross-check, the district court then used the lodestar to confirm the reasonableness of the percentage. The *Johnson* factors and the lodestar cross-check confirmed that a fee award of 23.47

percent was reasonable. That thorough analysis followed our precedents and was not an abuse of discretion.

### D. Cochran and Craker

Cochran and Craker make two arguments on appeal. First, they argue that the plan of distribution violates Rule 23(e)(2)(D) because the unequal distribution of unclaimed funds suggests inadequacy of representation for the employees of fully insured employers. Second, they argue that the district court abused its discretion in failing to address ERISA concerns raised by the settlement agreement. We address these arguments in turn.

### 1. The Plan of Distribution Does Not Violate Rule 23(e)(2)(D).

The district court did not abuse its discretion in approving a distribution of unclaimed funds that differently allocates the unclaimed funds of the fully insured employers and the unclaimed funds of those employers' employees. Cochran and Craker argue that the settlement agreement's plan of distribution is fundamentally unfair because it reallocates the unclaimed funds of fully insured employers back into the settlement fund to be distributed on a pro-rata basis to other fully insured claimants but reallocates the unclaimed funds of the employees to the employers. This distribution scheme, Cochran and Craker argue, suggests an adequacy of representation issue under Rule 23(e).

The premise of Cochran and Craker's critique of the plan of distribution—that it is fundamentally unfair—is false. Cochran and Craker argue that the district court abused its discretion in approving the plan of distribution despite Rule 23(e)(2)(D)'s requirement

that all class members be treated equitably relative to each other. That some class members' unclaimed funds are treated differently than others, they argue, is inherently inequitable and shows that the employees of fully insured employers were not adequately represented. But like Topographic, Cochran and Craker conflate the terms "equitably" and "equally." The plan of distribution undoubtedly treats funds unclaimed by employers differently than the funds unclaimed by their employees, but the record shows that the plan of distribution was fair and reasonable.

The fully insured employers bore a heavier monetary burden than their employees because most employers paid a portion of their employees' premiums. And some employees of fully insured employers did not pay *any* portion of the premiums for their health insurance coverage. The plan of distribution might be unequal, but it is not inequitable.

Cochran and Craker also fail to show that the employees of the fully insured employers were not adequately represented or that the district court abused its discretion in not creating a separate subclass for the employees. A conflict of interest must be based on differences in the economic interests of class representatives and unnamed class members, and the conflict must be so clear and substantial that it is "fundamental" to the issues in controversy. *Valley Drug Co.*, 350 F.3d at 1189 (citation and internal quotation marks omitted). Neither requirement is satisfied here.

The alleged inequity is not between class representatives and absent class members. It is between fully insured employers—

only some of whom are class representatives—and their employ-
ees. There is no fundamental conflict between these two groups.
Dividing them into subclasses would be necessary only if they had
divergent interests. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d
241, 272 (3d Cir. 2009). But the district court made clear that the
subscriber class representatives share the same interests as absent
class members, assert the same or substantially similar claims stem-
ming from a common event, and share the same kinds of injuries.
Because fully insured employers made more payments to Blue
Cross on behalf of their employees and both employers and em-
ployees were subject to the same Blue Cross health insurance
plans, it is hard to see how these two groups would have divergent
interests requiring separate representation.

### 2. ERISA Is No Impediment to Approving the Settlement Agreement.

Cochran and Craker also echo the concern of the Depart-
ment of Labor that the settlement agreement may affect the duties
that employers and plan fiduciaries have under ERISA. They argue
that because the plan of distribution does not expressly instruct em-
ployers to comply with ERISA, its silence could lead to violations
when the settlement proceeds are disbursed. But as the district
court explained, nothing in the settlement agreement changes
ERISA rights: the order approving the settlement states that "all
ERISA duties still apply" and that "all ERISA fiduciaries must com-
ply with those duties." Plans and employees retain their rights to

22-13051              Opinion of the Court                    45

sue under ERISA. The fear of a speculative violation is no reason to reject the settlement.

## IV. CONCLUSION

We **AFFIRM** the judgment approving the settlement agreement.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 25, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  22-13051-HH
Case Style:  In Re Blue Cross Blue Shield Antitrust Litigation
District Court Docket No:  2:13-cv-20000-RDP

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, <u>costs taxed against appellants</u>.

Please use the most recent version of the Bill of Costs form available on the court's website at <u>www.ca11.uscourts.gov.</u>

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1A Issuance of Opinion With Costs